FILED IN MY OFFICE
DISTRICT COURT CLERK
12/2/2014 3:55:54 PM
STEPHEN T. PACHECO
Maureen Naranjo

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT

# EXHIBIT C

STATE OF NEW MEXICO *ex rel.*
GARY K. KING, ATTORNEY GENERAL,

      Plaintiff,

   v.　　　　　　　　　　　　　　　　　　No. D-101-CV-2013-03197

VALLEY MEAT COMPANY, LLC,
DAIRYLAND PACKING, INC., MOUNTAIN
VIEW PACKING, LLC, and RICARDO DE
LOS SANTOS,

      Defendants.

### PLAINTIFF STATE OF NEW MEXICO'S *EXPEDITED* MOTION TO ENFORCE AND MODIFY PRELIMINARY INJUNCTION

#### Preliminary Statement

Just a few months ago, Defendants represented to the Court that they "are not operating and have no plans or ability to operate a horse processing facility," and on that asserted basis urged the Court to dismiss the State of New Mexico's claims as moot. Defs.' Mot. to Dismiss at 2. Before the ink on their motion was dry, Defendants reneged on that representation. While insisting to the Court that they no longer have involvement or interest in commercial horse slaughter, Defendants simultaneously were busy creating a new shell company, through which they applied for the very same permits to conduct commercial horse slaughter that they had withdrawn only a few weeks earlier.

Those recent actions by Defendants, in concert with three non-parties – the new shell company, D'Allende Meats, LLC, and its principals Jose Hernandez and Ryoichi Okubo – necessitate this motion to enforce and to modify the Court's January 17, 2014 Order Granting Preliminary Injunction ("Preliminary Injunction") enjoining Defendants from pursuing horse slaughter.  At a minimum, Defendants' actions are an effort to evade the Court's order; at worst, they represent an attempt by Defendants to perpetrate a fraud on the Court.  In either event, the Court can and should enforce the Preliminary Injunction against the non-parties with whom Defendants are colluding (the "Affiliates") to bring commercial horse slaughter to New Mexico.[1]  In addition, the Preliminary Injunction should be modified to make clear that Defendants and their Affiliates may not undertake preparatory steps that, if completed, will necessarily result in a violation of the Preliminary Injunction.

The State files this motion on an expedited basis, *see* Local Rule 1-306(I), due to the demonstrated risk that Defendants and the Affiliates will continue their efforts to circumvent the Preliminary Injunction absent judicial intervention.

As required by Rule 1-007.1(C) NMRA, the undersigned requested opposing counsel's position on this motion, who responded in relevant part with a series of threats:

> You are abusing the Attorney General's authority and this is absolutely malicious abuse of process.  You lied to the Court in your supplemental notice. These individuals you are naming are not Valley Meat Company.  If you file this we will add it to our Motion to Strike and for Sanctions.  Please also be on Notice that we will be seeking sanctions against you personally, the state should not have to pay for your malfeasance.  Further this should also be treated as Notice that if you file this we will file an action for malicious abuse of process against the Attorney General's Office you are potentially incurring liability by abusing the process.  By the time the dust settles General King will

---

[1] The fact that Defendants are once again actively working to establish commercial horse slaughter after emphatically insisting they have "no intention or plans to process any animals at the facility in Roswell," Defs.' Mot. to Dismiss, Ex. A ¶ 4, also destroys the sole basis for their Motion to Dismiss, which the State addresses in a separate supplemental notice filed in response to that motion.

have only succeeding handing off a bucket of liability to General Balderas. This is truly bad form at the 11th hour.

Exhibit 18 (a true and correct copy of December 2, 2014 email from counsel for Defendants).[2]

## Procedural Background

The State initiated this action on December 19, 2013 to enjoin Defendants Valley Meat Company, LLC ("Valley Meat"), Ricardo De Los Santos, and other related corporate entities from violating state law by slaughtering horses and selling their meat for human consumption. The State's Complaint asserts claims under the New Mexico Water Quality Act, NMSA 1978, §§ 74-6-1 *et seq.*; the New Mexico Food Act, *id.* §§ 25-2-1 *et seq.*; the New Mexico Unfair Practices Act, *id.* §§ 57-12-1 *et seq.*; and common law public nuisance.

