## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO ex rel. HECTOR
H. BALDERAS, Attorney General, State of
New Mexico,[1]

      Plaintiff,

vs.                                                  No. CIV 14-1100 JB/KBM

VALLEY MEAT COMPANY, LLC;
RICARDO DE LOS SANTOS; MOUNTAIN
VIEW PACKING, LLC; and DAIRYLAND
PACKING, LLC,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff State of New Mexico's Motion to

Remand and for Costs, and Memorandum in Support, filed December 12, 2014 (Doc. 9)

("Motion"). The Court held a hearing on January 20, 2015. The primary issues are: (i) whether

Plaintiff State of New Mexico violated D.N.M. LR-Civ. 7.1(a)'s meet-and-confer requirement

when it requested consent less than three hours before filing the Motion and declined to provide

the opposing party with a copy of the Motion; (ii) whether a non-Defendant, D'Allende Meats,

LLC, can remove a case from state court to federal court without any Defendant's consent;

---

[1]Both the Complaint, filed in state court December 19, 2013, filed in federal court
December 4, 2014 (Doc. 2-2), and the Notice of Removal, filed December 4, 2014 (Doc. 2), list
the Plaintiff as being the State of New Mexico ex rel. Gary K. King, Attorney General of the
State of New Mexico. "On Tuesday, November 4th, 2014, Hector Balderas was elected the 31st
Attorney General for the State of New Mexico," however, and he took office soon after. About
Hector Balderas, State of New Mexico Office of the Attorney General, http://www.nmag.gov/
about-hector-balderas.aspx (last visited May 16, 2015). Under rule 25(d) of the Federal Rules of
Civil Procedure, when an official sues or is sued in his or her official capacity, and the official
leaves office during the course of the litigation, "[t]he officer's successor is automatically
substituted as a party[, and l]ater proceedings should be in the substituted party's name." Fed. R.
Civ. P. 25(d).

(iii) whether the Court has subject-matter jurisdiction over this case, where the jurisdictional basis asserted in the Notice of Removal, filed December 4, 2014 (Doc. 2) -- civil-rights jurisdiction -- lacks a sound basis in the case's facts, and D'Allende Meats' ad hoc jurisdictional basis -- federal-question jurisdiction -- consists of vague assertions of federal field preemption and the dormant Commerce Clause; and (iv) whether, if the Court remands this case, it should also impose costs and fees against D'Allende Meats. As to the first issue, the Court concludes that the State of New Mexico complied with D.N.M. LR-Civ. 7.1(a), and, even if it had not, the Court would be unable to deny the Motion as a sanction for noncompliance, because the Court lacks subject-matter jurisdiction over the case. As to the second issue, the removal is procedurally defective, both because a non-Defendant filed it, and because no Defendant joined in or consented to the removal -- let alone all of them, as the statute requires. As to the third issue, this case does not fall within original federal subject-matter jurisdiction. Federal-question jurisdiction, which is the jurisdictional basis upon which D'Allende Meats relied in opposing the Motion, is not present: this case does not implicate the dormant Commerce Clause, and D'Allende Meats has not established that the regulations of the United States Department of Agriculture ("USDA") preempt any of the State of New Mexico's state-law claims. Even if federal-question jurisdiction were present, that basis is not the basis of removal that D'Allende Meats asserted in its Notice of Removal, and removers may not change their preselected jurisdictional basis in response to a motion to remand. The Notice of Removal's asserted jurisdictional basis -- civil-rights jurisdiction -- is baseless, as even D'Allende Meats now concedes. As to the fourth issue, the Court will assess costs and fees against D'Allende Meats, because its removal was objectively unreasonable. The Court will thus grant the Motion, remand

this case to state court, and order D'Allende Meats to pay the State of New Mexico's just costs and actual expenses, including attorneys' fees.

## FACTUAL BACKGROUND

The Defendants own and operate a cattle slaughterhouse in Roswell, New Mexico.  See Complaint ¶¶ 2-12, at 1-3, filed in state court December 19, 2013, filed in federal court December 12, 2014 (Doc. 2-2).  They ceased operations in April, 2012, but they plan to reopen "in the imminent future."  Complaint ¶ 14, at 3.  When they reopen, however, they plan to slaughter horses -- rather than cattle -- and they plan to slaughter them for the purpose of human consumption.  See Complaint ¶ 14, at 3.  The State of New Mexico alleges that the Defendants committed numerous violations of environmental and health regulations even when they were slaughtering cattle, and that horses present much greater health concerns than cattle when their slaughter is done under poor sanitary conditions.  See Complaint ¶¶ 15-32, at 3-8.

Horse slaughter for human consumption has not occurred anywhere in the United States of America in the last six years.  See Complaint ¶ 46, at 13.  Defendant Valley Meat Company, LLC, filed suit against the USDA, however, and, on June 28, 2013, the USDA issued Valley Meat a "grant of inspection" permitting it to begin slaughtering horses.  Complaint ¶ 48, at 13. On July 2, 2013, a group of individuals and nonprofit organizations filed suit in federal court against the USDA, demanding that it rescind its earlier decision; the State of New Mexico intervened in that suit on behalf of the plaintiffs, with the stated purpose of protecting New Mexico's groundwater and public health.  See Complaint ¶¶ 49-50, at 14.  The plaintiffs in that case were ultimately unsuccessful, and their suit was ultimately dismissed.  See Complaint ¶ 51, at 14.

## PROCEDURAL BACKGROUND

The State of New Mexico filed this suit in First Judicial District Court, County of Santa Fe, State of New Mexico, on December 19, 2013.  See Complaint at 1.  It alleges four causes of action, each of which arises under New Mexico law.  See Complaint ¶¶ 58-104, at 15-24.  First, it alleges violations of the New Mexico Food Act, N.M. Stat. Ann. §§ 25-2-1 to -20.  See Complaint ¶¶ 58-72, at 15-18.  Second, it alleges violations of the New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-1 to -26.  See Complaint ¶¶ 73-89, at 18-21.  Third, it alleges violations of the New Mexico Water Quality Act, N.M. Stat. Ann. §§ 74-6-1 to -17.  See Complaint ¶¶ 90-98, at 21-23.  Fourth, it alleges common-law public nuisance.  See Complaint ¶¶ 99-104, at 23-24.

Just under a year after filing, D'Allende Meats removed this case to federal court.  See Notice of Removal at 1.  D'Allende Meats describes itself as a "Defendant" in the Notice of Removal, but it is not named as a Defendant in the Complaint.  See Complaint ¶¶ 1-10, at 1-3.  It says that, when it filed the removal, the state court was in the process of entertaining an "Expedited Motion seeking to enjoin non-party D'Allende (a wholly separate Texas company that had acquired Defendant's premises)."  Notice of Removal ¶ 2, at 1.[2]  D'Allende Meats attached a copy of this motion to its Notice of Removal.  See Plaintiff State of New Mexico's *Expedited* Motion to Enforce and Modify Preliminary Injunction, filed in state court December 2, 2014, filed in federal court December 4, 2014 (Doc. 2-3)("Expedited Motion").  The Expedited Motion's preliminary statement summarizes its content:

---

[2]The Notice of Removal's internal pagination is erroneous; it lists every page as page number "2."  The Court will, instead, pincite to CM/ECF's pagination -- the number at the top-right corner of each page.

Just a few months ago, Defendants represented to the Court that they "are not operating and have no plans or ability to operate a horse processing facility," and on that asserted basis urged the Court to dismiss the State of New Mexico's claims as moot.  Before the ink on their motion was dry, Defendants reneged on that representation.  While insisting to the Court that they no longer have involvement or interest in commercial horse slaughter, Defendants simultaneously were busy creating a new shell company, through which they applied for the very same permits to conduct commercial horse slaughter that they had withdrawn only a few weeks earlier.

Those recent actions by Defendants, in concert with three non-parties -- the new shell company, D'Allende Meats, LLC, and its principals Jose Hernandez and Ryoichi Okubo -- necessitate this motion to enforce and to modify the Court's January 17, 2014 Order Granting Preliminary Injunction ("Preliminary Injunction") enjoining Defendants from pursuing horse slaughter.  At a minimum, Defendants' actions are an effort to evade the Court's order; at worst, they represent an attempt by Defendants to perpetrate a fraud on the Court. In either event, the Court can and should enforce the Preliminary Injunction against the non-parties with whom Defendants are colluding (the "Affiliates") to bring commercial horse slaughter to New Mexico.   In addition, the Preliminary Injunction should be modified to make clear that Defendants and their Affiliates may not undertake preparatory steps that, if completed, will necessarily result in a violation of the Preliminary Injunction.

The State files this motion on an expedited basis, see Local Rule 1-306(I), due to the demonstrated risk that Defendants and the Affiliates will continue their efforts to circumvent the Preliminary Injunction absent judicial intervention.

As required by Rule 1-007.1(C) NMRA, the undersigned requested opposing counsel's position on this motion, who responded in relevant part with a series of threats:

> You are abusing the Attorney General's authority and this is absolutely malicious abuse of process.  You lied to the Court in your supplemental notice. These individuals you are naming are not Valley Meat Company. If you file this we will add it to our Motion to Strike and for Sanctions.  Please also be on Notice that we will be seeking sanctions against you personally, the state should not have to pay for your malfeasance.  Further this should also be treated as Notice that if you file this we will file an action for malicious abuse of process against the Attorney General's Office you are potentially incurring liability by abusing the process.  By the time the dust settles General King will have only succeeded in handing off a bucket of liability to General Balderas. This is truly bad form at the 11th hour.

- 5 -

Expedited Motion at 1-3.  D'Allende Meats argues that it is not a shell company of Valley Meat and that the two companies are entirely distinct.  <u>See</u> Notice of Removal ¶ 5, at 2.  It argues that federal subject-matter jurisdiction exists under 28 U.S.C. §§ 1443 and 1446, <u>i.e.</u>, civil-rights jurisdiction and removal jurisdiction.  <u>See</u> Notice of Removal at 1.

The State of New Mexico moved to remand eight days after removal.  <u>See</u> Motion at 1. First, it argues that D'Allende Meats lacks "standing" to remove, because it is not a Defendant in the case.  Motion at 6-8.  It points out that the text of both §§ 1443 and 1446 limits the power of removal to "'defendant[s],'" and that "'[a] non-party -- even one that . . . claims to be a real party in interest -- has no authority to notice removal' under the removal statutes."  Motion at 7-8 (omission in Motion)(quoting <u>Am. Home Assur. Co. v. RJR Nabisco Holdings Corp.</u>, 70 F. Supp. 2d 296, 298-99 (S.D.N.Y. 1999)).  Second, it argues that § 1443 would not support this case's removal even if D'Allende Meats were a Defendant.  <u>See</u> Motion at 9-15.  The State of New Mexico asserts that the Supreme Court of the United States cabined § 1443's jurisdictional basis into a "'specific and extremely narrow'" ground for removal in <u>State of Georgia v. Rachel</u>, 384 U.S. 780 (1966), and <u>City of Greenwood v. Peacock</u>, 384 U.S. 808 (1966), despite the fact that § 1443's text is seemingly broad and open-ended.  Motion at 10 (quoting <u>Davis v. Sup. Ct. of the State of Cal.</u>, 464 F.2d 1272, 1273 (9th Cir. 1972)).  The State of New Mexico argues that § 1443(2) is "plainly inapplicable" to this case, because Congress designed that subsection for the limited purpose of allowing government-actor defendants who are sued for their refusal to enforce discriminatory state laws to remove cases against them to federal court.  Motion at 10. As for § 1443's other subsection, the State of New Mexico argues, essentially, that it applies only to statutes designed to prevent racial discrimination.  <u>See</u> Motion at 13.  It asks the Court to remand the case and grant it costs and attorneys' fees.  <u>See</u> Motion at 16-18.

D'Allende Meats responded to the Motion fifteen days later.  <u>See</u> Response to Motion for Remand and Costs, filed December 27, 2014 (Doc. 10)("Response").  It devotes about half of its Response to advancing the argument that the Court should deny the Motion as a sanction for the State of New Mexico's alleged failure to comply with local rule 7.1's meet-and-confer requirement.  <u>See</u> Response ¶¶ 1-3, at 1-2.  It also defends its decision to remove on the merits, but switches its purported jurisdictional basis from civil-rights jurisdiction under § 1443 to federal-question jurisdiction under § 1331.  <u>See</u> Response ¶ 6, at 3.  The Court will reproduce the substantive portion of D'Allende Meats' argument -- <u>i.e.</u>, the portion not devoted to local rule 7.1 -- in its entirety:

> The largest deficiency in Plaintiff's Motion is belief that they can have it both ways.  On one hand they argue that all Defendants are one and the same, but on the other hand they argue that some of the Defendants are non-parties.  They argue without any real evidence that Defendants are the same entities such that that should be swept into a preliminary injunction that prohibits the companies from even availing themselves of seeking federal grant of inspection for what is considered, under exclusive federal jurisdiction, to be a legal activity of interstate commerce.  Plaintiff goes so far as to serve pleadings on all Defendant parties as though they are parties (<u>See</u> Notice of Removal Exhibit C, Certificate of Service) then argues that they are not parties capable of Removal or raising a federal questions that would warrant removal under 28 USC 1331.
>
> It is especially important to note for the Court the relief requested by the Attorney General in this matter:
>
>> Modifying the Preliminary Injunction to enjoin Defendants, the Affiliates, and any other agent of Defendants or successor in interest to Defendants, from pursuing regulatory approval from USDA, NMED or any other agency to undertake commercial horse slaughter or wastewater discharge, actions which Defendants are specifically enjoined from undertaking
>
> (<u>See</u> Notice of Removal Exhibit C)  First, it is important [to] note, not only for the she[e]r hypocrisy of Plaintiff's arguments about non-parties filing for removal, but also for the point that Plaintiff is attempting to persuade a Judge to prevent a valid out-of-state entity from pursuing regulatory approval to engage in interstate commerce in a business that has been expressly provided for by Congress.