By order dated January 17, 2014, the Court granted the State's motion for a preliminary injunction. The Court enjoined Defendants from "slaughtering horses for human consumption," from "manufacturing, selling or distributing horse meat products for human consumption," and from "discharging wastewater in any manner and under any theory." Preliminary Injunction, ¶ 52 (emphasis added).

The State served its first set of discovery demands on Defendants on May 15, 2014, and among other subjects sought discovery as to the identity of Defendants' owners, officers, directors, and agents; the ownership of the slaughterhouse facility where Defendants have long planned to conduct their commercial horse slaughter operations; any efforts that Defendants made to obtain investments for their horse slaughter venture; and any contracts or agreements that Defendants entered into, negotiated, or contemplated for the purchase of horses or for the sale of horse meat. *See* State's Motion to Compel (filed Aug. 15, 2014), Ex. 1 (State's

---

[2] Exhibit 18 is appended to this memorandum. Exhibits 1-17 are bound in a separate volume.

Interrogatories) Nos. 2, 6, 15-16, 23-27; Ex. 2 (State's Requests for Production of Documents) Nos. 4-11, 25.

Defendants refused to provide substantive answers to <u>any</u> of the State's discovery demands. Defendants attempt to excuse their violation of their discovery obligations by asserting that this action is now moot on the basis of their conclusory and equivocal statement that they no longer wish to pursue commercial horse slaughter "at this location [and] at this time." Defs.' Mot. to Dismiss, Exs. A-1, A-2 at 2. Defendants' evasion necessitated a Motion to Compel from the State, which has been fully briefed and submitted to the Court.

On July 31, 2014, Defendants withdrew an application for a wastewater discharge permit that they had previously submitted to the New Mexico Environment Department ("NMED") in the name of Valley Meat. *See* Defs.' Mot. to Dismiss, Ex. A-1. On August 29, 2014, Defendants also asked the United States Department of Agriculture ("USDA") to withdraw the grant of inspection that the agency had issued to Valley Meat. *See* Defs.' Mot. to Dismiss, Ex. A-2. In their submission filed on September 2, 2014, Defendants trumpeted that they were "completely and absolutely abandoning any plans … to process any equine animals for any purpose," Defs.' Motion to Dismiss, Ex. A ¶ 4, and on that basis urged the Court to dismiss this action.

### The Revival of Defendants' Plans for Horse Slaughter

Despite that assurance, just weeks later, on September 25, 2014, two individuals with well-documented fiduciary roles in Valley Meat filed an application with the USDA for a grant of inspection in the name of a newly formed company, D'Allende Meats, LLC ("D'Allende Meats"). A copy of that application, as it was filed in a related federal action, is attached hereto as Exhibit 1.[3] The application form requires the applicant to check a box indicating the "animals

---

[3] The State of New Mexico intervened in a federal action against USDA for issuing Valley Meat a grant of inspection to slaughter horses. An attorney representing Defendants' ally, the

to be slaughtered when inspecting is inaugurated." Ex. 1 at 1. The applicants checked a box for a single category of animal – "equine." *Id*. The D'Allende Meats application lists two "persons responsibly connected with the applicant," Jose Hernandez and Ryoichi Okubo. *Id*. at 3. The application identifies each man as a "MGR" or manager of D'Allende Meats. *Id*. Both men, according to the application, live in El Paso, Texas. *Id*. The grant application requests federal permission to slaughter horses at 3845 Cedarvale Road, Roswell, New Mexico 88203 – the very same activity that Valley Meat had sought permission to conduct, at the very same location. [4]