Defendant acknowledges that jurisdiction was previously noted in the Notice of Removal under 28 U.S.C. § 1443 but now acknowledges that jurisdiction is proper under 28 U.S.C. § 1331. However, the US Supreme Court has examined this jurisdictional issue in <u>Gunn v. Minton</u>, 133 S. Ct. 1059 (2006) where the Supreme Court clarified that resolution of the merits of the federal law arguments was "necessary" and while the issue was "substantial" in the sense that it was important in the plaintiff's case, the Court held that the issue must be important in terms of "the federal system as a whole." Here, a state court decision on the to interfere with the Federal Meat Inspection system will likely create[] new law because the state court is attempting to wholesale declare an activity permitted and regulated by Congress illegal. <u>Id.</u> at 1066. But it is Congress, not the state courts have the jurisdiction [to] change the law with regard to interstate commerce permits and who[] may apply and be granted such permissions.

At its core, this case is about an Attorney General that seeks to rewrite federal law concerning horse processing though the state court system. In doing so he now inserted the New Mexico State Court system improperly into the role of federal legislator. By his actions the Attorney General has engaged in malicious abuse of process and is placing New Mexico in the position of violating the protections afforded by the US Constitution regarding a state's interference with interstate commerce. This Court has jurisdiction arising out claims derived from Constitutional claims and federal laws such as the Federal Meat Inspection Act, 21 U.S. Code § 602 where Congress stated its intent that:

> It is hereby found that all articles and animals which are regulated under this chapter are either in interstate or foreign commerce or substantially affect such commerce, and that regulation by the Secretary and cooperation by the States and other jurisdictions as contemplated by this chapter are appropriate to prevent and eliminate burdens upon such commerce, to effectively regulate such commerce, and to protect the health and welfare of consumers.

Response ¶¶ 4-7, at 2-4.

The State of New Mexico replied sixteen days later. <u>See</u> Plaintiff State of New Mexico's Reply Memorandum in Further Support of Its Motion to Remand and for Costs, filed January 12, 2015 (Doc. 11)("Reply"). The Reply mostly reiterates the arguments already made in the Motion, except that it also (i) addresses D'Allende Meats' attempt to switch from civil-rights to federal-question jurisdiction, <u>see</u> Reply at 1-2, 4-10; and (ii) argues that it complied with local rule 7.1, <u>see</u> Reply at 10-12. On point (i), the State of New Mexico argues that the Court should

not allow D'Allende Meats to assert a jurisdictional basis in the Response that it did not assert in the Notice of Removal.  See Reply at 4-5.  As a backstop, it additionally argues that no federal-question jurisdiction exists, because the claims in the Complaint are neither created by federal law nor do they require the resolution of a substantial question of federal law.  See Reply at 6.  On point (ii), it argues that it complied with local rule 7.1 by notifying D'Allende Meats of its pending Motion and that it was not necessary to provide D'Allende Meats with a draft of the Motion.  See Reply at 10-11.  As a backstop to this argument, the State of New Mexico argues that, even if the Court were to strike the Motion for noncompliance with local rule 7.1, it should still remand the case, because a lack of subject-matter jurisdiction trumps procedural rules and would necessitate remand even if the State of New Mexico had not moved to remand at all.  See Reply at 12 n.7.

    The Court held a hearing on January 20, 2015.  See Transcript of Hearing (taken Jan. 20, 2015)("Tr.").[3]  The Court first noted that it was concerned about the State of New Mexico seeking an injunction against a non-party, and asked the State of New Mexico whether it would be willing to enter into a stipulation stating "that the State will not seek or secure an injunction that applies to D'Allende Meats if this case were remanded."  Tr. at 3:11-13 (Court).  The State of New Mexico largely dodged this question, stating that it did not contest that D'Allende Meats is an "interested party" in the litigation, Tr. at 4:22-23 (Biernoff), but asserted that it is not a "Defendant" for purposes of the removal statute, Tr. at 4:14-16 (Biernoff).  The Court asked how a court could enforce an injunction against a non-defendant, noting that the situation "kind of puts D'Allende into a bit of a bind," as it was "roped into state court, and yet [it] can't then

_____

[3]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final version may contain slightly different page and/or line numbers.

remove [the case] to federal court." Tr. at 5:15-20 (Court). At this point the State of New Mexico clarified its position, asserting that it could not and would not enter into a stipulation. See Tr. at 4-17 (Biernoff). It stated that enforcement of the injunction against non-party D'Allende was appropriate under New Mexico law, because D'Allende is a shell company of Valley Meat; it argued that, if named defendants to an injunction were allowed to flout the injunction simply by creating a shell company, then injunctions could never be enforced. See Tr. at 6:4-8:15 (Biernoff, Court). Moreover, it stated that it was not demanding that D'Allende Meats concede that the injunction could be enforced against it, see Tr. at 5:8-11 (Biernoff), but, rather, that it was a live, open question for the state court, and D'Allende Meats remains free to argue that the injunction should not be applied against it, see Tr. at 5:8-11 (Biernoff).

The Court asked D'Allende Meats how it believed it could get around the removal statute's plain language, which appears to restrict removal to defendants. See Tr. at 11:16-24 (Court). It responded that the State of New Mexico had "served [it] as [a] defendant[ and was] treating [it] as [a] defendant[]," and that it should thus be entitled to remove the case as if it were a defendant. Tr. at 12:1-9 (Dunn). The Court asked whether, if it remanded the case and the State of New Mexico later added D'Allende Meats as a defendant, D'Allende Meats would then be able to remove the case. See Tr. at 12:10-13 (Court). D'Allende Meats responded that it believed it would be able to remove the case under those circumstances. See Tr. at 12:14-15 (Dunn).

The Court then directed the parties' discussion to the underlying basis of subject-matter jurisdiction. D'Allende Meats clarified that it had never intended to assert civil-rights jurisdiction, but, rather, had written § 1443 instead of § 1331 as a result of a typographical error. See Tr. at 16:2-10 (Dunn, Court). D'Allende Meats then presented its argument for the existence

- 10 -

of federal-question jurisdiction, which appeared to be a mix of federal preemption and dormant Commerce Clause theories.  See Tr. at 17:14-18:12 (Dunn).  See also Tr. at 21:2-5 (Court, Dunn).  It conceded, however, that all of the State of New Mexico's claims are state-law claims. See Tr. at 18:13-16 (Court, Dunn).

## LAW REGARDING REMOVAL AND REMAND

If a civil action filed in state court satisfies the requirements for original federal jurisdiction -- meaning, most commonly, federal-question or diversity jurisdiction -- the defendant may invoke 28 U.S.C. § 1441(a) to remove the action to the federal district court "embracing the place where such action is pending."  28 U.S.C. § 1441(a).  See Huffman v. Saul Holdings LP, 194 F.3d 1072, 1076 (10th Cir. 1999)("When a plaintiff files in state court a civil action over which the federal district courts would have original jurisdiction based on diversity of citizenship, the defendant or defendants may remove the action to federal court . . . .")(quoting Caterpillar Inc. v. Lewis, 519 U.S. at 68).  In a case with multiple defendants, there must be unanimous consent to removal; any one defendant may spoil removal and keep the case in state court.  See 28 U.S.C. § 1446(b)(2)(A).  Only true defendants have removal rights: plaintiffs defending counterclaims and third-party defendants may not remove an action,[4] and their consent

---

[4]This view is well-established with regard to plaintiffs defending counterclaims, but is an open question in the Tenth Circuit with regard to third-party plaintiffs.  The better view, and the majority view, however, is that "defendants" as used in the removal statute refers to true defendants and not to third-party defendants.  The Court wrote in Wiatt v. State Farm Insurance Co., 560 F. Supp. 2d 1068 (D.N.M. 2007)(Browning, J.):

With respect to third-party defendants, courts take various views on whether they may remove cases.  See NCO Fin. Sys., Inc. v. Yari, 422 F. Supp. 2d 1237, 1239 (D. Colo. 2006)(citing Monmouth-Ocean Collection Serv., Inc. v. Klor, 46 F. Supp. 2d 385 (D.N.J. 1999)).  28 U.S.C. § 1441(a) permits the removal of a civil action of which the district courts of the United States have original jurisdiction "by the defendant or the defendants."  The majority view is that third-party defendants are not "defendants" within the meaning of § 1441(a).

See First Nat. Bank of Pulaski v. Curry, 301 F.3d 456, 461-62 (6th Cir. 2002); James Wm. Moore, Moore's Federal Practice § 107.11[1][b][iv] ("[T]hird-party defendants are not *defendants* within the meaning of the removal statute." (emphasis in original)).  Other justifications for opposing third-party defendant removal are that it would force a plaintiff to litigate in a federal court that he did not choose and to which his adversary originally could not have removed, and that allowing removal would expand jurisdiction of federal courts in contravention of the strictly construed statutory limits on the right to removal.  See NCO Fin. Sys., Inc. v. Yari, 422 F. Supp. 2d at 1239.  Proponents of third-party removal, however, assert that the term "defendant" under § 1441(a) does not necessarily exclude third-party defendants, who, like other defendants, have been brought into court involuntarily and may have an interest in having a federal forum.

. . . .

Sister districts within the United States Court of Appeals for the Tenth Circuit have routinely held that third-party defendants that a defendant/third-party plaintiff impleads may not remove cases.  See NCO Fin. Sys., Inc. v. Yari, 422 F. Supp. 2d at 1239-40; Menninger Clinic Inc. v. Schilly, No. CIV 92-4104, 1992 WL 373927, at *1-2 (D. Kan. Nov. 23, 1992); Radio Shack Franchise Dep't v. Williams, 804 F. Supp. at 152-53; Elkhart Co-op Equity Exch. v. Day, 716 F. Supp. 1384, 1385, 1387 (D. Kan. 1989)(cross-claim).  These cases, however, involved the application of 28 U.S.C. § 1441(c) and not a plaintiff/counter-defendant impleading the third-party defendant under Rule 14(b).  Arguably, some of the rationales for opposing third-party defendant removal may not apply where the plaintiff impleads a third-party defendant, because the plaintiff is the party permissively joining the third-party defendant, and in this scenario, the third-party defendant is more like a traditional defendant -- a party antagonistic to the plaintiff.  See Moore, supra, § 107.11 [1][b][iv] ("The better view . . . is that third-party claims are not removable, because only a party defending against claims asserted by a plaintiff ought to be able to remove.").  At least one court, however, has held that a third-party defendant a plaintiff/counter-defendant impleads cannot remove, because the third-party defendant is not a defendant within the meaning of § 1441.  See Garnas v. Am. Farm Equip. Co., 502 F. Supp. 349, 351 n.7 (D.N.D. 1980)(based on pre-1990 amendment to section 1441(c)).

The Tenth Circuit has not spoken definitively on the propriety of third-party removal.  See NCO Fin. Sys., Inc. v. Yari, 422 F. Supp. 2d at 1240.  It is therefore an open question in this circuit whether a third-party defendant, who the plaintiff impleaded, may remove a case.

560 F. Supp. 2d at 1076 (citations omitted).  The Court ultimately concluded that it "need not resolve this issue, because assuming, without deciding, that a third-party defendant impleaded under rule 14(b) may attempt removal, Allstate has not met its burden to establish the Court's diversity jurisdiction over the claims against it."  560 F. Supp. 2d at 1078.

- 12 -

is not required for removal if all the true defendants consent.  See Hamilton v. Aetna Life & Cas. Co., 5 F.3d 642 (2d Cir. 1993); Wiatt v. State Farm Ins. Co., 560 F. Supp. 2d 1068 (D.N.M. 2007)(Browning, J.).