Valley Meat's 2013 application for the very same regulatory approval – a grant of inspection by the USDA for horse slaughter – similarly named Hernandez as a "person[] responsibly connected with" Valley Meat. Exhibit 4 at AR0002462 (a true and correct copy of Valley Meat's 2013 application for grant of inspection). Specifically, the Valley Meat application identified Hernandez as a "partner" of Valley Meat. *Id*. Prior applications for inspection, from 2010, 2011, and 2012, that Valley Meat filed with USDA also listed Hernandez as a "person[] responsibly connected with the business," a "member" of Valley Meat, or both. Exhibit 5 at 2 (a true and correct copy of Valley Meat's 2012 application for a grant of inspection); Exhibit 6 at AR0002763 (a true and correct copy of Valley Meat's 2011 application for grant of inspection); Exhibit 7 at AR0002765 (a true and correct copy of Valley Meat's 2010 application for a grant of

---

International Equine Business Association, informed the federal court via letter that Defendants still intend to slaughter horses. That letter states that "D'Allendo [sic] Meats, LLC, the purchaser of the Valley Meat facility, filed an application for Federal Inspection and a Groundwater Discharge Permit …. D'Allendo [sic] Meats, LLC (1) intends to commercially slaughter equine in New Mexico, and (2) applied for Federal Inspection and State inspection in order to engage in the commercial slaughter of equine." Exhibit 2 attached (a true and correct copy of the International Equine Business Association's October 16, 2014 letter, without internal exhibits). Although the reference to "State inspection" is erroneous, and no evidence was presented that any entity "purchased" Valley Meat, the letter provides additional confirmation of Defendants' efforts to evade the Preliminary Injunction.

[4] USDA denied the new application "without prejudice", on October 30, 2014. Exhibit 3 attached (true and correct copy of USDA's October 30, 2014 letter to D'Allende Meats).

inspection). Defendant Valley Meat regularly and consistently held out Hernandez as a business partner, along with Defendant Ricardo De Los Santos.

USDA appears to be well acquainted with Hernandez, who joined De Los Santos for a November 29, 2012 meeting with the agency, which later described Hernandez as a "business partner" in Valley Meat. Exhibit 8 (a true and correct copy of a December 3, 2012 email from USDA Food Safety Inspection Service's Deputy District Manager Gary Davis to Jennifer McKean of the same agency, summarizing the meeting). At a later site visit conducted by USDA, De Los Santos was joined by his son, several employees or associates, and a man "representing the official establishment partners from El Paso, Texas," whose name the USDA redacted. Exhibit 9 at 1 (a true and correct copy of April 20, 2012 post-walkthrough letter from USDA to Valley Meat). Discovery would reveal whether the official was Hernandez, Okubo, or another individual whom Defendants have so far concealed from the State. USDA's June 27, 2013 decision memorandum excluding the grant of inspection to Valley Meat from the requirements of the National Environmental Policy Act notes that De Los Santos "obtained his second … grant [of inspection] on September 1, 2010 <u>after adding Mr. Jose Hernandez as a second owner and partner</u> and changing the name of the slaughter plant [from Pecos Valley Meat] to Valley Meat." Exhibit 10 (a true and correct copy of a relevant excerpt of the USDA decision memo) (emphasis added).

Corporate filings confirm the fiduciary role that both Hernandez and Okubo play in Valley Meat's business affairs. In December 2010, Valley Meat filed an amendment to its Articles of Organization with the New Mexico Secretary of State, listing Hernandez as a member of the company. Exhibit 11 (a true and correct copy of the filed amendment, as received from the New Mexico Secretary of State). New Mexico Secretary of State records identify Okubo as

6

Valley Meat's designated agent. Exhibit 12 (a true and correct copy of a printout from the New Mexico Secretary of State's Corporations Division).

In addition, an application for a wastewater discharge permit dated September 25, 2014 was submitted to NMED in the name of D'Allende Meats.[5] Exhibit 13 (a true and correct copy of D'Allende Meats' September 25, 2014 wastewater discharge permit application, with page numbers inserted for ease of reference). The new application is functionally identical to the discharge permit application that Defendants previously submitted, and recently withdrew, for Valley Meat, after NMED's independent Hearing Officer recommended denial of the application and this Court issued its Preliminary Injunction.