To remove a case based on diversity, the diverse defendant must demonstrate that all of the usual prerequisites of diversity jurisdiction are satisfied.  Under 28 U.S.C. § 1332(a), a federal district court possesses original subject-matter jurisdiction over a case when the parties are diverse in citizenship and the amount in controversy exceeds $75,000.00.  See 28 U.S.C. § 1332(a); Johnson v. Rodrigues, 226 F.3d 1103, 1107 (10th Cir. 2000).  Diversity between the parties must be complete.  See Caterpillar Inc. v. Lewis, 519 U.S. at 68; Radil v. Sanborn W. Camps, Inc., 384 F.3d 1220, 1225 (10th Cir. 2004).  In addition to the requirements of original jurisdiction, § 1441(b)(2) lays out the "forum-defendant rule," which provides that a case may not be removed on the basis of diversity jurisdiction if any defendant is a citizen of the state in which the state-court action was brought.  Brazell v. Waite, 525 F. App'x 878, 884 (10th Cir. 2013)(unpublished)[5]("[W]e note that § 1441(b)(2) -- the so-called forum-defendant

_____

[5]Brazell v. White is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court finds that Brazell v. White, Oklahoma Farm Bureau Mutual Insurance Co. v. JSSJ Corp., 149 F. App'x 775 (10th Cir. 2005)(unpublished), Nerad v. AstraZeneca Pharmaceuticals, Inc., 203 F. App'x 911 (10th Cir. 2006)(unpublished), Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592 (10th Cir. 2000)(unpublished), and Hornsby v. Evans, 328 F. App'x 587 (10th Cir. 2009)

rule -- provides as a separate requirement that '[a] civil action otherwise removable solely on the basis of [diversity] jurisdiction . . . may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.'" (alteration in original)(quoting 28 U.S.C. § 1441(b)(2))). The forum-defendant rule applies only to cases removed under diversity jurisdiction; a defendant may remove a case brought against it in its home state on the basis of federal-question jurisdiction. See 28 U.S.C. § 1441(b). Last, a case cannot be removed if it began with a nondiverse party or forum-citizen defendant, and only later came to satisfy the requirements of removal jurisdiction, unless: (i) the plaintiff voluntarily dismissed the removal-spoiling party, see DeBry v. Transamerica Corp., 601 F.2d 480, 488 (10th Cir. 1979); Flores-Duenas v. Briones, No. CIV 0660 JB/CG, 2013 WL 6503537, at *12 n.6, *26 (D.N.M. Dec. 1, 2013)(Browning, J.)(describing the operation of the "voluntary-involuntary rule);[6] or (ii) the removal-spoiling party was fraudulently joined or procedurally misjoined -- doctrines described below.

>    **1.    The Presumption Against Removal.**

Federal courts are courts of limited jurisdiction; thus, there is a presumption against removal jurisdiction, which the defendant seeking removal must overcome. See Laughlin v. Kmart Corp., 50 F.3d 871, 873 (10th Cir. 1995); Fajen v. Found. Reserve Ins. Co., 683 F.2d at

---

(unpublished), all have persuasive value with respect to material issues, and will assist the Court in its disposition of this Memorandum Opinion.

[6]The Tenth Circuit explained:

> The general effect of the [voluntary-involuntary] test is that a cause cannot be removed where the removability is a result of some development other than a voluntary act of plaintiff. The cause cannot be removed as a result of evidence from the defendant or the result of a court order rendered on the merits of the case.

DeBry v. Transamerica Corp., 601 F.2d at 488 (citation omitted).

333; Martin v. Franklin Capital Corp., 251 F.3d at 1290; Bonadeo v. Lujan, No. CIV 08-0812 JB/ACT, 2009 WL 1324119, at *4 (D.N.M. Apr. 30, 2009)(Browning, J.)("Removal statutes are strictly construed, and ambiguities should be resolved in favor of remand.").   The defendant seeking removal must establish that federal court jurisdiction is proper "by a preponderance of the evidence."   McPhail v. Deere & Co., 529 F.3d at 953 (10th Cir. 2008).   See Bonadeo v. Lujan, 2009 WL 1324119, at *4 ("As the removing party, the defendant bears the burden of proving all jurisdictional facts and of establishing a right to removal.").   Because federal courts are courts of limited jurisdiction, the Tenth Circuit has ruled that "courts must deny such jurisdiction if not affirmatively apparent on the record."   Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp., 149 F. App'x 775, 778 (10th Cir. 2005)(unpublished).   On the other hand, this strict construction and presumption against removal should not be interpreted as a hostility toward removal cases in the federal courts.   See McEntire v. Kmart Corp., No. CIV 09-0567 JB/LAM, 2010 WL 553443, at *2 (D.N.M. Feb. 9, 2010)(Browning, J.)(citing Bonadeo v. Lujan, 2009 WL 1324119, at *12 ("Strict construction does not mean judicial hostility toward removal.   Congress provided for removal, and courts should not create rules that are at tension with the statute's language in the name of strict construction.")).

"It is well-established that statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed in light of our constitutional role as limited tribunals."   Pritchett v. Office Depot, Inc., 420 F.3d 1090, 1095 (10th Cir. 2005)(citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941); United States ex rel. King v. Hillcrest Health Ctr., 264 F.3d 1271, 1280 (10th Cir. 2001)).   "All doubts are to be resolved against removal."   Fajen v. Found. Reserve Ins. Co., 683 F.2d 331, 333 (10th Cir. 1982).   "The

burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." Montoya v. Chao, 296 F.3d 952, 955 (10th Cir. 2002).

2. **The Procedural Requirements of Removal.**

Section 1446 of Title 28 of the United States Code governs the procedure for removal. "Because removal is entirely a statutory right, the relevant procedures to effect removal must be followed." Thompson v. Intel Corp., 2012 WL 3860748, at *5. A removal that does not comply with the express statutory requirements is defective, and the Court must, upon request, remand the case to state court. See Huffman v. Saul Holdings LP, 194 F.3d at 1077. See also Chavez v. Kincaid, 15 F. Supp. 2d 1118, 1119 (D.N.M. 1998)(Campos, J.)("The [r]ight to remove a case that was originally in state court to federal court is purely statutory, not constitutional.").

Section 1446(a) provides that a party seeking removal of a matter to federal court shall file a notice of removal in the district and division where the state action is pending, "containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action." Such notice of removal is proper if filed within thirty-days from the date when the case qualifies for federal jurisdiction. See Caterpillar Inc. v. Lewis, 519 U.S. at 68-69; 28 U.S.C. § 1446(b). The Tenth Circuit has further elaborated that, for the thirty-day period to begin to run, "this court requires clear and unequivocal notice from the [initial] pleading itself" that federal jurisdiction is available. Akin v. Ashland Chem. Co., 156 F.3d 1030, 1036 (10th Cir. 1998). The Tenth Circuit specifically disagrees with "cases from other jurisdictions which impose a duty to investigate and

determine removability where the initial pleading indicates that the right to remove may exist." Akin v. Ashland Chem. Co., 156 F.3d at 1036.[7]

After the notice of removal is filed, all state-court proceedings are automatically stayed, and the other defendants in the case -- if not all defendants joined in the removal -- have thirty days to consent to the removal of the action. See 28 U.S.C. § 1446(b)(2). "When a civil action is removed solely under section 1441(a) [the standard removal statute, which excludes multiparty, multiforum jurisdiction], all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). The failure of all defendants to consent to removal will result in remand. The rule of unanimity applies to all defendants, whether they are required parties under rule 19 or merely proper parties under rule 20. Defendants who have not been served, however, need not join in removal. See Kiro v. Moore, 229 F.R.D. 228, 230-32 (D.N.M. 2005)(Browning, J.).

Section 1447(c) permits the district court to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Supreme Court has stated:

> The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied.

Martin v. Franklin Capital Corp., 546 U.S. 132, 140 (2005). The Tenth Circuit has limited district courts' discretion to impose costs and fees to those cases in which the removal was

---

[7]Congress clarified removal jurisdiction and procedures in the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758. See Thompson v. Intel Corp., No. CIV 12-0620 JB/LFG, 2012 WL 3860748, at *12 n.5 (D.N.M. Aug. 27, 2012)(Browning, J.)(discussing the Act).

objectively unreasonable.  See Garret v. Cook, 652 F.3d 1249, 1254 (10th Cir. 2011)("[C]ourts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.").

**3.    Fraudulent Joinder.**

A defendant may remove a case to federal court based upon diversity jurisdiction in the absence of complete diversity if a plaintiff joins a nondiverse party fraudulently to defeat federal jurisdiction.  See Am. Nat'l Bank & Trust Co. v. Bic Corp., 931 F.2d 1411, 1412 (10th Cir. 1991); Hernandez v. Menlo Logistics, Inc., No. CIV 12-0907 JB/WPL, 2013 WL 5934411, at *14-17 (D.N.M. Sept. 30, 2013)(Browning, J.).   A defendant may remove on the basis of fraudulent joinder either while the nondiverse party is still joined or after it is dismissed from the case -- the doctrine can thus function as an exception to either complete diversity or the voluntary-involuntary rule.  "'[A] fraudulent joinder analysis [is] a jurisdictional inquiry,'" Bio-Tec Envtl., LLC v. Adams, 792 F. Supp. 2d at 1214 (quoting Albert v. Smith's Food & Drug Ctrs., Inc., 356 F.3d 1242, 1247 (10th Cir. 2004)), and, thus, the Tenth Circuit instructs that the district court should "pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available," Dodd v. Fawcett Publ'ns, Inc., 329 F.2d 82, 85 (10th Cir. 1964)(citations omitted).  "A district court may disregard a nondiverse party named in the state court complaint and retain jurisdiction if joinder of the nondiverse party is a sham or fraudulent." Baeza v. Tibbetts, No. CIV 06-0407 MV/WPL, 2006 WL 2863486, at *3 (D.N.M. July 7, 2006)(Vazquez, J.).   The Supreme Court has stated: "Merely to traverse the allegations upon which the liability of the resident defendant is rested or to apply the epithet 'fraudulent' to the joinder will not suffice: the showing must be such as compels the conclusion that the joinder is without right and made in bad faith."  Chesapeake & Ohio Ry. Co. v. Cockrell, 232 U.S. 146,

152 (1914). The Tenth Circuit has explained that allegations of fraudulent joinder complicate the analysis whether removal is proper, because, "[w]hile a court normally evaluates the propriety of a removal by determining whether the allegations on the face of the complaint satisfy the jurisdictional requirements, fraudulent joinder claims are assertions that the pleadings are deceptive." Nerad v. AstraZeneca Pharms., Inc., 203 F. App'x 911, 913 (10th Cir. 2006)(unpublished).

The party asserting fraudulent joinder bears the burden of proof. See Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592, at *1 (10th Cir. 2000)(unpublished)("The case law places a heavy burden on the party asserting fraudulent joinder."). "To justify removal based on diversity jurisdiction, a defendant must plead a claim of fraudulent joinder with particularity and prove the claim with certainty." Couch v. Astec Indus., Inc., 71 F. Supp. 2d 1145, 1146-47 (D.N.M. 1999)(Baldock, J.). Before 2013, the most recent published Tenth Circuit decision to state the burden of proof for demonstrating fraudulent joinder was issued over forty years earlier in Smoot v. Chicago, Rock Island & Pacific Railroad Co., 378 F.2d 879 (10th Cir. 1967). The Tenth Circuit said that fraudulent joinder must be "established with complete certainty upon undisputed evidence." Smoot v. Chi., Rock Island & Pac. R.R. Co., 378 F.2d at 882.

Actual fraud -- e.g., a plaintiff colluding with a nondiverse defendant to defeat removal[8] -- suffices to establish fraudulent joinder, but it is not required. See McLeod v. Cities

---

[8]Collusion might look something like this: a plaintiff names a nondiverse defendant under a highly dubious theory of liability; the plaintiff contacts the defendant and offers to dismiss the case at the end of the one-year limitation, see 28 U.S.C. § 1446(c), if the defendant agrees not to move to dismiss before the one-year mark; and the defendant agrees to the arrangement to save litigation costs, as well as to avoid any slim chance that the court decides to recognize the plaintiff's theory of liability against it.

Serv. Gas Co., 233 F.2d 242, 246 (10th Cir. 1956)("[C]ollusion in joining a resident defendant for the sole purpose of preventing removal . . . may be shown by any means available."). In Smoot v. Chicago, Rock Island & Pacific Railroad Co., the Tenth Circuit stated two other bases for finding fraudulent joinder: (i) "[t]he joinder of a resident defendant against whom no cause of action is stated is a patent sham"; or (ii) "though a cause of action be stated, the joinder is similarly fraudulent if in fact no cause of action exists." Smoot v. Chi., Rock Island & Pac. R.R. Co., 378 F.2d at 882 (quoting Dodd v. Fawcett Pubs., Inc., 329 F.2d 82, 85 (10th Cir. 1964)). In Smoot v. Chicago, Rock Island & Pacific Railroad Co., the Tenth Circuit found fraudulent joinder because the joined party's non-liability was "established with complete certainty upon undisputed evidence." 378 F.2d at 882. "This does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty." Smoot v. Chi., Rock Island & Pac. R.R. Co., 378 F.2d at 882. In Smoot v. Chicago, Rock Island & Pacific Railroad Co., the plaintiff died when his car collided with a freight train. See 378 F.2d at 881. The plaintiff's estate sued the railroad company and joined a non-diverse alleged employee as a defendant. See 378 F.2d at 881. It was undisputed that the diversity-destroying party's employment with the railroad company had "terminated almost fifteen months before the collision and that he was in no way connected with the acts of negligence ascribed to him." 378 F.2d at 881.