The new NMED permit application names Okubo in connection with the new shell company. Ex. 13 at, *e.g.*, 2, 3. That application lists a business address for D'Allende Meats of 1601 E. Fourth Avenue, El Paso, Texas 79901, which is the same address established by Hernandez for D'Allende Meats when he organized the company as a Texas limited liability company on September 23, 2014, *see* Exhibit 14 (a true and correct copy of a printout from the Texas Office of the Comptroller), and when he registered the company in New Mexico on October 9, 2014 as a foreign limited liability company, *see* Exhibit 15 (a true and correct copy of a printout from the New Mexico Secretary of State's Corporations Division). Hernandez appears in both corporate filings as the registered agent for D'Allende Meats. Exs. 14-15.

In addition, the new D'Allende Meats discharge permit application is virtually a carbon copy of the application previously submitted by Valley Meat. For example, the original Valley Meat discharge permit application lists a requested discharge volume of 8,000 gallons per day for a "slaughter facility"; so does D'Allende Meats' application. *Compare* Exhibit 16 at 6, 10 (a true

---

[5] The wastewater discharge application for D'Allende Meats appears to first have been submitted on or shortly after September 25, 2014, and resubmitted about a week later with no substantive changes.

and correct copy of Valley Meat's 2010 discharge permit application, with page numbers inserted for ease of reference) with Exhibit 13 at 4, 8 (D'Allende Meats' discharge permit application). D'Allende Meats' application tracks Valley Meat's application verbatim in its responses about the company's operational plan (Ex. 16 at 10-12, 21-22, Ex. 13 at 8-10, 36-37), monitoring plan (Ex. 16 at 12-14, Ex. 13 at 10-12), contingency plan (Ex. 16 at 14-15, Ex. 13 at 12-13) and operating systems maintenance plan (Ex. 16 at 24, Ex. 13 at 35).  In every publicly available document, D'Allende Meats mimics virtually every aspect of Valley Meat's proposal.  The Court may recall that Valley Meat's application was addressed at a public hearing in October 2013, and that the New Mexico Environment Department Hearing Officer recommended denial of the application.  Exhibit 17 at 3, 38, 42, 47, 49 (a true and correct copy of the Hearing Officer's January 7, 2014 report).

Although the precise nature of Hernandez's and Okubo's roles in the various Defendant corporations is not known due to Defendants' strenuous efforts to conceal that information from the State, the public records cited above show that at a minimum Hernandez and Okubo have played ongoing fiduciary roles both in Valley Meat and in the new shell company, D'Allende Meats.

<u>**Argument**</u>

I. **THE COURT HAS THE AUTHORITY TO ENFORCE THE PRELIMINARY INJUNCTION**

It is axiomatic that a party bound by a court's injunction has the "duty … to obey it so long as the injunction remains in effect." *Gutierrez v. Commonwealth*, 163 S.W.3d 439, 441 (Ky. 2005) (citation omitted); *see also Kessel v. Leavitt*, 511 S.E.2d 720, 771 (W. Va. 1998) ("[I]t is the duty of the parties enjoined to obey [the injunction] scrupulously, and they will be held to a strict observance of it."); *Arthur Young & Co. v. Kelly*, 588 N.E.2d 233, 240 (Ohio Ct. App.

1990) (citing *Windham Bank v. Tomaszczyk*, 271 N.E.2d 815 (Ohio 1971)) ("A party subject to a preliminary injunction must comply with the letter and spirit of the injunction.). "Doing something which would tend to obstruct the court is the definition of contempt. In this regard, courts have been strict." *Arthur Young & Co.*, 588 N.E.2d at 240. It is well established that "the court has the power to coerce or force compliance with a court order, or in the alternative, the court can impose sanctions by way of compensating the aggrieved party and awarding that party his or her attorney fees and costs." *Rhinehart v. Nowlin*, 1990-NMCA-136, ¶ 28, 111 N.M. 319.