In recent unpublished decisions, the Tenth Circuit has adopted different articulations of the burden of proof for fraudulent joinder, two of which are from the United States Court of Appeals for the Fifth Circuit. In Montano v. Allstate Indemnity Co., the Tenth Circuit quoted favorably Hart v. Bayer Corp., 199 F.3d 239 (5th Cir. 2000), which states:

> To prove their allegation of fraudulent joinder [the removing parties] must demonstrate that there is no possibility that [plaintiff] would be able to establish a

cause of action against [the joined party], in state court.  In evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party.  We are then to determine whether that party has any possibility of recovering against the party whose joinder is questioned.

Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592, at *4-5 (alteration in original)(quoting Hart v. Bayer Corp., 199 F.3d at 246)(internal quotation marks omitted).  The Tenth Circuit stated that the standard for proving fraudulent joinder "is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action commenced."  Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592, at *2.  The Tenth Circuit in Montano v. Allstate Indemnity Co. also quoted from Batoff v. State Farm Insurance Co., 977 F.2d 848 (3d Cir. 1992), which states: "A claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction."  Batoff v. State Farm Ins. Co., 977 F.2d at 853.

In Nerad v. AstraZeneca Pharmaceuticals, Inc., the Tenth Circuit adopted a different articulation of the burden of proof.  The Tenth Circuit stated that, where fraudulent joinder is asserted, "the court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant."  203 F. App'x at 913 (citing Badon v. RJR Nabisco, Inc., 224 F.3d 382, 393 (5th Cir. 2000)).  The Tenth Circuit explained that "[a] 'reasonable basis' means just that: the claim need not be a sure-thing, but it must have a basis in the alleged facts and the applicable law."  203 F. App'x at 913.

- 21 -

The Fifth Circuit recognized the inconsistencies in various articulations of the standard for fraudulent joinder and directly addressed the problem in Travis v. Irby, 326 F.3d 644 (5th Cir. 2003):

> Neither our circuit nor other circuits have been clear in describing the fraudulent joinder standard. The test has been stated by this court in various terms, even within the same opinion. For example, the Griggs [v. State Farm Lloyds, 181 F.3d 694 (5th Cir. 1999),] opinion states,
>
> > To establish that a non-diverse defendant has been fraudulently joined to defeat diversity, the removing party must prove . . . that there is *absolutely no possibility* that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court.
>
> 181 F.3d at 699 (emphasis added)(citing Burden v. Gen. Dynamics Corp., 60 F.3d 213, 317 (5th Cir. 1995)). The Griggs opinion later restates that test as follows -- "Stated differently, we must determine whether there is any reasonable basis for predicting that [the plaintiff] might be able to establish [the non-diverse defendant's] liability on the pleaded claims in state court." 181 F.3d at 699 (emphasis added). Similarly, in summing up federal law, Moore's Federal Practice states at one point: "To establish fraudulent joinder, a party must demonstrate . . . the *absence of any possibility* that the opposing party has stated a claim under state law." 16 Moore's Federal Practice § 107.14[2][c][iv][A] (emphasis added). It then comments: "The ultimate question is whether there is arguably a *reasonable basis* for predicting that state law might impose liability on the facts involved." Although these tests appear dissimilar, "absolutely no possibility" vs. "reasonable basis," we must assume that they are meant to be equivalent because each is presented as a restatement of the other.

326 F.3d at 647 (emphases in original). The Fifth Circuit has settled upon this phrasing:

> [T]he test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.

Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 573 (5th Cir. 2004)("To reduce possible confusion, we adopt this phrasing of the required proof and reject all others, whether the others appear to describe the same standard or not.").

In Zufelt v. Isuzu Motors America, LCC, 727 F. Supp. 2d 1117, 1124 (D.N.M. 2009)(Browning, J.), the Court addressed the standard that courts should use when addressing fraudulent joinder and concluded that, to establish that a party was fraudulently joined, a defendant has the burden of demonstrating that "there is no possibility that the plaintiff would be able to establish a cause of action" against the party alleged to be fraudulently joined.  727 F. Supp. 2d at 1124-25 (citing Montano v. Allstate Indem. Co., 211 F.3d 1278, 2000 WL 525592, at *4-5).  The Court explained:

> [T]his District has consistently adopted the "possibility" standard when assessing fraudulent joinder claims.  See Allen v. Allstate Ins. Co., No. CIV 08-0733, 2008 WL 6045497 (D.N.M. Oct. 31, 2008)(Browning, J.)(holding that the claims asserted against the non-diverse defendant were "possibly viable under New Mexico law, and . . . sufficient to preclude federal jurisdiction"); Baeza v. Tibbets, 2006 U.S. Dist. LEXIS 95317, at *11, 2006 WL 2863486 (stating that "[r]emand is required if any one of the claims against [the defendant] is possibly viable"); Provencio v. Mendez, No. CIV 05-623, 2005 U.S. Dist. LEXIS 39012, at *25, 2005 WL 3662957 (D.N.M. Sept. 29, 2005)(Browning, J.)(stating that "there must be no possibility the [p]laintiffs have a claim against [the non-diverse defendant]"); Couch v. Astec Indus., Inc., 71 F. Supp. 2d at 1147 (stating that, to defeat removal jurisdiction, "[t]he plaintiff need only demonstrate the possibility of the right to relief").  This Court, in Couch v. Astec Indus., Inc., noted with approval the language of the United States Court of Appeals for the Eleventh Circuit, which states that "if there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court."  Couch v. Astec Indus., Inc., 71 F. Supp. 2d at 1147 (quoting Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998))(emphasis in original).

Zufelt v. Isuzu Motors Am., LCC, 727 F. Supp. 2d at 1229.

In Brazell v. Waite, the Tenth Circuit stated that the "removing party must show that the plaintiff has 'no cause of action' against the fraudulently joined defendant," but it did not further elaborate on that burden.  2013 WL 2398893, at *3 (citing Dodd v. Fawcett Publ'ns, Inc., 329 F.2d 82, 85 (10th Cir. 1964); Roe v. Gen. Am. Life Ins. Co., 712 F.2d 450, 452 n.* (10th Cir. 1983)).

In 2013, the Tenth Circuit published its first opinion since 1946 regarding the burden of proof for demonstrating fraudulent joinder: "'To establish fraudulent joinder, the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" Dutcher v. Matheson, 733 F.3d 980, 988 (10th Cir. 2013)(Briscoe, C.J., joined by Seymour & Bacharach, J.J.)(quoting Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d 242, 249 (5th Cir. 2011)).  In Dutcher v. Matheson, the Tenth Circuit reviewed a district court's holding that it had diversity jurisdiction over a case where Utah citizens sued ReconTrust, a Texas-based national bank, Stuart T. Matheson, a Utah citizen, and Matheson's law firm.  See Dutcher v. Matheson, 733 F.3d at 983, 987.  The plaintiffs alleged that Matheson and his law firm enabled ReconTrust to conduct an illegal nonjudicial foreclosure by holding the foreclosure sales on behalf of the Texas-based bank.  See 733 F.3d at 983.  The defendants removed the case to federal court and alleged that the plaintiffs fraudulently joined the Utah defendants.  See 733 F.3d at 983.  The district court agreed, finding that, under Utah law, "an attorney cannot be held liable to a non-client absent fraud, collusion or privity of contract."  733 F.3d at 988.  The Tenth Circuit disagreed with that characterization of Utah law, finding instead that, in the case on which the defendants relied, the Utah Supreme Court "has simply limited the circumstances in which a lawyer owes a duty of care to non-clients from actions arising out of the provision of legal services." 733 F.3d at 988.  In rejecting the claim of fraudulent joinder, the Tenth Circuit said

> that does not mean that the plaintiffs have stated a valid claim against Matheson and his law firm.  Or even that Matheson and his law firm are not somehow fraudulently joined.  But the defendants needed to clear a high hurdle to prove something they have yet to prove, i.e., fraudulent joinder.

733 F.3d at 989.

The Tenth Circuit did not elaborate on the defendant's burden to show fraudulent joinder, except to say that it is "a high hurdle." 733 F.3d at 989. It quoted, however, Cuevas v. BAC Home Loans Servicing, LP, a Fifth Circuit opinion that repeats the clarified standard from the Smallwood v. Illinois Central Railroad Co. case. See Dutcher v. Matheson, 733 F.3d at 988 (10th Cir. 2013)(quoting Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d 242, 249 (5th Cir. 2011)).

> Under the second way, the test is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." [Smallwood v. Ill. Cent. R.R. Co., 385 F.3d at 573.] If there is no reasonable basis of recovery, then the court can conclude that the plaintiff's decision to join the in-state defendant was indeed improper, unless that showing compels the dismissal of *all* defendants. There is no improper joinder if the defendants' showing compels the same result for the resident and nonresident defendants, because this simply means that the plaintiff's case is ill founded as to all of the defendants. Such a defense is more properly an attack on the merits of the claim, rather than an inquiry into the propriety of the joinder of the in-state defendant.

Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d at 249 (emphasis in original)(citations omitted)(internal quotation marks omitted). Based on the Tenth Circuit's history of relying on Fifth Circuit analysis in fraudulent joinder cases, the Tenth Circuit would likely approve this additional explanation of the fraudulent joinder standard. Accordingly, the Court will use the following standard for fraudulent joinder: whether the defendant has demonstrated that there is no possibility that the plaintiff will recover against an in-state defendant. Cf. Zufelt v. Isuzu Motors Am., LCC, 727 F. Supp. 2d at 1124-25 (concluding that fraudulent joinder occurs when "there is no possibility that the plaintiff would be able to establish a cause of action" against the party alleged to be fraudulently joined). No case sets forth the burden of proof that applies to (much rarer) allegations of actual fraud, such as plaintiff-defendant collusion, see supra note 8

and accompanying text, but the Court concludes that the clear-and-convincing standard -- the usual standard for fraud -- is appropriate, see, e.g., United States v. Thompson, 279 F.2d 165, 167 (10th Cir. 1960)("An allegation of fraud is a serious matter; it is never presumed and must be proved by clear and convincing evidence." (citations omitted)).

An unresolved question is whether fraudulent joinder permits the removal of actions that have been pending in state court for over a year. Section 1446(c)(1) provides: "A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action . . . ." 28 U.S.C. § 1446(c)(1). The two district court cases from the Tenth Circuit to address the issue both concluded that it does not, but those opinions were issued before Congress amended § 1446 in 2012 to add the remainder (the omitted portion) of the sentence quoted earlier in this paragraph: "unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1). See Chidester v. Kaz, Inc., No. CIV 08-0776 TCK/PJC, 2009 WL 2588866, at *3 (N.D. Okla. Aug. 19, 2009)(Kern, J.); Caudill v. Ford Motor Co., 271 F. Supp. 2d 1324, 1327 (N.D. Okla. 2003)(Eagan, J.). Outside the Tenth Circuit, the Courts of Appeals have said little, and district courts appear more-or-less evenly split on the issue, with some holding that a case can be removed on the basis of fraudulent joinder after the one-year mark, see Hardy v. Ajax Magnathermic Corp., 122 F. Supp. 2d 757, 759 (W.D. Ky. 2000); Johnson v. Heublein, Inc., 982 F. Supp. 438, 444-45 (S.D. Miss. 1997); Barnett v. Sylacauga Autoplex, 973 F. Supp. 1358, 1367 (N.D. Ala. 1997); Leslie v. BancTec Serv. Corp., 928 F. Supp. 341, 346 (S.D.N.Y. 1996); Morrison v. Nat'l Ben. Life Ins. Co., 889 F. Supp. 945, 950-51 (S.D. Miss. 1995); Saunders v. Wire Rope Corp., 777 F. Supp. 1281, 1282-83 (E.D. Va. 1991); Greer v. Skilcraft, 704 F. Supp. 1570, 1582-83 (N.D. Ala. 1989), and others concluding that the fraudulent-joinder

doctrine bows to the one-year limitation, see Ariel Land Owners, Inc. v. Dring, 245 F. Supp. 2d 589, 600-02 (M.D. Pa. 2003); Codner v. Am. Home Prods. Corp., 123 F. Supp. 2d 1272, 1274 (W.D. Okla. 2000); Hattaway v. Engelhard Corp., 998 F. Supp. 1479, 1481-82 (M.D. Ga. 1998); Russaw v. Voyager Life Ins. Co., 921 F. Supp. 723, 724-25 (M.D. Ala. 1996); Zumas v. Owens-Corning Fiberglas Corp., 907 F. Supp. 131, 133-34 (D. Md. 1995); Price v. Messer, 872 F. Supp. 317 (S.D. W. Va. 1995); Norman v. Sundance Spas, Inc., 844 F. Supp. 355, 356-57 (W.D. Ky. 1994); Santiago v. Barre Nat'l, Inc., 795 F. Supp. 508, 510-12 (D. Mass. 1992); Brock v. Syntex Labs., Inc., 791 F. Supp. 721, 722-23 (E.D. Tenn. 1992); Cofer v. Horsehead Research & Dev. Co., 805 F. Supp. 541, 543-44 (E.D. Tenn. 1991); O'Rourke v. Communique Telecomms., Inc., 715 F. Supp. 828, 829 (E.D. Mich. 1989).  Again, however, all of these cases came before the addition of 28 U.S.C. § 1446(c)(1), which grafted a bad-faith exception to the one-year limitation, discussed at length later in this opinion.  The Court concludes that the addition of the bad-faith exception to the one-year limitation clarifies that the one-year limitation is procedural, rather than jurisdictional, and, thus, extends the applicability of fraudulent-joinder doctrine past the one-year mark.  Thus, defendants may remove a case on fraudulent-joinder grounds even after it has been pending in state court for more than one year.