## II.     INJUNCTIONS BIND PARTIES, PARTIES IN PRIVITY, AND SHELL CORPORATIONS

### A.     Persons in Privity, or Who Aid Efforts to Evade an Injunction, Are Bound by the Injunction

It is established law in New Mexico that an injunctive order, "even if granted in personam, may bind a person in privity with the one enjoined." *Hindi v. Smith*, 1963-NMSC-226, ¶ 8, 73 N.M. 335; *see also Nat'l Spiritual Assembly of the Baha'is of the United States of America Under the Hereditary Guardianship, Inc. v. Nat'l Spiritual Assembly of the Baha'is of the U.S.*, 628 F.3d 837, 848-49 (7th Cir. 2010) ("It is generally accepted that an injunction may be enforced against a nonparty in 'privity' with an enjoined party."); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1277 (9th Cir. 1992). "Privity" in this context means a mutual or successive relationship to rights and responsibilities; "[t]he reason why persons standing in this relation to the litigating party are bound by the proceedings … is that they are identified with [the litigating party] in interest." *Hindi*, 1963-NMSC-226, ¶ 8 (citing 28 Am. Jur. § 296, p. 810). In other words, "privity represents a legal conclusion that the relation between the party and non-party is so close that the judgment may fairly bind the non-party." *Class*

*Plaintiffs*, 995 F.2d at 1277-78 (citing *United States v. Truckee-Carson Irrigation Dist.*, 649 F.2d 1286, 1303 (9th Cir. 1981) (internal quotation marks omitted)).

This principle, which has been widely recognized by other state and federal courts and has been incorporated into the Federal Rules of Civil Procedure, *see* Fed. R. Civ. P. 65(d), is "derived from the common law doctrine that a decree of injunction not only binds the parties [that are] defendant[s] but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control." *Regal Knitwear Co. v. Nat'l Labor Relations Bd.*, 324 U.S. 9, 14 (1945). The rationale is that "defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding." *Id.*; *see also SEC v. Homa*, 514 F.3d 661, 674 (7th Cir. 2008) ("Indeed, if courts did not have the power to punish" non-parties who work in concert with the explicitly enjoined parties, "the named parties could easily thwart the injunction by operating through others.") (discussing *Stotler v. Able*, 870 F.3d 1158, 1164 (7th Cir. 1989)). Courts are especially vigilant where a non-party "aids, abets, or conspires with another to evade an injunction or order of a court," *Whitcraft v. Brown*, 570 F.3d 268, 272 (5th Cir. 2009) (citation and brackets omitted); *see also Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1324 (9th Cir. 1998) (A non-party may be held in contempt where it "abet[s] the defendant" in violating court order or else is "legally identified with him").

  **B.**  **<u>Persons Responsible for a Corporation Are Bound by an Injunction against the Corporation</u>**

Second, because "corporate entities can only act through their human agents," *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 835 (1985), an order enjoining a corporation "is in effect a command to those who are officially responsible for the conduct of its affairs." *Wilson v. United States*, 221 U.S. 361, 376 (1911). It is well-settled that "[a]n order to a corporation binds

those who are legally responsible for the conduct of its affairs," and "[d]e facto as well as de jure officers are responsible for enabling a corporation to comply with orders directed to it." *United States v. Laurins*, 857 F.2d 529, 535 (9th Cir. 1988) (citations omitted). An injunction or other order of a court reaches a non-party officer or agent of a company although the owner or agent is not named in the order. *See, e.g., Elec. Workers Pension Trust Fund of Local Union #58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 383-84 (6th Cir. 2003). "A key employee, officer, director, shareholder, or other central figure in an enjoined corporation can be personally bound by the injunction even after the company has dissolved," if that person is sufficiently identified with the enjoined corporation so that "it may reasonably be said that he had his day in court when the injunction was issued." *Nat'l Spiritual Assembly*, 628 F.3d at 852 (citation and internal quotation marks omitted).

### C. Successor Corporations Are Bound by an Injunction

Third, a successor to an enjoined corporation "acquire[s] the business subject to th[e] court's order." *Reich v. Sea Sprite Boat Co.*, 50 F.3d 413, 414 (7th Cir. 1995); *see also Southwest Distrib. Co. v. Olympia Brewing Co.*, 1977-NMSC-050, ¶ 13, 90 N.M. 502 (successor corporation acquires liabilities and obligations of transferor corporation where in effect "there is a continuation of the transferor corporation"). This is particularly true "where a successor corporation is formed essentially for the purpose of carrying on the enjoined activity." *Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*, 91 F.3d 914, 919-20 (7th Cir. 1996). By extension, "an organization and its agents may not circumvent a valid court order merely by making superficial changes in the organization's name or form, and in appropriate circumstances a court is authorized to enforce its order against a successor of the enjoined organization." *Vacco v. Operation Rescue Nat'l*, 80 F.3d 64, 70 (2d Cir. 1996). "Whether a new organization is the

successor an enjoined organization depends upon the facts and circumstances of the case," and the "critical inquiry is whether there is a substantial continuity of identity between the two organizations." *Id*.