Another unresolved question regarding fraudulent joinder is whether it creates an exception to the forum-defendant rule -- which provides that even an action with complete diversity cannot be removed if any defendant is a citizen of the forum state -- in addition to creating an exception to the rule of complete diversity.  See 28 U.S.C. § 1441(b)(2).  Courts and commentators recite fraudulent joinder as involving the legally unjustifiable naming of a nondiverse party, a party who defeats complete diversity, or a diversity-spoiling party, but no case addresses whether the doctrine extends to the wrongful naming of a diverse party whose

inclusion in the lawsuit nonetheless defeats removal because of the party's status as a citizen of the forum state.  See Brazell v. Waite, 525 F. App'x at 884 & n.3 (implying, but not holding or stating clearly, that fraudulent joinder is an exception to the forum-defendant rule, and noting an "apparent lack of ruling from any federal appellate court, and [a] split among district courts, on the issue" (citing Morris v. Nuzzo, 718 F.3d 660, 666 (7th Cir. 2013))); Hernandez v. Cooper Tire & Rubber Co., No. CIV 12-1399 JWL, 2013 WL 141648, at *2 n.2 (D. Kan. Jan. 11, 2013)("Some courts have extended the fraudulent joinder doctrine to diverse, in-state defendants in light of the forum defendant rule . . . ."  (citing Morris v. Mid-Century Ins. Co., No. CIV 12-0578 SEB/DML, 2012 WL 3683540, at *5 (S.D. Ind. Aug. 24, 2012), vacated and remanded sub nom. Morris v. Nuzzo, 718 F.3d 660)).  Although the policy justifications behind fraudulent-joinder doctrine would seem to apply just as strongly to the forum-defendant rule as they do to complete diversity, there is an important legal distinction between the two requirements: complete diversity is a requirement of original subject-matter jurisdiction and is found in § 1332; the forum-defendant rule is unique to removal jurisdiction -- it does not apply to cases filed in federal court in the first instance -- and is found in § 1441.   See 28 U.S.C. §§ 1332(a), 1441(b)(2).  Fraudulent joinder, however, only applies in the removal context, and does no work in cases filed in federal court in the first instance.  As such, the Court sees no principled reason to limit fraudulent-joinder doctrine's application to the joining of nondiverse parties to defeat complete diversity, while excluding the functionally identical practice of fraudulently joining forum-citizen defendants to defeat the forum-defendant rule.  The Court, therefore, construes fraudulent-joinder doctrine as permitting removal whenever a plaintiff fraudulently joins a party that defeats removal jurisdiction, whether that defeat comes by way of complete diversity or the forum-defendant rule.

A district court's order to remand based on a finding of fraudulent joinder is not reviewable by the Tenth Circuit.  See Nerad v. AstraZeneca Pharms., Inc., 203 F. App'x at 913 (holding that, because the district court remanded based on its conclusion that it lacked subject-matter jurisdiction at the time of removal, 28 U.S.C. § 1447(d) precluded the Tenth Circuit from reviewing the order).  The fraudulent joinder inquiry on a motion to remand is a subject-matter jurisdiction inquiry.  See Albert v. Smith's Food & Drug Ctrs., Inc., 356 F.3d at 1247.

### 4.   Procedural Misjoinder.[9]

Rule 20 of the Federal Rules of Civil Procedure provides:

**(a)   Persons Who May Join or Be Joined.**

   **(1)   Plaintiffs.**  Persons may join in one action as plaintiffs if:

      **(A)**   they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

      **(B)**   any question of law or fact common to all plaintiffs will arise in the action.

   **(2)   Defendants.**  Persons -- as well as a vessel, cargo, or other property subject to admiralty process in rem -- may be joined in one action as defendants if:

      **(A)**   any right to relief is asserted against them

---

[9]The Court refers to the doctrine as "procedural misjoinder," rather than "fraudulent misjoinder," because of the confusion that the word "fraudulent" has caused in the fraudulent joinder context.  As the Honorable Martha A. Vasquez, then-Chief District Judge for the United States District Court for the District of New Mexico, once explained: "Fraudulent joinder is a term of art.  It does not reflect on the integrity of plaintiff or counsel, but rather exists regardless of the plaintiff's motives when the circumstances do not offer any other justifiable reason for joining the defendant."  Baeza v. Tibbetts, No. CIV 06-0407 MV/WPL, 2006 WL 2863486, at *1 n.1 (D.N.M. July 7, 2006)(Vasquez, J.).  The Court will refer to the doctrine as "procedural misjoinder" to avoid expanding that confusion.  Flores-Duenas v. Briones, 2013 WL 6503537, at *22 n.8.

> jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> **(B)**     any question of law or fact common to all defendants will arise in the action.
>
> **(3)     Extent of Relief.**  Neither a plaintiff nor a defendant need be interested in obtaining or defending against all the relief demanded.  The court may grant judgment to one or more plaintiffs according to their rights, and against one or more defendants according to their liabilities.

Fed. R. Civ. P. 20(a).

"Procedural misjoinder," also known as "fraudulent misjoinder," is a recent development that is related to fraudulent joinder, but distinct from it.   Professor E. Farish Percy of the University of Mississippi School of Law has explained:

> Fraudulent misjoinder occurs when a plaintiff sues a diverse defendant in state court and joins a non-diverse or in-state defendant even though the plaintiff has no reasonable procedural basis to join such defendants in one action.  While the traditional fraudulent joinder doctrine inquires into the substantive factual or legal basis for the plaintiff's claim against the jurisdictional spoiler, the fraudulent misjoinder doctrine inquires into the procedural basis for the plaintiff's joinder of the spoiler.  Most state joinder rules are modeled after the federal joinder rule that authorizes permissive joinder of parties when the claims brought by or against them arise "out of the same transaction, occurrence, or series of transactions or occurrences" and give rise to a common question of law or fact.  Thus, in a case where the joined claims are totally unrelated, a federal district court may find removal jurisdiction pursuant to the fraudulent misjoinder doctrine even though the plaintiff has a reasonable substantive basis for the claim against the jurisdictional spoiler.

E. Farish Percy, Defining the Contours of the Emerging Fraudulent Misjoinder Doctrine, 29 Harv. J.L. & Pub. Pol'y 569, 572 (2006)(footnotes omitted).

The Eleventh Circuit formulated the doctrine in Tapscott v. MS Dealer Service Corp., and explained its purpose as follows:

> Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action.  A defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy."  Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921).

Tapscott v. MS Dealer Serv. Corp., 77 F.3d at 1360 (footnote omitted).

The facts of Tapscott v. MS Dealer Service Corp. illustrate the doctrine's operation.  The case involved two proposed state-law class actions, joined together in a single case: (i) a class action in which an Alabama resident alleged that four defendants, including an Alabama resident, had violated various provisions of Alabama fraud and consumer-protection law in connection with the "sale of 'service contracts' on automobiles sold and financed in Alabama," 77 F.3d at 1355; and (ii) a class action in which Alabama alleged three defendants, including Lowe's Home Centers, a North Carolina resident, had violated Alabama consumer-protection law in connection with the sale of retail product, see 77 F.3d at 1355.  The second class action named Lowe's Home Centers as "the putative defendant class representative for a 'merchant' class."  77 F.3d at 1355.  This unified case matched particular plaintiffs "with particular defendants against whom they allege individual claims"; as relevant here, the only two class representatives for the class action were Alabama residents, and they asserted claims only against Lowe's Home Centers.  77 F.3d at 1359-60.

The district court concluded that there was no allegation of joint liability or conspiracy, and that the claims involved in the car-sales class action were "wholly distinct from the alleged transactions involved in the" retail-products class action.  77 F.3d at 1360.  Rather, "[t]he only similarity between" the two classes was that they both alleged violations of Alabama statutory law; "[s]uch commonality on its face [was] insufficient for joinder."  77 F.3d at 1360.  The Eleventh Circuit agreed and explained:

>Although certain putative class representatives may have colorable claims against resident defendants in the putative "automobile" class, these resident defendants have no real connection with the controversy involving [the retail-products plaintiffs and] Lowe's in the putative "merchant" class action. We hold that the district court did not err in finding an attempt to defeat diversity jurisdiction by fraudulent joinder. We do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district court that Appellants' attempt to join these parties is so egregious as to constitute fraudulent joinder.

77 F.3d at 1360.

The procedural misjoinder doctrine's reach outside the Eleventh Circuit is unclear. The Tenth Circuit recently described the doctrine's status as follows: "It appears that the Fifth Circuit may also accept procedural misjoinder. No circuit has rejected the doctrine, but the district courts and the commentators are split." Lafalier v. State Farm Fire & Cas. Co., 391 F. App'x at 739 (citing, for the proposition that the Fifth Circuit accepts the doctrine, Crockett v. R.J. Reynolds Tobacco Co., 436 F.3d at 532-33; In re Benjamin Moore & Co., 309 F.3d 296, 298 (5th Cir. 2002)). While the Tenth Circuit recognized that "[t]here may be many good reasons to adopt procedural misjoinder," it declined to adopt the doctrine, because it would not have changed the result in that case. Lafalier v. State Farm Fire & Cas. Co., 391 F. App'x at 739. See 14B Charles A. Wright & Arthur Miller, Federal Practice & Procedure § 3723, at 867-77 & n.122 (3d ed. 2009)(confirming the developing doctrine's unclear status). The Court, however, has adopted the doctrine and applied it in two cases, although it concluded in both cases that no procedural misjoinder occurred, and both cases thus resulted in remand. See Ullman v. Safeway Ins. Co., 995 F. Supp. 2d 1196 (D.N.M. 2013)(Browning, J.); Flores-Duenas v. Briones, 2013 WL 6503537.

**5.      The "Bad Faith" Exception to the One-Year Removal Bar for Diversity Cases.**

Since 1988, 28 U.S.C. § 1446 has provided that no case that has been pending more than one year in state court can be removed on the basis of diversity jurisdiction.[10]  On January 6, 2012, Congress put into effect the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 760, 762 ("JVCA"), which, among other changes, added a bad-faith exception to the one-year limitation.  As a result, the current subsection (c) is almost entirely new; it reads as follows, with the sole sentence of the statute that pre-exists the JVCA underlined:

**Requirements; removal based on diversity of citizenship.** --

**(1)**      A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action.

**(2)**      If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that --

---

[10]The one-year limitation applies only to standard diversity jurisdiction under 28 U.S.C. § 1332(a) and not to class actions removed under § 1332(d), which is a part of the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4-14 ("CAFA").  Although exempting CAFA from the one-year limitation appears to defy the § 1446(c)(1)'s text, which refers to cases brought "on the basis of jurisdiction conferred by section 1332," another section of Title 28 clarifies the issue:

A class action may be removed to a district court of the United States in accordance with section 1446 (except that the 1-year limitation under section 1446(c)(1) shall not apply), without regard to whether any defendant is a citizen of the State in which the action is brought, except that such action may be removed by any defendant without the consent of all defendants.

28 U.S.C. § 1453(b) (emphasis added).  See Reece v. Bank of N.Y. Mellon, 760 F.3d 771, 775-76 (8th Cir. 2014).

      **(A)**    the notice of removal may assert the amount in controversy if the initial pleading seeks --

           **(i)**    nonmonetary relief; or

           **(ii)**    a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded; and

      **(B)**    removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).

**(3)**    **(A)**    If the case stated by the initial pleading is not removable solely because the amount in controversy does not exceed the amount specified in section 1332(a), information relating to the amount in controversy in the record of the State proceeding, or in responses to discovery, shall be treated as an 'other paper' under subsection (b)(3).[11]

      **(B)**    If the notice of removal is filed more than 1 year after commencement of the action and the district court finds that the plaintiff deliberately failed to disclose the actual amount in controversy to prevent removal, that finding shall be deemed bad faith under paragraph (1).

28 U.S.C. § 1446(c) (boldface in original)(underscoring added to show pre-JVCA content).

---

[11]Subsection (b)(3) provides:

Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b)(3). The combination of subsection (c)(3)(A)'s new provisions and subsection (b)(3)'s pre-JVCA provisions means that the defendant's thirty-day clock to remove a case starts whenever they have sufficient information -- obtained from anywhere in the case, and not merely from the pleadings or settlement communications -- to conclude that the case meets the amount-in-controversy requirement.