A "substantial continuity of identity" exists where a company changes names or corporate forms, "but not the nature of the business it conduct[s]" or its facilities, business records, and key management. *United Nuclear Corp. v. Gen. Atomic Co.*, 1980-NMSC-094, ¶ 64, 96 N.M. 155; *see also Software Freedom Conservancy, Inc. v. Westinghouse Digital Elecs., LLC*, 812 F. Supp. 2d 483, 487 (S.D.N.Y. 2011) (conducting business at the same physical premises as a prior company, acquiring the assets of the prior company, and an overlap in management between old and new companies are among the "hallmarks of a substantial continuity of identity.") (internal quotation marks omitted); *see also FTC v. John Beck Amazing Profits, LLC*, 865 F. Supp. 2d 1052, 1082 (C.D. Cal. 2012) (Factors in determining common enterprise include (1) common control; (2) sharing office space and offices; (3) whether business is transacted through interrelated companies, and (4) commingling of funds).

### III. DEFENDANTS AND THE AFFILIATES ARE ACTING TO CIRCUMVENT THE PRELIMINARY INJUNCTION

Defendants never informed the Court that the fiduciaries of Valley Meat, an enjoined party, were in the process of organizing a new successor company and filing applications for regulatory approval for their planned horse slaughter business even as Valley Meat simultaneously represented to the Court that it had no intention of ever again pursuing such operations. Even more troubling, more than a week <u>after</u> Valley Meat's fiduciaries submitted applications for a grant of inspection to USDA and a discharge permit to NMED in the name of the successor shell company, Defendants again told the Court that "they are completely finished

and abandoned from [sic] their pursuit of any meat processing endeavor with absolutely no plans or ability to continue." Defs.' Reply to Res. to Mot. to Dismiss at 1-2 (filed October 6, 2014). Contrary to those representations, it is now clear that Defendants, and the Affiliates, have every intention of maintaining their pursuit of horse slaughter for human consumption.

Messrs. Hernandez and Okubo fall within the coverage of the Injunction on multiple bases: (1) as persons in privity with Defendants, *see Hindi*, 1963-NMSC-226, ¶ 8; (2) as individuals "aiding or abetting or acting in concert with a named defendant or his privy in violating the injunction," *Marshak v. Treadwell*, 595 F.3d 478, 486 (3d Cir. 2009); and (3) as "central figure[s] in an enjoined corporation," *Nat'l Spiritual Assembly*, 628 F.3d at 852.

The new shell company, D'Allende Meats, similarly is subject to the Preliminary Injunction, since it quite clearly was "formed essentially for the purpose of carrying on the enjoined activity." *Rockwell Graphic Sys.*, 91 F.3d at 919-20; *see also Walling v. James V. Reuter, Inc*., 321 U.S. 671, 673-74 (1944) (injunction should "be enforced against those to whom the business may have been transferred, whether as a means of evading the judgment or for other reasons."). Such enforcement is necessary to protect the integrity of the Preliminary Injunction: "Where an enjoined party engages in subterfuge, and attempts to circumvent an injunction through the instrumentality of a shell company, an agent, or a successor in interest, the injunction will reach the conduct of the nonparty." *Golden Krust Patties, Inc. v. Bullock*, 957 F. Supp. 2d 186, 201 (E.D.N.Y. 2013). "[E]njoined parties may not play jurisdictional shell games; they may not nullify an injunctive decree by carrying out prohibited acts with or through nonparties to the original proceeding." *People ex rel. Gwinn v. Kothari*, 100 Cal. Rptr. 2d 29, 35 (Cal. App. 2000).