A plaintiff's "bad faith" can manifest itself in either of the two requirements for diversity jurisdiction: (i) a plaintiff can name or retain nondiverse parties or forum-citizen defendants to defeat complete diversity or the forum-defendant rule, respectively; or (ii) it can obfuscate the quantity of damages it seeks for the purpose of defeating the amount-in-controversy requirement.[12]   It is clear how the Court should construe (ii) -- the Tenth Circuit's opinion in McPhail v. Deere & Co. has already fleshed out a detailed framework for analyzing the amount-in-controversy requirement, and the JVCA's legislative history indicates that, far from abrogating McPhail v. Deere & Co., Congress intended § 1446(c)'s amount-in-controversy provisions to codify the approach that the Seventh Circuit chartered in Meridian Securities Insurance Co. v. Sadowski and that the Tenth Circuit advanced in McPhail v. Deere & Co., see Report to the Committee on the Judiciary of the United States House of Representatives § 103, at 15-16, H.R. 112-10 (2011)(citing only two cases under the heading "Amount in controversy and removal timing," McPhail v. Deere & Co. and Meridian Securities Insurance Co. v. Sadowski, and stating that the JVCA's amendments "follow the lead of [those] cases" (emphasis

---

[12]As previously explained, it was unclear before the JVCA's passage whether the common-law doctrine of fraudulent joinder creates an exception to the forum-defendant rule or just to complete diversity.  See supra Law Regarding Removal, Remand, Fraudulent Joinder, Procedural Misjoinder, and Bad Faith Part 3.  The bad-faith exception, however, is statutory, and the statute applies to all cases in which "the plaintiff has acted in bad faith in order to prevent a defendant from removing the action."  28 U.S.C. § 1446(c)(1).  The statute's plain meaning thus includes both the bad-faith joinder of a nondiverse party -- which defeats removal jurisdiction by defeating original diversity jurisdiction -- and the bad-faith joinder of a forum-citizen defendant -- which only defeats removal jurisdiction.  Moreover, as the Court is largely writing on a blank slate in interpreting the bad-faith exception, it sees no reason to read in a nonsensical double standard.

omitted)).[13]   On the other hand, § 1446(c)'s text says nothing at all about (i), nor has any court

attempted to comprehensively define it.   The JVCA's legislative history gives the Court some

---

[13]The JVCA's legislative history provides:

Section 103(b)(3)(C) of the bill further amends subsection 1446(c) by inserting two new paragraphs, (2) and (3), to address issues relating to uncertainty of the amount in controversy when removal is sought, e.g., when state practice either does not require or permit the plaintiff to assert a sum claimed or allows the plaintiff to recover more than an amount asserted.   Although current practice allows defendants to claim that the jurisdictional amount is satisfied and remove, several issues complicate this practice.

First, circuits have adopted differing standards governing the burden of showing that the amount in controversy is satisfied.   The ''sum claimed'' and ''legal certainty'' standards that govern the amount in controversy requirement when a plaintiff originally files in Federal court have not translated well to removal, where the plaintiff often may not have been permitted to assert in state court a sum claimed or, if asserted, may not be bound by it.   Second, many defendants faced with uncertainty regarding the amount in controversy remove immediately -- rather than waiting until future developments provide needed clarification -- out of a concern that waiting and removing later will result in the removal's being deemed untimely.   In these cases, Federal judges often have difficulty ascertaining the true amount in controversy, particularly when removal is sought before discovery occurs.   As a result, judicial resources may be wasted and the proceedings delayed when little or no objective information accompanies the notice to remove.

Proposed new paragraph 1446(c)(2) allows a defendant to assert an amount in controversy in the notice of removal if the initial pleading seeks non-monetary relief or a money judgment, in instances where the state practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded.   The removal will succeed if the district court finds by a preponderance of the evidence that the amount in controversy exceeds the amount specified in 28 U.S.C. § 1332(a), presently $75,000.

If the defendant lacks information with which to remove within the 30 days after the commencement of the action, the bill adds a new subparagraph 1446(c)(3)(A) to clarify that the defendant's right to take discovery in the state court can be used to help determine the amount in controversy.   If a statement appears in response to discovery or information appears in the record of the state proceedings indicating that the amount in controversy exceeds the threshold amount, then proposed subparagraph 1446(c)(3)(A) deems it to be an ''other paper'' within the meaning of paragraph 1446(b)(3), thereby triggering a 30-day

clue as to the exception's basic nature, but, in answering this question -- what constitutes "bad faith" vis-à-vis improperly joining, or keeping joined, nondiverse parties or forum-citizen defendants -- the Court will have to stake out its own definition.

In Aguayo v. AMCO Ins. Co., No. CIV 14-0400 JB/KBM, 2014 WL 5859098 (D.N.M. Oct. 31, 2014)(Browning, J.), the Court became the first federal court in the nation to

---

period in which to remove the action. The district court must still find by a preponderance of the evidence that the jurisdictional threshold has been met.

In adopting the preponderance standard, new paragraph 1446(c)(2) would follow the lead of recent cases. See McPhail v. Deere & Co., 529 F.3d 947 (10th Cir. 2008); Meridian Security Ins. Co. v. Sadowski, 441 F.3d 536 (7th Cir. 2006). As those cases recognize, defendants do not need to prove to a legal certainty that the amount in controversy requirement has been met. Rather, defendants may simply allege or assert that the jurisdictional threshold has been met. Discovery may be taken with regard to that question. In case of a dispute, the district court must make findings of jurisdictional fact to which the preponderance standard applies. If the defendant establishes by a preponderance of the evidence that the amount exceeds $75,000, the defendant, as proponent of Federal jurisdiction, will have met the burden of establishing jurisdictional facts.

Under proposed subparagraph 1446(c)(3)(B), if the notice of removal is filed more than one year after the commencement of the action, and a finding is made that the plaintiff deliberately failed to disclose the actual amount in controversy to prevent removal, that finding would be deemed bad faith under paragraph (1).

Section 103(b)(4)(A) of the bill inserts a heading for subsection 1446(d). Section 103(b)(4)(B) makes a technical amendment replacing ''thirty'' with ''30'' each place it appears in section 1446. Section 103(b)(4)(C) strikes current subsection (e) (a criminal removal provision, which is now codified as part of new section 1454). Section 103(b)(4)(D) redesignates current subsection (f) as new subsection (e), and inserts a new heading.

Report to the Committee on the Judiciary of the United States House of Representatives § 103, at 15, H.R. 112-10 (2011).
   District courts in other Circuits may need to grapple with the extent to which the JVCA codifies the McPhail v. Deere & Co. approach. The Court, however, is in the Tenth Circuit, and McPhail v. Deere & Co. binds it unless intervening statute or Supreme Court case law invalidates the holding. The JVCA's legislative history makes it clear that McPhail v. Deere & Co. remains intact.

comprehensively construe the new § 1446(c).  The Court concluded that the bad-faith exception sets forth a two-step standard.  First, the Court must inquire whether the plaintiff actively litigated against the removal spoiler in state court: asserting valid claims, taking discovery, negotiating settlement, seeking default judgments if the defendant does not answer the complaint, et cetera.  Failure to actively litigate against the removal spoiler will be deemed bad faith; actively litigating against the removal spoiler, however, will create a rebuttable presumption of good faith.  Second, the defendant may attempt to rebut this presumption with evidence already in the defendant's possession which establishes that, despite the plaintiff's active litigation against the removal spoiler, the plaintiff would not have named the removal spoiler or would have dropped the spoiler before the one-year mark but for the plaintiff's desire to keep the case in state court.  The defendant may introduce direct evidence of the plaintiff's bad faith at this stage -- e.g., electronic mail transmissions in which the plaintiff states that he or she is only keeping the removal spoiler joined to defeat removal -- but will not receive discovery or an evidentiary hearing in federal court to obtain such evidence.

## ANALYSIS

The Court will grant the Motion, remand this case to state court, and grant the State of New Mexico costs and attorneys' fees.  D'Allende's removal is defective in almost every aspect in which a removal can be defective: (i) it was filed by a non-Defendant; (ii) it fails to comply with the unanimity rule; (iii) the case lacks original federal subject-matter jurisdiction; and (iv) the jurisdictional basis stated in the Notice of Removal, civil-rights jurisdiction, lacks even colorable support.  The Court will cover each of these defects in turn, but, first, it will discuss the alleged defect in the Motion -- D'Allende Meats' contention that the State of New Mexico failed to comply with local rule 7.1 before filing the Motion.

I.    **THE STATE OF NEW MEXICO COMPLIED WITH LOCAL RULE 7.1, AND,
      EVEN IF IT HAD NOT, THE COURT WOULD STILL REMAND THE CASE
      FOR WANT OF SUBJECT-MATTER JURISDICTION.**

The State of New Mexico adequately complied with the District's meet-and-confer rule.

Local rule 7.1(a) sets forth the requirement in fairly bare-bones terms:

> A motion must be in writing and state with particularity the grounds and the relief
> sought.   A party may adopt by reference another party's motion or other paper by
> making specific reference to the filing date and docket number of such motion or
> other paper.   Movant must determine whether a motion is opposed, and a motion
> that omits recitation of a good-faith request for concurrence may be summarily
> denied. . . .

D.N.M. LR-Civ. 7.1(a).   The local rule states that a "[m]ovant must determine whether a motion

is opposed," but it leaves two important dimensions of this requirement unspecified.   First, the

local rule does not specify how much time the movant must give the opposing party before the

movant proceeds to file its motion without a response.   The logical course of action for a non-

movant who plans to oppose a motion is simply to fail to reply to the movant's request for

consent; after all, once the non-movant notifies the movant of its opposition to the motion, the

movant is in the clear to file the motion.   If, on the other hand, the non-movant simply maintains

radio silence, he or she can get a jump on responding to the motion by using whatever time the

movant gives him or her before filing -- effectively lengthening the time to respond.   Second, the

local rule gives no indication how specific the movant must be in describing the motion to which

it is requesting consent.   On one end of the spectrum, the movant can attach a completed and

ready-to-file copy of the motion; on the other end, it can describe only the relief sought, i.e.,

dismissal of Counts II and IV.   Intermediate steps on the spectrum include giving a short

rationale for the relief sought -- e.g., "the motion will seek to dismiss Count II on limitations

grounds and Count IV for failure to exhaust administrative remedies" -- or attaching an

unfinished draft or truncated version of the motion. The local rules' only input on these two issues is that the request for consent be in "good faith." D.N.M. LR-Civ. 7.1(a).

In this case, the State of New Mexico sent the following electronic-mail transmission to D'Allende Meats at 2:09 p.m. on December 12, 2014 -- two hours and forty-two minutes before it filed the Motion: "The State will be filing a motion to remand this action to state court and for the costs associated with bringing the motion. Please let me know whether your clients oppose the motion." Electronic-Mail Transmissions Between Ari Biernoff to Blair Dunn at 3, filed December 27, 2014 (dated Dec. 12, 2014)(Doc. 10-1)("E-mails"). D'Allende Meats replied thirty-four minutes later, asking the State of New Mexico to "[p]lease provide [it] with a copy of [the] motion so that I may review it and get back to you next week." E-mails at 2. Six minutes after D'Allende Meats sent that message, the State of New Mexico responded: "[W]e will file the motion today. Please advise me if your clients oppose." E-mails at 2. Ten minutes later, D'Allende Meats wrote back:

> Under the rules, I would like to see the Motion before I give you my concurrence or opposition on the Motion. Is this something we should take up [with] Judge Browning? If you file this in violation of the rule 7.1 I will move to strike and for sanctions, you know as a lawyer this is not appropriate. Is Gary okay with you making this mess for Hector?

E-Mails at 1. One hour and fifty-four minutes after D'Allende Meats sent that message, the State of New Mexico filed the Motion, quoting D'Allende Meats' "threat" on the first page. Motion at 1 n.1. Three minutes after filing the motion, the State of New Mexico responded to D'Allende Meats' message with the following: "[T]he Local Rules do not require a party to submit a copy of a motion to the opposing party for consideration, approval, and delay. I have noted your responses in the State's motion." E-mails at 1. In the final message of the exchange, D'Allende

Meats wrote back at 5:47 p.m. -- one hour and three minutes after the State of New Mexico's most recent message and one hour and six minutes after the filing of the Motion:

> [Y]ou did [not] have my opposition or concurrence, I am supposed to have that opportunity to do so before you file especially when you are seeking fees. We will note for the court that you denied us that opportunity even though Schiff Hardin had already drafted your pleading and you could easily have shared it. Please also treat this email as a request for public records under IPRA for any communications between the AG's office and any other outside person or organization relating to this case. Including any communications with any law firm participating as a ghost writer for briefs filed by the attorney general[']s office.

E-Mails at 1.