## IV. THE PRELIMINARY INJUNCTION SHOULD BE MODIFIED TO PREVENT DEFENDANTS AND THEIR AFFILIATES FROM TAKING PREPARATORY STEPS TO VIOLATE THE COURT'S ORDER

The Court "clearly possess[es] the jurisdiction and power to modify [its] original injunction so as to effectuate its intended purpose and result." *1250 24th St. Assocs. Ltd. P'ship v. Brown*, 684 F. Supp. 326, 329 (D.D.C. 1988); *see also Brown v. Plata*, 131 S. Ct. 1910, 1946 (2011) ("The power of a court of equity to modify a decree of injunctive relief is long-established, broad, and flexible") (citation omitted); *Exxon Corp. v. Tex. Motor Exch. of Houston*, 628 F.2d 500, 503-04 (5th Cir. 1980) (an injunction may be modified to impose more stringent requirements on the defendant when the original purposes of the injunction are not being fulfilled).

The Preliminary Injunction should be modified to make explicit that Defendants and their Affiliates may not file regulatory applications for permission to undertake acts – slaughtering horses for human food and discharging wastewater – that would directly violate the Preliminary Injunction. *See* Preliminary Injunction, ¶ 52 (Defendants are enjoined and restrained from "slaughtering horses for human consumption," "manufacturing, selling or distributing horse meat products for human consumption," and "discharging wastewater in any manner and under any theory").

Because the operations that Defendants and the Affiliates seek permission to perform are per se violations of the Preliminary Injunction, the Court can and should modify the Preliminary Injunction to foreclose all such efforts to evade its mandate. There is ample authority to support an injunction that includes preparatory acts within its sweep. *See, e.g.*, *Mitchell v. Mitchell*, 311 S.E.2d 456, 457-58 (Ga. 1984) (where trial court determined that children in custody dispute should not be taken outside the United States, order properly enjoined parents from applying for

passports on behalf of children); *Robrock v. County of Piatt*, 967 N.E.2d 822, 827 (Ill. App. 2012) (where trial court enjoined landowner from using property to take off and land aircraft, order also properly enjoined landowner from applying for permits to build an airstrip). Here too, the Court has ample authority to fashion injunctive relief that will "stop [Defendants'] 'elaborate winking' at [the court's] prior decree, as well as outright disobedience." *Omaha Indem. Co. v. Wining*, 949 F.2d 235, 238 (8th Cir. 1991).

## **Conclusion**

For the foregoing reasons, the State respectfully requests that the Court enter an order:

(1) Holding that Jose Hernandez, Ryoichi Okubo, D'Allende Meats, LLC (the "Affiliates"), and any other agent of Defendants or successor in interest to Defendants, are subject to the Preliminary Injunction;

(2) Modifying the Preliminary Injunction to enjoin Defendants, the Affiliates, and any other agent of Defendants or successor in interest to Defendants, from pursuing regulatory approval from USDA, NMED or any other agency to undertake commercial horse slaughter or wastewater discharge, actions which Defendants are specifically enjoined from undertaking; and

(3) Awarding such other relief as the Court deems just and proper.

Respectfully Submitted,

GARY K. KING
New Mexico Attorney General

By:
*/s/ Ari Biernoff*

Ari Biernoff

Assistant Attorneys General
Post Office Drawer 1508
Santa Fe, NM 87504-1508
(505) 827-6086
abiernoff@nmag.gov


Of counsel: R. David Pederson

## CERTIFICATE OF SERVICE

I certify that on December 2, 2014, I filed a true and correct copy of the foregoing *Expedited Motion to Enforce and Modify Preliminary Injunction* electronically through the Odyssey File & Serve system, thereby providing service to all counsel of record, and additionally provided service by overnight mail to the following:

D'Allende Meats, LLC
1601 E. Fourth Avenue
El Paso, TX 79901

Jose Hernandez
605 Meadow Willow Dr.
El Paso, TX 79922

Ryoichi Okubo
6793 Pearl Ridge Dr.
El Paso, TX 79912

*/s/ Ari Biernoff*