The Court concludes that the State of New Mexico satisfied its obligation to make a good-faith request for consent to the Motion. In the context of discovery and other non-dispositive motions, local rule 7.1's meet-and-confer requirement is not meant to be perfunctorily satisfied. It is designed to encourage parties to contact each other -- preferably in-person or by telephone, rather than via letter or electronic-mail transmission -- and work out mutually agreeable solutions to kinks that arise in the flow of discovery, extensions to prearranged schedules, and pragmatic compromises on scope-of-discovery disputes. The District encourages such solutions for essentially the same reasons that it encourages settlement of cases: they conserve judicial resources, vest the decisionmaking in the hands of the people with the most familiarity with the dispute, and result in outcomes that are, by definition, agreeable to all parties concerned. If an agreed-upon solution can be reached, then doing so is generally preferable to having the same dispute resolved by judicial fiat.

For many motions, however, the reality is that the meet-and-confer requirement is just a box that the movant must check before filing. A non-movant is unlikely to consent to, e.g., having his or her case dismissed under rule 12(b)(6), remanding a case that he or she just

removed, or being sanctioned under rule 11.  Nor is compromise especially likely.  Unlike the federal local rules, the New Mexico Rules of Civil Procedure explicitly exempt several classes of motions from its meet-and-confer requirement.[14]  See N.M. R. Civ. P. 1-007.1C ("The movant shall not assume that the nature of the motion obviates the need for concurrence from all parties unless the motion is a: (1) motion to dismiss; (2) motion for new trial; (3) motion for judgment as a matter of law; (4) motion for summary judgment; [or] (5) motion for relief from a final judgment . . . .").  Here, the State of New Mexico knew, as a practical matter, that D'Allende Meats would almost certainly oppose the Motion.  Even if D'Allende Meats consented to remand, it would likely not consent to the imposition of costs and attorneys' fees -- to which the State of New Mexico would still be entitled, even if D'Allende Meats had consented to the Motion.  If the State of New Mexico had any doubts about D'Allende Meats' opposition before sending its initial request for consent, those doubts likely disappeared in the snippy exchange that followed.

When D'Allende Meats made it clear that it would not give the State of New Mexico a firm answer until the next week, the State of New Mexico was justified in going ahead and filing the Motion.  One of the ways that a wrongful removal harms a plaintiff is by delaying the progress of a case that should have rightfully stayed in state court the whole time.  The State of New Mexico alleges -- and the Court is concerned -- that D'Allende Meats removed this case largely for the purposes of delay.  The State of New Mexico should not have to spend extra time in a federal forum -- a forum which will not ultimately decide its claims -- waiting for a response which the State of New Mexico knows will be opposition.  Such time is (i) wasted, from the

---

[14]Of course, the New Mexico Rules of Civil Procedure do not exempt motions to remand, because motions to remand do not exist in state court.

Court's perspective; (ii) prejudicial, from the State of New Mexico's perspective; and (iii) an ongoing victory, from D'Allende Meats perspective.

Last, even if the State of New Mexico had violated local rule 7.1 in the most egregious, dishonest way imaginable, the Court would still have to remand this case, because it lacks subject-matter jurisdiction. See infra Analysis, Part III. The Court could likely deny a motion to remand as a sanction for flouting local rule 7.1 if the removal suffered only from procedural defects -- such as noncompliance with the forum-defendant rule, the thirty-day limitation on removal, or the one-year limitation on removal[15] -- but when the removal is jurisdictionally defective, the Court has no choice but to remand.

## II.   THE REMOVAL WAS PROCEDURALLY DEFECTIVE, BECAUSE A NON-DEFENDANT FILED IT, AND IT FAILED TO SATISFY THE UNANIMITY RULE.

A non-Defendant filed the Notice of Removal, and no Defendant joined in the removal. Either half of this compound sentence would be singly sufficient to defeat removal; together, they render D'Allende Meats' removal objectively unreasonable. For a removal to be proper, "[a] defendant" must file it, 28 U.S.C. § 1446(a), and "all defendants . . . must join in or consent to" it, 28 U.S.C. § 1446(b)(2)(A). The Court will address the two defects sequentially.

The first requirement that this removal fails to satisfy -- that a Defendant file it -- is so fundamental that the Court is surprised that there is as much case law devoted to it as there is. The requirement comes directly from the removal statute, which provides:

> **(a)**     **Generally.** -- A defendant or defendants desiring to remove any civil action from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil

---

[15]The Court concluded that these three removal requirements are procedural rather than jurisdictional in Bank of America v. Lebreton, No. CIV 14-0319 JB/KBM, at *59-66 (D.N.M. Apr. 20, 2015)(Browning, J.)(slip op.).

Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon <u>such defendant or defendants</u> in such action.

**(b)**     **Requirements; generally.** --

**(1)**     The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by <u>the defendant</u>, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon <u>the defendant</u> if such initial pleading has then been filed in court and is not required to be served on <u>the defendant</u>, whichever period is shorter.

**(2)**     **(A)**     When a civil action is removed solely under section 1441(a), <u>all defendants</u> who have been properly joined and served must join in or consent to the removal of the action.

**(B)**     <u>Each defendant</u> shall have 30 days after receipt by or service on <u>that defendant</u> of the initial pleading or summons described in paragraph (1) to file the notice of removal.

**(C)**     If <u>defendants</u> are served at different times, and a later-served <u>defendant</u> files a notice of removal, any earlier-served <u>defendant</u> may consent to the removal even though that earlier-served <u>defendant</u> did not previously initiate or consent to removal.

**(3)**     Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by <u>the defendant</u>, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

. . . .

**(d)**     **Notice to adverse parties and State court.** -- Promptly after the filing of such notice of removal of a civil action <u>the defendant or defendants</u> shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal

- 44 -

and the State court shall proceed no further unless and until the case is
remanded.

28 U.S.C. § 1446(a) (emphases added).  It is unlikely that Congress accidentally used the term
"defendant" seventeen times if it really meant "person with an interest in the litigation."  Indeed,
"the Supreme Court has rejected the theory that the federal courts, when assessing their
jurisdiction, should look beyond the pleadings to discover unnamed real parties in interest."
PNC Bank, N.A. v. Spencer, 763 F.3d 650, 654 (7th Cir. 2014)(per curiam)(citing Lincoln Prop.
Co. v. Roche, 546 U.S. 81, 92-92 (2005)).  "A non-party -- even one that . . . claims to be a real
party in interest -- has no authority to notice removal under the statutes here utilized, 28 U.S.C.
§ 1441 and § 1446(a), which speak only of removal 'by the defendant or defendants.'"  Am.
Home Assur. Co. v. RJR Nabisco Holdings Corp., 70 F. Supp. 2d 296, 298-99 (S.D.N.Y. 1999).
See FDIC v. Loyd, 955 F.2d 316, 326 (5th Cir. 1992)("Common sense and the practicalities of
pleading dictate that no non-party to a state court proceeding has a mature right to remove that
proceeding to federal court."); Andersen v. Khanna, 827 F. Supp. 2d 970, 974 (S.D. Iowa
2011)("A non-party to a state court proceeding has no right to remove the proceeding to federal
court.  This is true even if the non-party has an interest or a stake in the proceedings."  (citation
omitted)); Gross v. Deberardinis, 722 F. Supp. 2d 532, 534 (D. Del. 2010)("Even assuming [a
non-party] is the real-party-in-interest, the Court concludes that it is not a 'defendant' within the
meaning of § 1441(a), and therefore, is not entitled to remove this action."); Jana Master Fund,
Ltd. v. JP Morgan Chase & Co., 490 F. Supp. 2d 325, 330 (S.D.N.Y. 2007)("[I]t is contrary to
the plain language of the [removal] statute to allow a nonparty [to remove a case].");  In re Notice
of Removal Filed by William Einhorn, 481 F. Supp. 2d 345, 347-48 (D.N.J. 2007)("The plain
language of the [removal] statute clearly limits the right of removal to 'defendants.' . . .  To
interpret 'defendant' to include non-parties would produce an absurd result and would

- 45 -

contravene more than 65 years of jurisprudence . . . ."); <u>Cmty. Ins. Co. v. Rowe</u>, 85 F. Supp. 2d 800, 809 (S.D. Ohio 1999)("It is axiomatic that a nonparty has no right to remove the litigation from state court to federal court."); <u>Geiger v. Arctco Enters., Inc.</u>, 910 F. Supp. 130, 131 (S.D.N.Y. 1996)("It is clear . . . that the right of removal is vested exclusively in defendants."). D'Allende Meats is not named in the Complaint, it is thus not a defendant, and it therefore may not remove the case to federal court.

Even if the Court were to try to wade into the murky issues whether D'Allende Meats is a shell corporation of Valley Meat and whether the two companies are one and the same, the parties have not given the Court any tools or evidence to undertake this analysis. That issue will be one of state law, and a state court must decide it before removal by an apparent non-party is appropriate. Moreover, D'Allende Meats, as the remover, has the burden of establishing that the removal is justified, and, as it in fact argues that D'Allende Meats and Valley Meat are <u>not</u> one and the same, the Court concludes that D'Allende Meats is not a Defendant in this action.

The second requirement by which this removal fails to abide is the unanimity rule. Although the State of New Mexico refers to the unanimity requirement as a "judge-made rule," Reply at 9, the rule is codified in § 1446(b)(2)(A), which provides that, "[w]hen a civil action is removed solely under section 1441(a),[16] all defendants who have been properly joined and

---

[16]Section 1441(a) is the "general" ground for removal, covering both federal-question and diversity jurisdiction. It provides:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). Nearly all removals are under § 1441(a); exceptions include "multiparty, multiforum jurisdiction" and actions against foreign states. 28 U.S.C. § 1441(d), (e).

served must join in or consent to the removal of the action." The Notice of Removal does not purport to be made on behalf on anyone other than D'Allende Meats, it does not state that any -- let alone all -- of the named Defendants "join in or consent to" the removal, and it does not even state that the Defendants were served with the Notice of Removal. 28 U.S.C. § 1446(b)(2)(A).

It is apparently the case that D'Allende Meats' counsel also represents the named Defendants -- a fact of which the Court would still be unaware had the State of New Mexico not brought it up in the Reply.[17] See Reply at 9-10. That several parties share counsel does not create a unanimity-rule-satisfying inference that the shared counsel's consent to or filing of a notice of removal is on behalf of all of that counsel's clients. When counsel for multiple defendants files a notice of removal or consents to removal, he or she must at least state that each of his or her clients does -- or does not, although that situation would defeat removal -- independently consent. See McEntire v. Kmart Corp., No. CIV 09-0568 JB/LAM, 2010 WL 553443, at *12 (D.N.M. Feb. 9, 2010)(Browning, J.)("When the same attorney represents multiple defendants, one defendant, through that attorney, can file a notice of removal, and state that the other defendant joins in and consents to that removal."). In a case like this one, where one counsel represents all Defendants, the unanimity rule does not require much, but it requires something: a single sentence, stating that all defendants join in and consent to removal. That sentence is necessary, and a proper notice of removal requires at least that sentence. Because the Notice of Removal fails to contain any indication of consent from any of the named Defendants -

---

[17]The Notice of Removal goes out of its way to repeatedly specify that it is made on behalf of D'Allende Meats, and it contains no indication that the Defendants share counsel with D'Allende Meats. The Court is not in the least suggesting that D'Allende Meats' counsel was trying to hide his joint representation from the Court; rather, the Court speculates that counsel believed that highlighting the joint representation would undermine his contention that D'Allende Meats is not a shell company of Valley Meat.

- let alone all of them -- and none of the named Defendants filed separate notices of consent, the unanimity rule is not satisfied in this case.

## III.    EVEN IF THE REMOVAL HAD BEEN PROCEDURALLY PROPER, THE COURT LACKS SUBJECT-MATTER JURISDICTION.

The most unfixable problem with this removal is that the underlying case lacks any basis of original federal jurisdiction.  The Notice of Removal's lone jurisdictional statement is that the removal is "pursuant to 28 U.S.C. §§ 1443 and 1446."  Notice of Removal at 1.  Section 1446 is a procedural statute; it "defines the procedures for removal but does not provide any *grounds* for removal."  Miller v. Lambeth, 443 F.3d 757, 760 (10th Cir. 2006)(emphasis in original).  Section 1443 is a "substantive" basis for removal, but it is wholly inapposite here.  Section 1443 sets forth two closely related grounds for removal jurisdiction in its two subsections: subsection (1) essentially authorizes federal subject-matter jurisdiction over cases in which the defendant's defense to a state-law cause of action arises from a federal civil-rights statute, see 28 U.S.C. § 1443(1) State of Georgia v. Rachel, 384 U.S. at 791-92; subsection (2) allows government officials sued for their refusal to enforce state laws that violate federal civil-rights laws to remove their cases to federal court, see 28 U.S.C. § 1443(2); City of Greenwood v. Peacock, 384 U.S. at 824.

D'Allende Meats concedes that § 1443 does not furnish jurisdiction here, and it now attempts to assert -- as a new jurisdictional basis, raised for the first time the Response -- federal-question jurisdiction under § 1331.  See Response ¶ 6, at 3 ("Defendant acknowledges that jurisdiction was previously noted in the Notice of Removal under 28 U.S.C. § 1443 but now acknowledges that jurisdiction is proper under 28 U.S.C. § 1331.").  There are two problems with this new theory.  First, defendants are not allowed to switch jurisdictional horses midstream. "[A]mendment may be permitted after the 30-day period if the amendment corrects defective

allegations of jurisdiction, <u>but not to add a new basis for removal jurisdiction</u>."  <u>Williams v. Bd. of Regents of Univ. of N.M.</u>, 990 F. Supp. 2d 1121, 1137 (D.N.M. 2014)(Browning, J.) (emphasis added)(quoting 16 James Wm. Moore, Daniel R. Coquillette, Gregory P. Joseph, Sol Schreiber, Georgene M. Vairo & Chilton Davis Varner, <u>Moore's Federal Practice</u> § 107.30[2][a][iv], at 107-317 to -18 (3d ed. 2013)).  <u>See</u> <u>Rader v. Sun Life Assur. Co. of Canada</u>, 941 F. Supp. 2d 1191, 1196 (N.D. Cal. 2013)("The notice of removal cannot be amended to add new bases for removal after the thirty day removal period has run, nor can a defendant present new grounds for removal for the first time in opposition to a motion for remand."  (quoting <u>ARCO Envtl. Remediation, LLC v. Dep't of Health & Envtl. Quality of Mont.</u>, 213 F.3d 1108, 1117 (9th Cir. 2000))); 14 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Vikram David Amar, Richard D. Freer, Helen Hershkoff, Joan E. Steinman & Catherine T. Struve, <u>Federal Practice & Procedure</u> § 3733, at 651-59 (4th ed. 2009) ("[D]efendants may not add completely new grounds for removal or furnish missing allegations, even if the court rejects the first-proffered basis of removal, and the court will not, on its own motion, retain jurisdiction on the basis of a ground that is present but that defendants have not relied upon.").  Second, even if the Court were to allow D'Allende Meats to substitute in its jurisdictional ringer at this late stage in the game, it would not make a difference, because this case also lacks any basis for federal-question jurisdiction.  D'Allende Meats advances a hodgepodge, kitchen-sink theory of federal-question jurisdiction which hybridizes federal-preemption doctrine with the dormant Commerce Clause:

> THE COURT:  Is it field conflict or field preemption --
>
> MR. DUNN:  Field preemption.
>
> THE COURT:  Is it dormant commerce clause?  What is the doctrine you're trying to fit this under?

MR. DUNN:  I think it could fit under either of those.

THE COURT:  Just all of them?

MR. DUNN:  Well, not just all of them, Your Honor.

Tr. at 20:24-21:8 (Court, Dunn).  This enlightening exchange is a fair characterization of the analytical precision with which D'Allende Meats articulates its theory of federal jurisdiction.

The State of New Mexico's suit implicates neither the dormant Commerce Clause nor federal field preemption.  The dormant Commerce Clause prevents states from unduly interfering with interstate commerce -- emphasis on "interstate."  While the non-dormant Commerce Clause -- i.e., the enumerated power of Congress to enact laws to regulate interstate commerce -- has had its "interstate" qualifier diluted to near meaninglessness since the New Deal,[18] the dormant

---

[18]For over fifty years, between 1942 and 1995, the Commerce Clause was thought to be a dead letter, i.e., it was thought to effectively be a federal police power, and the now-familiar concept of a federal government limited by discrete, enumerated powers was all but forgotten. In 1942, the Supreme Court upheld the application of wheat production quotas in the Agricultural Adjustment Act of 1938, Pub. L. No. 75-430, 52 Stat. 31, to private farmers who grew wheat in quantities above the law's mandated maximum for the sole purpose of personal consumption.  See Wickard v. Filburn, 317 U.S. 111 (1942).  The Supreme Court held that Congress could regulate the farmers' crop production as interstate commerce, even if it was purely for personal consumption, under the theory -- seemingly without limiting principle -- that the farmers' overproduction reduced the amount of wheat that they would need to buy, which in turn, in the aggregate, reduced the nationwide demand for wheat.  See 317 U.S. at 127-29.

After that case, the Supreme Court did not strike down a single statute on the ground that it fell outside of Congress' power to regulate interstate commerce -- leading many to assume that Congress could justify any law under the Commerce Clause -- until 1995.  In that year, the Supreme Court revitalized Commerce Clause jurisprudence, striking down the Gun-Free School Zones Act of 1990, 18 U.S.C. § 922(q), as regulating "truly local" activity.  United States v. Lopez, 514 U.S. 549, 568 (1995)(Rehnquist, C.J.).  Since United States v. Lopez, the Supreme Court has issued a number of major decisions defining the Commerce Clause's contours, including United States v. Morrison, 529 U.S. 598 (2000)(striking down provisions of the Violence Against Women Act, 42 U.S.C. § 13981(c)), Gonzales v. Raich, 545 U.S. 1 (2005) (upholding federal laws criminalizing home-grown cannabis for personal use, on the grounds that the laws were part of a valid "larger regulatory scheme," 545 U.S. at 27), and, most recently, National Federal of Independent Business v. Sebelius, 132 S. Ct. 2566 (2012) (Roberts, C.J.)(holding that the individual-mandate provision of the Patient Protection and

Commerce Clause remains focused on commerce that is truly interstate, rather than intrastate, in nature.  See C&A Carbone, Inc. v. Town of Clarkstown, N.Y., 511 U.S. 383, 390 (1994) (Kennedy, J.)("The central rationale for the rule against discrimination is to prohibit state or municipal laws whose object is local economic protectionism, laws that would excite those jealousies and retaliatory measures the Constitution was designed to prevent."  (citing The Federalist No. 22 (Alexander Hamilton))).  There are two ways that state legislation or regulation can violate the dormant Commerce Clause: (i) by discriminating against interstate commerce, i.e., imposing burdens on interstate commerce that the state does not impose on intrastate commerce, see City of Philadelphia v. New Jersey, 437 U.S. 617, 624 (1978); and (ii) by imposing a burden on interstate commerce that is "clearly excessive in relation to the putative local benefits," Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970).  See also C&A Carbone, Inc. v. Town of Clarkstown, N.Y., 511 U.S. at 390.  None of the statutes under which the State of New Mexico brings its claims discriminate against interstate commerce, nor do they appear to excessively burden interstate commerce -- D'Allende Meats has presented no evidence or assertions attesting to the slaughterhouse's importance in interstate commerce, while the State of New Mexico has made numerous serious allegations about the slaughterhouse's deleterious effect on the local water supply, environment, and public health.  See Complaint ¶¶ 33-45, at 8-13.

        Federal field preemption is, likewise, not implicated in this case.  Field preemption is a form of implied preemption that obtains when Congress adopts "a federal scheme of regulation . . . so pervasive that Congress must have intended to leave no room for a state to

---

Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 ("ObamaCare"), exceeded Congress' power under the Commerce Clause, but upholding ObamaCare under the Spending Clause, U.S. Const. art. I, § 8, cl. 1).

supplement it." Mount Olivet Cemetery Ass'n v. Salt Lake City, 164 F.3d 480, 487 (10th Cir.

1998).  No case holds or even suggests that the USDA's regulations field preempt state-law

causes of action,[19] and D'Allende Meats presents no case -- at all,[20] let alone on point -- in

support of its proposition.  Nor has it presented evidence, or even any particularly relevant legal

argument, tending to show field preemption.  D'Allende Meats itself concedes that New Mexico

previously maintained its own meat-inspection program, see Tr. at 20:13-20 (Dunn)("There is no

longer a state meat inspection program.  They surrendered that in the early 2000s, and [it] went

exclusively to the federal system."), and, if New Mexico's regulations were not preempted then,

when they were more comprehensive, then they are constitutional now, when they do not

interfere with any part of the USDA's larger scheme -- after all, no other plant in the United

States has slaughtered horses for human consumption in the past seven years, see Complaint

¶ 46, at 13.

    The State of New Mexico's claims are state-law claims in both name and character.

Federal law does not preempt them,[21] and the dormant Commerce Clause does not displace them.

---

[19]There are only two Circuit-level cases in the federal system -- neither from the Tenth Circuit -- containing both of the terms "field preemption" and "USDA."  In re Aurora Dairy Corp. Organic Milk Mktg. & Sales Practices Litig., 621 F.3d 781 (8th Cir. 2010)(Riley, C.J.); Grant's Dairy--Maine, LLC v. Comm'r of Me., 232 F.3d 8 (1st Cir. 2000)(Selya, J.).  Both cases found that other regulatory schemes under the USDA -- governing "organic" labeling conventions and milk pricing, respectively -- did not implicate field preemption.  In re Aurora Dairy Corp. Organic Milk Mktg. & Sales Practices Litig., 621 F.3d at 794; Grant's Dairy--Maine, LLC v. Comm'r of Me., 232 F.3d at 14-16.

[20]The lone case that D'Allende Meats cites in its Response, Gunn v. Minton, is not only not a field-preemption case, it is not any kind of federal-preemption case, nor even a true federal-jurisdiction case.  Gunn v. Minton deals with the exclusive jurisdiction of the federal courts, i.e., whether a given claim falls within the state courts' overlapping jurisdiction.  See 133 S. Ct. at 1062.

[21]Even if federal law preempted the state-law claims, it does not necessarily follow that federal-question jurisdiction would exist.

There is, thus, no federal-question jurisdiction.  There is also no colorable basis for civil-rights jurisdiction -- the basis that D'Allende Meats originally asserted, and which even it now disclaims -- and the Court is left with a case over which it has no subject-matter jurisdiction. The Court must, and will, remand this case.

## IV.     THE REMOVAL IS OBJECTIVELY UNREASONABLE, AND THE COURT WILL THUS AWARD COSTS AND ATTORNEYS' FEES.

The Court may "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal,"[22] 28 U.S.C. § 1447(c), but only when the removal was "objectively unreasonable," Garret v. Cook, 652 F.3d at 1254.  See Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005)(Roberts, C.J.)("Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied.").  D'Allende Meats' removal was objectively unreasonable.  First, as a non-Defendant, D'Allende Meats was not statutorily authorized to file removal; the case law is unambiguous on this point.   Second, D'Allende Meats failed to obtain all Defendants' affirmative consent to the removal; in fact, it obtained no Defendant's consent.  That its counsel

---

Federal pre-emption is ordinarily a federal defense to the plaintiff's suit.  As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court.  One corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.

Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987)(citation omitted).  The showing that D'Allende Meats must present to establish federal-question jurisdiction is, thus, even higher -- i.e., the federal preemption must be even more "complete[]" -- than the bar it must clear to win its case on the merits.

[22]Unlike § 1446 -- which restricts the right to removal to "defendants" -- § 1447 allows the Court to assess costs and fees against any wrongful remover, regardless whether he or she is a defendant in the case at hand.

also represented all the Defendants does not excuse him from satisfying this requirement; both the Court and at least one other sitting district judge in the District of New Mexico have ruled that joint counsel must still satisfy the affirmative-consent requirement for each client.  See McEntire v. Kmart Corp., 2010 WL 553443, at *6 (Browning, J.); Vazquez v. Americano USA, LLC, 536 F. Supp. 2d 1253, 1257 n.2, 1258-59 (D.N.M. 2008)(Johnson, J.).  Third, D'Allende Meats' stated basis of jurisdiction in the Notice of Removal -- which it is not allowed to change at the motion-to-remand stage -- was civil-rights jurisdiction, which lacks a sound basis under this case's facts.  Fourth, D'Allende Meats' substitute basis of jurisdiction was federal-question jurisdiction, which it based on federal field preemption and the dormant Commerce Clause -- theories which it supported with no case law or evidence, and which D'Allende Meats never fully developed even when it raised them for the first time at the hearing.  D'Allende Meats' case for federal-question jurisdiction is, frankly, not much stronger than its case for civil-rights jurisdiction would have been.

Failure on any one of these bases would, on its own, justify remand.  Whiffing on all four warrants the imposition of costs and fees.  The Court will therefore remand this case to state court, and order D'Allende Meats to pay the State of New Mexico's just costs and actual expenses, including attorneys' fees.

**IT IS ORDERED** that: (i) Plaintiff State of New Mexico's Motion to Remand and for Costs, and Memorandum in Support, filed December 12, 2014 (Doc. 9), is granted; (ii) this case will be remanded to the First Judicial District Court, County of Santa Fe, State of New Mexico; and (iii) D'Allende Meats, LLC must pay Plaintiff State of New Mexico ex rel. Hector Balderas, its just costs and actual expenses incurred as a result of the removal.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Hector Balderas
   Attorney General of the State of New Mexico
Ari Biernoff
   Assistant Attorney General
New Mexico Attorney General's Office
Santa Fe, New Mexico

     *Attorneys for the Plaintiff*

A. Blair Dunn
Albuquerque, New Mexico

     *Counsel for D'Allende Meats, LLC*