## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO ex rel. HECTOR
H. BALDERAS, Attorney General, State of
New Mexico,[1]

       Plaintiff,

vs.                                    No. CIV 14-1100 JB/KBM

VALLEY MEAT COMPANY, LLC;
RICARDO DE LOS SANTOS; MOUNTAIN
VIEW PACKING, LLC; and DAIRYLAND
PACKING, LLC,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) D'Allende Meats, LLC's Motion to

Reconsider Award of Costs and Fees, filed June 1, 2015 (Doc. 19)("Motion to Reconsider"); (ii)

D'Allende Meats' Motion for Limited Discovery and to Stay Consideration, filed June 30, 2015

(Doc. 22)("Motion for Discovery"); and (iii) the State of New Mexico's Motion for Attorney's

Fees and Costs, and Memorandum in Support, filed June 22, 2015 (Doc. 21)("Motion for Fees").

The Court held a hearing on August 26, 2015.  The primary issues are: (i) whether the Court

should reconsider the portion of its Memorandum Opinion and Order, filed May 21, 2014 (Doc.

---

[1]Both the Complaint, filed in state court December 19, 2013, filed in federal court
December 4, 2014 (Doc. 2-2), and the Notice of Removal, filed December 4, 2014 (Doc. 2), list
the Plaintiff as being the State of New Mexico ex rel. Gary K. King, Attorney General of the
State of New Mexico.  "On Tuesday, November 4th, 2014, Hector Balderas was elected the 31st
Attorney General for the State of New Mexico," however, and he took office soon after.  About
Hector Balderas, STATE OF NEW MEXICO OFFICE OF THE ATTORNEY GENERAL,
http://www.nmag.gov/about-hector-balderas.aspx (last visited May 16, 2015).  Under rule 25(d)
of the Federal Rules of Civil Procedure, when an official sues or is sued in his or her official
capacity, and the official leaves office during the course of the litigation, "[t]he officer's
successor is automatically substituted as a party[, and l]ater proceedings should be in the
substituted party's name."  Fed. R. Civ. P. 25(d).

16)("MOO"), that awarded costs and fees to Plaintiff State of New Mexico; (ii) whether the Court should allow D'Allende Meats to conduct limited discovery into the State of New Mexico's Motion for Fees; and (iii) whether the Court should award the State of New Mexico the fees and costs it seeks in its Motion for Fees. Because non-party D'Allende Meats does not present any reasons that the Court should change its award of costs and fees, the Court will deny the Motion to Reconsider with prejudice. Second, because discovery is not necessary to enable D'Allende Meats to respond to the Motion for Fees, the Court will deny the Motion for Discovery. Third, because the State of New Mexico sufficiently documents the time spent working to remand the case and seeks a reasonable hourly rate, the Court will grant the Motion for Fees.

## FACTUAL BACKGROUND

The Defendants own and operate a cattle slaughterhouse in Roswell, New Mexico. See Complaint ¶¶ 2-12, at 1-3, filed in state court December 19, 2013, filed in federal court December 12, 2014 (Doc. 2-2). They ceased operations in April, 2012, but they plan to reopen "in the imminent future." Complaint ¶ 14, at 3. When they reopen, however, they plan to slaughter horses -- rather than cattle -- and they plan to slaughter them for the purpose of human consumption. See Complaint ¶ 14, at 3. The State of New Mexico alleges that the Defendants committed numerous violations of environmental and health regulations even when they were slaughtering cattle, and that horses present much greater health concerns than cattle when their slaughter is done under poor sanitary conditions. See Complaint ¶¶ 15-32, at 3-8.

Horse slaughter for human consumption has not occurred anywhere in the United States of America in the last six years. See Complaint ¶ 46, at 13. Defendant Valley Meat Company, LLC, filed suit against the United States Department of Agriculture, however, and on June 28,

2013, the USDA issued Valley Meat a "grant of inspection" permitting it to begin slaughtering horses.   Complaint ¶ 48, at 13.   On July 2, 2013, a group of individuals and nonprofit organizations filed suit in federal court against the USDA, demanding that it rescind its earlier decision.   See Complaint ¶¶ 49-50, at 14.   The State of New Mexico intervened in that suit on behalf of the plaintiffs, with the stated purpose of protecting New Mexico's groundwater and public health.   See Complaint ¶¶ 49-50, at 14.   The plaintiffs in that case were ultimately unsuccessful, and their suit was ultimately dismissed.   See Complaint ¶ 51, at 14.

## PROCEDURAL BACKGROUND

The State of New Mexico filed this suit in the First Judicial District Court, County of Santa Fe, State of New Mexico, on December 19, 2013.   See Complaint at 1.   It alleges four causes of action, each of which arises under New Mexico law.   See Complaint ¶¶ 58-104, at 15-24.   First, it alleges violations of the New Mexico Food Act, N.M. Stat. Ann. §§ 25-2-1 to -20.   See Complaint ¶¶ 58-72, at 15-18.   Second, it alleges violations of the New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-1 to -26.   See Complaint ¶¶ 73-89, at 18-21.   Third, it alleges violations of the New Mexico Water Quality Act, N.M. Stat. Ann. §§ 74-6-1 to -17.   See Complaint ¶¶ 90-98, at 21-23.   Fourth, it alleges common-law public nuisance.   See Complaint ¶¶ 99-104, at 23-24.

Just under one year after filing, D'Allende Meats removed this case to federal court.   See Notice of Removal at 1.   Although it no longer holds this position, D'Allende Meats described itself as a "Defendant" in the Notice of Removal, even though it is not named as a Defendant in the Complaint.   Complaint ¶¶ 1-10, at 1-3.   It stated that, when it filed the removal, the state court was in the process of entertaining an "Expedited Motion seeking to enjoin non-party D'Allende (a wholly separate Texas company that had acquired Defendant's premises)."   Notice

of Removal ¶ 2, at 1.[2]  D'Allende Meats attached a copy of this motion to its Notice of Removal.

<u>See</u> Plaintiff State of New Mexico's <u>Expedited</u> Motion to Enforce and Modify Preliminary

Injunction, filed in state court December 2, 2014, filed in federal court December 4, 2014

(Doc. 2-3)("Expedited Motion").  The Expedited Motion's preliminary statement summarizes its

content:

> Just a few months ago, Defendants represented to the Court that they "are not operating and have no plans or ability to operate a horse processing facility," and on that asserted basis urged the Court to dismiss the State of New Mexico's claims as moot.  Before the ink on their motion was dry, Defendants reneged on that representation.  While insisting to the Court that they no longer have involvement or interest in commercial horse slaughter, Defendants simultaneously were busy creating a new shell company, through which they applied for the very same permits to conduct commercial horse slaughter that they had withdrawn only a few weeks earlier.
>
> Those recent actions by Defendants, in concert with three non-parties -- the new shell company, D'Allende Meats, LLC, and its principals Jose Hernandez and Ryoichi Okubo -- necessitate this motion to enforce and to modify the Court's January 17, 2014 Order Granting Preliminary Injunction ("Preliminary Injunction") enjoining Defendants from pursuing horse slaughter.  At a minimum, Defendants' actions are an effort to evade the Court's order; at worst, they represent an attempt by Defendants to perpetrate a fraud on the Court.  In either event, the Court can and should enforce the Preliminary Injunction against the non-parties with whom Defendants are colluding (the "Affiliates") to bring commercial horse slaughter to New Mexico.  In addition, the Preliminary Injunction should be modified to make clear that Defendants and their Affiliates may not undertake preparatory steps that, if completed, will necessarily result in a violation of the Preliminary Injunction.
>
> The State files this motion on an expedited basis, <u>see</u> Local Rule 1-306(I), due to the demonstrated risk that Defendants and the Affiliates will continue their efforts to circumvent the Preliminary Injunction absent judicial intervention.
>
> As required by Rule 1-007.1(C) NMRA, the undersigned requested opposing counsel's position on this motion, who responded in relevant part with a series of threats:

---

[2]The Notice of Removal's internal pagination is erroneous; it lists every page as page number "2."  Rather than using the Notice of Removal's incorrect pagination, the Court will, instead, pincite to CM/ECF's pagination -- the number at the top-right corner of each page.

> You are abusing the Attorney General's authority and this is absolutely malicious abuse of process. You lied to the Court in your supplemental notice. These individuals you are naming are not Valley Meat Company. If you file this we will add it to our Motion to Strike and for Sanctions. Please also be on Notice that we will be seeking sanctions against you personally, the state should not have to pay for your malfeasance. Further this should also be treated as Notice that if you file this we will file an action for malicious abuse of process against the Attorney General's Office you are potentially incurring liability by abusing the process. By the time the dust settles General King will have only succeeded in handing off a bucket of liability to General Balderas. This is truly bad form at the 11th hour.

Expedited Motion at 1-3. D'Allende Meats argued that it is not Defendant Valley Meat Co., LLC's shell company, and that the two companies are entirely distinct. See Notice of Removal ¶ 5, at 2. Again, although it no longer takes this position, it asserted that federal subject-matter jurisdiction existed under 28 U.S.C. §§ 1443 and 1446, i.e., civil-rights jurisdiction and removal jurisdiction in its Notice of Removal. See Notice of Removal at 1.

The State of New Mexico moved to remand eight days after removal, arguing that: (i) D'Allende Meats lacked "standing" to remove, Motion to Remand at 1; and (ii) there was no jurisdictional basis for removal under § 1443, see Motion to Remand at 9-15. The State of New Mexico asserted that § 1443(2) is "plainly inapplicable" to this case, because Congress designed that subsection for the limited purpose of allowing government-actor defendants who are sued for their refusal to enforce discriminatory state laws to remove cases against them to federal court. Motion to Remand at 10. As for § 1443's other subsection, the State of New Mexico contended, essentially, that it applies only to statutes designed to prevent racial discrimination. See Motion to Remand at 13. It asked the Court to remand the case, and to grant it costs and attorneys' fees. See Motion to Remand at 16-18.

In response, D'Allende Meats defended its decision to remove on the merits, but changed its purported jurisdictional basis from civil-rights jurisdiction under § 1443 to federal-question jurisdiction under § 1331.   See Response to Motion for Remand and Costs ¶ 6, at 3, filed December 27, 2014 (Doc. 10).   In reply, the State of New Mexico argued that the Court should not allow D'Allende Meats to assert a jurisdictional basis in the Response that it did not assert in the Notice of Removal.   See Plaintiff State of New Mexico's Reply Memorandum in Further Support of Its Motion to Remand and for Costs at 4-5, filed January 12, 2015 (Doc. 11)("Reply on Motion to Remand").   It additionally asserted that no federal-question jurisdiction exists, because federal law does not create the Complaint's claims, nor do the claims require the resolution of a substantial question of federal law.   See Reply on Motion to Remand at 6.

On May 21, 2014, the Court granted the Motion to Remand.   See MOO at 1.   In the MOO, the Court concluded that "the removal is procedurally defective, both because a non-Defendant filed it, and because no Defendant joined in or consented to the removal -- let alone all of them, as the statute requires."   MOO at 2.   Nor did the case "fall within original federal subject-matter jurisdiction."   MOO at 2.   Furthermore, the Court determined that D'Allende Meats' asserted jurisdictional basis -- civil-rights jurisdiction -- is baseless, so the Court assessed costs and fees against it.   See MOO at 2-3.   The Court therefore remanded the case to state court and ordered D'Allende Meats "to pay the State of New Mexico's just costs and actual expenses, including attorneys' fees."   MOO at 3.   D'Allende Meats then filed two motions: the Motion to Reconsider and the Motion for Limited Discovery and to Stay Consideration, filed June 30, 2015 (Doc. 22)("Motion for Discovery").   The State of New Mexico filed the Plaintiff State of New Mexico's Motion for Attorney's Fees and Costs, and Memorandum in Support, filed June 22, 2015 (Doc. 21)("Motion for Fees").

1.     **The Motion to Reconsider**.

D'Allende Meats filed the Motion to Reconsider on June 1, 2015, asking that the Court reconsider its MOO granting the Motion to Remand "only with regard to awarding Costs and Fees."  Motion to Reconsider at 1.  It asserts that it "acted with a reasonable belief that it could remove the action to Federal Court."  Motion to Reconsider at 1.  First, it states that 28 U.S.C. § 1446(b)(3) and case law support removal when a defendant is served with a motion for an injunction.  See Motion to Reconsider at 2.  It contends that, when it received service of the State of New Mexico's motion to modify an existing injunction to include D'Allende Meats, it "reasonably believed that it was being served as an interested party."  Motion to Reconsider at 2.

Second, it argues that it "speaks [with] the same voice as Valley Meat Company, LLC," who is a Defendant.  Motion to Reconsider at 3.  It makes this argument because the State of New Mexico's motion to include D'Allende Meats in the preliminary injunction was based on the theory that D'Allende Meats and Valley Meat Company were the same company.  See Motion to Reconsider at 3.  Third, D'Allende Meats concedes that its Notice of Removal contained incurable defects demonstrating the lack of subject-matter jurisdiction.  See Motion to Reconsider at 3-4.  Nonetheless, it argues that it had an "objectively reasonable belief that it could remove the action based on a Federal Question" because it was an out-of-state company attempting to engage in interstate and international commerce.  Motion to Reconsider at 3-4.  As an out-of-state company, it contends, it "believed that the State of New Mexico's action to enjoin its activity and prevent it from seeking necessary federal government permits demonstrated an infringement of the dormant commerce clause, therefore raising a Federal Question."  Motion to Reconsider at 4.

Finally, it asserts that the Court should not award costs and fees when the State of New Mexico did not give D'Allende Meats' counsel time "to objectively consider the State's Motion to Remand."  Motion to Reconsider at 4.  D'Allende Meats argues that the "State's unreasonable behavior resulted in a hasty filing by D'Allende Meats' attorney, admittedly resulting in some errors."  Motion to Reconsider at 4.  D'Allende Meats contends that, despite its errors, it could have rescinded and refiled its motions if "the State had consulted in good faith and provided an opportunity to review its reasons for the proposed remand."  Motion to Reconsider at 4.

The State of New Mexico responded on June 15, 2015.  See Plaintiff State of New Mexico's Memorandum in Opposition to Motion to Reconsider Award of Costs and Fees, filed June 15, 2015 (Doc. 20)("Response to Motion to Reconsider").  It contends that "D'Allende Meats' motion is as frivolous as the company's removal of this action in the first instance, and should summarily be denied."  Response to Motion to Reconsider at 1.  First, it argues that, under 28 U.S.C. § 1447(d) and the United States Court of Appeals for the Tenth Circuit's case law, "a district court's decision to remand under the removal statutes applicable here may neither be reconsidered nor reviewed on appeal."  Response to Motion to Reconsider at 2.  Although the State of New Mexico concedes that the Court may reconsider whether to award costs and fees, it argues that D'Allende Meats' Motion to Reconsider "seeks to relitigate every aspect of the merits of remand," including: (i) its status as a non-party; (ii) whether the actual Defendants presumed to consent to removal; and (iii) whether it had a good-faith basis for filing its Notice of Removal.  Response to Motion to Reconsider at 3.  The State of New Mexico argues that, for these reasons, the Court should not even consider the Motion to Reconsider.  See Response to Motion to Reconsider at 4.

Next, the State of New Mexico asserts that, even if the Court considers the Motion to Reconsider, D'Allende Meats cannot meet the standard required of parties seeking post-judgment relief.  See Response to Motion to Reconsider at 4.  It states that, although the Federal Rules of Civil Procedure allow parties to file motions to alter or amend the judgment under rules 59(e) and 60(b), D'Allende Meats "utterly fails to demonstrate the exceptional circumstances required for relief under any of the potentially applicable standards."  Response to Motion to Reconsider at 4-5.

D'Allende Meats filed its brief reply on July 1, 2015.  See Defendants' Reply in Support of their Motion to Reconsider Award of Costs and Fees, filed July 1, 2015 (Doc. 24)("Reply on Motion to Reconsider").  It first argues that the Supreme Court of the United States of America has held that "courts may award attorney's fees under § 1447(c) only where the removing party *lacked an objectively reasonable basis* for seeking removal."  Reply on Motion to Reconsider at 2 (citing Martin v. Franklin Capital Corp., 546 U.S. 132, 140 (2005))(emphasis in Reply on Motion to Reconsider).  D'Allende Meats contends that, because it had an objectively reasonable basis for removing the case, the Court should reconsider its decision to award costs and fees. See Reply on Motion to Reconsider at 3-4.

The Court held a hearing on August 26, 2015.  See Transcript of Hearing (taken August 26, 2015)("Tr.").  D'Allende Meats reiterated that it did not seek reconsideration of the remand order, but only of the Court's award of costs and fees.  See Tr. at 4:2-6 (Richards).  D'Allende Meats emphasized that it "had an objectively reasonable basis in seeking the removal."  Tr. at 4:10-11 (Richards).   When D'Allende Meats began describing why it had an objectively reasonable basis for removal, the Court stated that its arguments sounded substantially the same as the arguments it made against remand.  See Tr. at 5:1-4 (Court).  The Court asserted that, for it

to reconsider its award of costs and fees, it would have to essentially reconsider the decision to remand.  See Tr. at 5:15-21 (Court)("You're saying, don't reconsider [the decision to remand], but you got it wrong, and therefore, I shouldn't award attorneys' fees.").  The Court noted that it could not review its decision to remand.  See Tr. at 5:15-21 (Court).

D'Allende Meats admitted that its Notice of Removal had procedural flaws, but it maintained that a filing's mistakes do not automatically warrant the Court's award of attorneys' fees.  See Tr. at 6:1-4 (Richards).  The Court agreed that a mistake did not necessarily warrant costs and fees, but stated that this situation was unique: "[T]he fact that a nonparty to the case removed this case . . . was not objectively reasonable."  Tr. at 6:11-15 (Court).  Accordingly, the Court observed that the Motion to Reconsider sought to rehash old arguments.  See Tr. at 6:16-19 (Court).  The Court also compared the objectively reasonable standard in this case to a qualified immunity case.  See Tr. at 7:9-14 (Court).  To be objectively reasonable under the qualified immunity analysis, the Court said, the law must be clearly established by Tenth Circuit precedent.  See Tr. at 7:9-14 (Court).  Here, in contrast, the Court stated that there was no such requirement that Tenth Circuit case law hold the behavior objectively unreasonable.  See Tr. at 7:9-14 (Court).

In considering the objective reasonableness of D'Allende Meats' actions, the Court stated: "I don't think anybody in the country has done this before -- a nonparty coming in and removing a case."  Tr. at 7:12-14 (Court).  D'Allende Meats could not cite a case in which a nonparty removed a case.  See Tr. at 7:18-23 (Court, Richards).  D'Allende Meats admitted that it was still not a party to the case; the State of New Mexico has not sued it.  See Tr. at 8:20-24 (Richards).

- 10 -

The State of New Mexico asserted that, by removing this action, "D'Allende Meats obtained for itself, and for the defendants in the state action, a many months' long recess from litigation."  Tr. at 10:12-15 (Biernoff).  It contended that the Motion to Reconsider "is just the latest in a long string of efforts by Mr. Dunn and his clients to delay resolution of the claims and issues in this case."  Tr. at 10:16-20 (Biernoff).  Nevertheless, the State of New Mexico agreed that the Court had jurisdiction to reconsider its award of costs and fees, because it was a collateral issue to the Court's remand.  See Tr. at 16:8-12 (Biernoff).  The State of New Mexico argued that D'Allende Meats cannot show that its actions were objectively reasonable.  See Tr. at 17:5-11 (Biernoff).  Finally, it noted that it seeks costs and fees only in "egregious cases like this, where a litigant is attempting to completely subvert the course of the litigation -- in this case by delay."  Tr. at 18:10-15 (Biernoff).   The Court stated that it was "inclined not to change [its] conclusion in the Memorandum Opinion and Order that included an award of costs and fees." Tr. at 24:8-10 (Court).

2.    **The Motion for Fees.**

In its Motion for Fees, the State of New Mexico "moves this Court for an order awarding the State its just costs and actual expenses, including attorney's fees, incurred as a result of non-party D'Allende Meats' improper removal."  Motion for Fees at 1.  The State of New Mexico presented D'Allende Meats "with a statement detailing the State's attorney's fees" in hopes of reaching a compromise, but "the parties were unable to reach such an agreement."  Motion for Fees at 1.

The State of New Mexico contends that, although the Court remanded the underlying action to state Court, it retains jurisdiction to determine the specific amount of fees to which the State is entitled, because district courts retain jurisdiction to decide collateral matters.  See

- 11 -

Motion for Fees at 2-3.  It states: "Questions of attorney's fees and costs are collateral to and separate from a decision on the merits."  Motion for Fees at 2.  Regarding the amount of fees, it argues that district courts have discretion to determine what constitutes reasonable attorney's fees in line with the Tenth Circuit's lodestar approach.  <u>See</u> Motion for Fees at 3-4.  This approach requires that the Court multiply the number of hours that the attorney worked by a reasonable rate.  <u>See</u> Motion for Fees at 4.

The State of New Mexico also requests that the Court hold D'Allende Meats' attorney personally responsible for a portion of the State of New Mexico's fees.  <u>See</u> Motion for Fees at 7.  It argues that, under 28 U.S.C. § 1927, a court may require any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously" to pay the excess costs associated with his or her behavior.  Motion for Fees at 7 (quoting 28 U.S.C. § 1927).  The State of New Mexico contends that it attempted to prevent D'Allende Meats' counsel from filing its "frivolous" Motion to Reconsider by showing him case law that foreclosed review, but that "Counsel for D'Allende Meats ignored that precedent and filed his Motion to Reconsider anyway."  Motion for Fees at 9.  The State of New Mexico asserts that, because filing "a motion that seeks relief unavailable under governing law is both unreasonable and vexatious," D'Allende Meats' counsel "should be taxed with that subset of the State's attorney's fees."  Motion for Fees at 9.

The State of New Mexico states that its counsel, Assistant Attorney General Ari Biernoff, devoted 5.8 hours to responding to D'Allende Meats' Motion to Reconsider.  <u>See</u> Motion for Fees at 9.  It submits time records in connection with its asserted hours.  Additionally, it argues that its hourly rate of $200.00 is "reasonable."  Motion for Fees at 6.  As support, the State of New Mexico attached an affidavit providing Mr. Biernoff's "education, admission to practice, credentials and professional experience."  Motion for Fees at 6.  It points to numerous cases in

which the Court "awarded fees to attorneys with comparable experience at this rate or at even higher rates."  Motion at for Fees 6-7.  Multiplying Mr. Biernoff's hourly rate of $200.00 by the number of hours he spent working on the Response to the Motion to Reconsider yields a charge of $1,160.00.  See Motion for Fees at 9.  When this amount is combined with the time Mr. Biernoff spent preparing work to remand the case, "[t]he remainder of the State's fees total $4,540.00," producing a total of $5,640.00 for the time spent working to remand the case and to respond to the Motion to Reconsider.  The State of New Mexico requests that the Court award the State of New Mexico $5,640.00, "with $4,540.00 of that amount to be borne by non-party D'Allende Meats and the remaining $1,100.00 to be borne by counsel for D'Allende Meats."  Motion for Fees at 11.  The State of New Mexico further argues that it "is entitled to post-judgment interest on the fee award."  Motion at 10.

"Neither Defendants nor non-party D'Allende Meats, LLC has filed a response to the motion, and the time for filing any such response now has elapsed."  Notice of Briefing Complete on Plaintiff State of New Mexico's Motion for Attorney's Fees and Costs, filed July 7, 2015 (Doc. 26).  At the hearing, the Court addressed the State of New Mexico's Motion for Fees alongside D'Allende Meats' Motion for Discovery, so the Court will discuss the hearing below.

### 3.    The Motion Discovery.

In the Motion for Discovery, D'Allende Meats "request[s] that this Court grant limited discovery regarding the reasonableness of the attorney fees," and "a stay of the motion practice deadlines for responses and replies until 17 days after the limited discovery has been produced."  Motion for Discovery at 1.  It contends that it seeks "very limited and select information" that is a matter of public record.  Motion for Discovery at 2.  Specifically, it seeks "clarification

regarding potentially unnecessary and/or duplicative hours charged for work completed by attorneys other than Plaintiff's Counsel." Motion for Discovery at 3.

The State of New Mexico filed its Memorandum in Opposition to D'Allende Meats' Motion for Limited Discovery and to Stay Consideration on July 14, 2015. See Doc. 27 ("Response to Motion for Discovery"). It argues that the Court should permit discovery on fee petitions only in "exceptional circumstances." Response to Motion for Discovery at 2. It contends that additional discovery would not assist the Court in determining the appropriate fees, especially when "the attorney's fees sought are extremely modest." Response to Motion for Discovery at 2. Moreover, it notes that D'Allende Meats' contention that it needs discovery to determine whether Mr. Biernoff worked "duplicative hours," Motion for Discovery at 3, is baseless because "the State's motion for fees only seeks recovery for work performed by one individual." Response to Motion for Discovery at 4. In short, it asserts that D'Allende Meats "does not even come close to justifying its entitlement to the discovery it demands here." Response to Motion for Discovery at 3.

D'Allende Meats replied on July 26, 2015. See Reply in Support of Motion for Limited Discovery and to Stay Consideration, filed July 26, 2015 (Doc. 28)("Reply on Motion for Discovery"). It argues that the State of New Mexico "fails to argue that these requests are not relevant to the attorney fees sought in this matter, or that such requested information would be difficult to produce." Reply on Motion for Discovery at 4. It reiterates that limited discovery is warranted here, where it "identified specific anomalies and discovery needs in order to fully respond to Plaintiff's Motion for Attorney Fees." Reply on Motion for Discovery at 6.

D'Allende Meats agrees with the State of New Mexico that the Court should use the lodestar approach to determine the fee award. See Reply on Motion for Discovery at 8. It

disagrees with the State of New Mexico's fee calculation, arguing that a $200.00 rate is unreasonable.  See Reply on Motion for Discovery at 7.  As support, however, it largely cites cases from the early 1980s.  See Reply on Motion for Discovery at 7.  It argues that the discovery it seeks addresses whether $200.00 is a reasonable rate and whether the number of hours Mr. Biernoff represents that he worked is correct.  See Reply on Motion for Discovery at 8.  Finally, it spends the remainder of its brief arguing that the State of New Mexico bears the burden of proving that an upward fee adjustment from the lodestar amount is necessary, see Reply on Motion for Discovery at 8-9, even though the State of New Mexico argues that it seeks no adjustment, see Motion for Fees at 4 n.1 ("The State does not claim any special circumstances that would merit adjustment of the lodestar.").  D'Allende Meats argues that the State of New Mexico implicitly seeks an upward adjustment by asking for an hourly rate of $200, which it contends is allegedly not reasonable.  See Tr. at 40:22-24 (Richards).

At the hearing, the State of New Mexico's counsel assured the Court that it did not need to alter the traditional method of calculating a reasonable hourly rate for government lawyers or lawyers representing governmental entities.  See Tr. at 26:6-21 (Biernoff, Court).  The State of New Mexico asserted that its $200.00 rate "is a market-based fee award."  Tr. at 29:18-20 (Biernoff).  It stated that it excluded a number of other charges, including administrative tasks and brief editing.  See Tr. at 30:1-10 (Biernoff).  It asserted: "This is about as lean of a bill as I think that you'd find out there."  Tr. at 30:6-8 (Biernoff).  The State of New Mexico argued that the desired discovery was not necessary to respond to the Motion for Fees, because D'Allende Meats sought information regarding email communications between Mr. Biernoff and other counsel, even though Mr. Biernoff was not seeking to be paid for time he spent emailing and corresponding with other counsel.  See Tr. at 40:3-10 (Biernoff, Court).

D'Allende Meats contended that it responded to the Motion for Fees by filing a motion for discovery and for a stay.  See Tr. at 38:24-39:6 (Richards).  It asserted that such a motion "is a proper response when the ability of a party to respond to a pending motion is subject to them receiving additional information."  Tr. at 39:1-3 (Richards).  Nevertheless, it stated that, if the Court denies its Motion for Discovery and declines to stay the case, it asks "for the opportunity to respond to the attorney fee request."  Tr. at 62:23-25 (Richards).  The State of New Mexico argued that D'Allende Meats' request that the Court allow it to respond to the Motion for Fees demonstrates that its Motion for Discovery does not constitute a proper response.  See Tr. at 64:5-10 ("[T]hat demonstrates unequivocally that D'Allende Meats has not, in fact, responded to the motion.").

D'Allende Meats then argued that it needed discovery on three matters to properly respond to the Motion for Fees.  D'Allende Meats first asserted that it needed information because it challenged the $200.00 rate, arguing that it was higher than what a court awarded on a recent case.  See Tr. at 42:15-25 (Richards).  The Court noted that the case cited likely involved much simpler work than the work involved here, so $200.00 was reasonable compared to what other lawyers were being paid for similar cases.  See Tr. at 43:1-4 (Court).  The Court asked D'Allende Meats how it proposed to value Mr. Biernoff's hourly rate.  See Tr. at 46:17-21 (Court).  D'Allende Meats proposed to use Mr. Biernoff's salary at an hourly rate.  See Tr. at 47:17-20 (Richards).  The Court observed that Mr. Biernoff's salary was likely a matter of public record, so D'Allende Meats did not need more discovery.  See Tr. at 50:22-25 (Court).  D'Allende Meats agreed that whether the rate was reasonable is a legal issue the Court must decide.  See Tr. at 43:5 (Richards).  The State of New Mexico then argued that binding legal

precedent made clear that "public servants and public interest attorneys are to be paid according to prevailing market rates, not according to what their salary is."  Tr. at 65:23-66:2 (Biernoff).

Second, D'Allende Meats alleged that it needed more discovery to determine whether Mr. Biernoff was including time spent writing the Motion to Remand using portions of the brief that he wrote for other, similar cases, which D'Allende Meats described as "duplicative."  Tr. at 51:1-9 (Richards).  It argues that "simply disclosing the 32 emails that we requested" would reveal whether Mr. Biernoff included inappropriate time in his calculation.  Tr. at 51:12-14 (Richards).  The Court questioned how emails would reveal any duplication and stated: "If Mr. Biernoff has represented to the Court he has spent $5,000 worth of hours working on this case, tell me how there is duplication," especially when Mr. Biernoff is not billing D'Allende Meats for time spent on emails.  Tr. at 53:1-7 (Court).[3]  D'Allende Meats then admitted that it believed that Mr. Biernoff's representations about the time he spent working on the case were false.  See Tr. at 54:7-13 (Richards).  Nevertheless, it could not explain how email communications would reveal any time discrepancies.  The State of New Mexico argued that the emails were "immaterial to the fee petition."  Tr. at 71:21 (Biernoff).  Additionally, the State of New Mexico contended that it would not produce its emails, because those emails contain privileged information that the work product doctrine protects.  See Tr. at 70:10-24 (Biernoff).

Third, D'Allende Meats argued that it needed metadata from various documents to ascertain whether Mr. Biernoff's alleged time was correct.  See Tr. at 58:1-6 (Richards)(arguing that "the metadata will show how much time was worked on that motion and who worked on it").  The State of New Mexico asserted that it would not produce metadata to D'Allende Meats,

---

[3]Mr. Biernoff informed the Court that the Attorney General's office currently requires attorneys to keep contemporaneous time records in cases "where there is an issue of fees and costs" and "where we might obtain fees and costs."  Tr. at 67:17-23 (Biernoff).

because it contains privileged information.  See Tr. at 80:3-11 (Biernoff).  Mr. Biernoff argued

that he would never "misappropriate[e] someone else's work product," especially when he has

sworn to the fact that all of the work for which he seeks fees, which his Motion for Fees details,

is work that he performed.  Tr. at 72:8-11 (Biernoff).  The Court observed that extracting the

metadata could be time-consuming and costly, and that most other cases involving significant

amounts of attorney's fees "never asked for metadata."  Tr. at 60:9-11 (Court).  Moreover, the

Court stated: "[I]t's going to cost as much or more to litigate that issue than it is the $5,000 here

in the remand."  Tr. at 60:9-11 (Court).

## LAW REGARDING MOTIONS TO RECONSIDER

Except where the Federal Rules of Civil Procedure specify, motions to reconsider fall

into three categories:

> (i) a motion to reconsider filed within [twenty-eight] days of the entry of
> judgment is treated as a motion to alter or amend the judgment under rule 59(e);
> (ii) a motion to reconsider filed more than [twenty-eight] days after judgment is
> considered a motion for relief from judgment under rule 60(b); and (iii) a motion
> to reconsider any order that is not final is a general motion directed at the Court's
> inherent power to reopen any interlocutory matter in its discretion.  See Price v.
> Philpot, 420 F.3d 1158, 1167 & n.9 (10th Cir. 2005).

Pedroza v. Lomas Auto Mall, Inc., 258 F.R.D. 453, 462 (D.N.M. 2009)(Browning, J.).  See Price

v. Philpot, 420 F.3d at 1167; Computerized Thermal Imaging, Inc. v. Bloomberg. L.P., 312 F.3d

1292, 1296 (10th Cir. 2002).

### 1.  Motions for Reconsideration Under Rules 59(e) and 60(b).

Courts may treat motions for reconsideration as a rule 59(e) motion when the movant

files within twenty-eight days of a court's entry of judgment.  See Price v. Philpot, 420 F.3d at

1167 n.9.  If the movant files outside that time period, courts should treat the motion as seeking

relief from judgment under rule 60(b).  See Price v. Philpot, 420 F.3d at 1167 n.9.  "[A] motion

for reconsideration of the district court's judgment, filed within [rule 59's filing deadline],

postpones the notice of appeal's effect until the motion is resolved." Jones v. United States, 355

F. App'x 117, 121 (10th Cir. 2009)(unpublished).  The time limit in rule 59(e) is now twenty-

eight days from the entry of a judgment. See Fed. R. Civ. P. 59(e).

Whether a motion for reconsideration should be considered a motion under rule 59 or rule

60 is not only a question of timing, but also "depends on the reasons expressed by the movant."

Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc., 680 F.3d 1194,

1200 (10th Cir. 2011).   Where the motion "involves 'reconsideration of matters properly

encompassed in a decision on the merits,'" a court considers the motion under rule 59(e).  Phelps

v. Hamilton, 122 F.3d 1309, 1323-24 (10th Cir. 1997)(quoting Martinez v. Sullivan, 874 F.2d

751, 753 (10th Cir. 1989)).   In other words, if the reconsideration motion seeks to alter the

district court's substantive ruling, then it should be considered a rule 59 motion and be subject to

rule 59's constraints.  Phelps v. Hamilton, 122 F.3d at 1324.  In contrast, under rule 60,

> [o]n motion and just terms, the court may relieve a party or its legal
> representatives from a final judgment, order, or proceeding for the following
> reasons:
>
> (1)     mistake, inadvertence, surprise, or excusable neglect;
>
> (2)     newly discovered evidence that, with reasonable diligence, could
>         not have been discovered in time to move for a new trial under
>         Rule 59(b);
> (3)     fraud (whether previously called intrinsic or extrinsic),
>         misrepresentation, or misconduct by an opposing party;
>
> (4)     the judgment is void;
>
> (5)     the judgment has been satisfied, released or discharged; it is based
>         on an earlier judgment that has been reversed or vacated; or
>         applying it prospectively is no longer equitable; or
>
> (6)     any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  Neither a rule 59 nor a rule 60 motion for reconsideration

> are appropriate vehicles to reargue an issue previously addressed by the court
> when the motion merely advances new arguments, or supporting facts which were
> available at the time of the original motion. . . .  Grounds warranting a motion to
> reconsider include (1) an intervening change in the controlling law, (2) new
> evidence previously unavailable, and (3) the need to correct clear error or prevent
> manifest injustice.

Servants of the Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000).  "[A] motion for

reconsideration is appropriate where the court has misapprehended the facts, a party's position,

or the controlling law."  Servants of the Paraclete v. Does, 204 F.3d at 1012.  A district court has

considerable discretion in ruling on a motion to reconsider.  See Phelps v. Hamilton, 122 F.3d at

1324.

Rule 60 authorizes a district court to, "[o]n motion and just terms[,] . . . relieve a party or

its legal representative from a final judgment, order, or proceeding for the following reasons,"

including "any other reason that justifies relief."  Fed. R. Civ. P. 60(b).  A court cannot enlarge

the time for filing a rule 59(e) motion.  See Brock v. Citizens Bank of Clovis, 841 F.2d 344, 347

(10th Cir. 1988)(holding that district courts lack jurisdiction over untimely rule 59(e) motions);

Plant Oil Powered Diesel Fuel Sys., Inc. v. ExxonMobil Corp., No. 11-0103, 2012 WL 869000,

at *2 (D.N.M. Mar. 8, 2012)(Browning, J.)("The Court may not extend the time period for timely

filing motions under Rule 59(e) . . . .").  "A motion under rule 59 that is filed more than 28 days

after entry of judgment may be treated as a Rule 60(b) motion for relief from judgment."  12

JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 59.11[4][b], at 59-32 (3d ed.

2012)(citations omitted).  Nevertheless, a court will not generally treat an untimely rule 59(e)

motion as a rule 60(b) motion when the party is seeking "'reconsideration of matters properly

encompassed in a decision on the merits' contemplated by Rule 59(e)."  Jennings v. Rivers, 394

F.3d 850, 854 (10th Cir. 2005).

Under some circumstances, parties can rely on rule 60(b)(1) for a mistake by their attorney or when their attorney acted without their authority.  See Yapp v. Excel Corp., 186 F.3d 1222, 1231 (10th Cir. 1999)("Rule 60(b)(1) motions premised upon mistake are intended to provide relief to a party . . . when the party has made an excusable litigation mistake or an attorney has acted without authority . . . .").  Mistake in this context entails either acting without the client's consent or making a litigation mistake, such as failing to file or to comply with deadlines.  See Yapp v. Excel Corp., 186 F.3d at 1231.  If the alleged incident entails a mistake, then it must be excusable, meaning that the party was not at fault.  See Pioneer Inv. Servs. v. Brunswick Assocs. LP, 507 U.S. 380, 394 (1993); Cashner v. Freedom Stores, Inc., 98 F.3d 572, 577 (10th Cir. 1996)("If the mistake alleged is a party's litigation mistake, we have declined to grant relief under Rule 60(b)(1) when the mistake was the result of a deliberate and counseled decision by the party."); Pelican Prod. Corp. v. Marino, 893 F.2d 1143, 1146 (10th Cir. 1990)(holding that attorney carelessness is not a basis for relief under Rule 60(b)(1)).

Courts will not grant relief when the mistake of which the movant complains is the result of an attorney's deliberate litigation tactics.  See Cashner v. Freedom Stores, Inc., 98 F.3d at 577. This rule exists because a party

> voluntarily chose [the] attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.

Pioneer Inv. Servs. v. Brunswick Assocs. LP, 507 U.S. at 397 (quoting Link v. Wabash R.R. Co., 370 U.S. 626, 633-34 (1962))(internal quotation marks omitted).  The Tenth Circuit has held that there is nothing "novel" about "the harshness of penalizing [a client] for his attorney's conduct," and has noted that those "who act through agents are customarily bound," even though, when "an

attorney is poorly prepared to cross-examine an expert witness, the client suffers the consequences." Gripe v. City of Enid, Okla., 312 F.3d 1184, 1189 (10th Cir. 2002).

Rule 60(b)(6) is a "grand reservoir of equitable power to do justice in a particular case." Van Skiver v. United States, 952 F.2d 1241, 1244 (10th Cir. 1991)(internal quotation marks omitted). "If the reasons offered for relief from judgment could be considered under one of the more specific clauses of Rule 60(b)(1)-(5), those reasons will not justify relief under Rule 60(b)(6)." Moore, supra § 60.48[2], at 60-182. Accord Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863 n.11 (1988)("This logic, of course, extends beyond clause (1) and suggests that clause (6) and clauses (1) through (5) are mutually exclusive."). "The Rule does not particularize the factors that justify relief, but we have previously noted that it provides courts with authority 'adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice,' while also cautioning that it should only be applied in 'extraordinary circumstances.'" Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. at 863.

Generally, the situation must be one beyond the control of the party requesting relief under rule 60(b)(6) to warrant relief. See Ackermann v. United States, 340 U.S. 193, 202 (1950)("The comparison [of prior precedent] strikingly points up the difference between no choice and choice; imprisonment and freedom of action; no trial and trial; no counsel and counsel; no chance for negligence and inexcusable negligence. Subsection 6 of Rule 60(b) has no application to the situation of petitioner."). Legal error that provides a basis for relief under rule 60(b)(6) must be extraordinary, as the Tenth Circuit discussed in Van Skiver v. United States:

> The kind of legal error that provides the extraordinary circumstances justifying relief under Rule 60(b)(6) is illustrated by Pierce [v. Cook & Co., 518 F.2d 720, 722 (10th Cir. 1975)(en banc)]. In that case, this court granted relief under 60(b)(6) when there had been a post-judgment change in the law "arising out of

- 22 -

the same accident as that in which the plaintiffs . . . were injured." <u>Pierce v. Cook & Co.</u>, 518 F.2d at 723.  However, when the post-judgment change in the law did not arise in a related case, we have held that "[a] change in the law or in the judicial view of an established rule of law" does not justify relief under Rule 60(b)(6).  <u>Collins v. City of Wichita</u>, 254 F.2d 837, 839 (10th Cir. 1958).

952 F.2d at 1244-45.

2.      <u>**Motions to Reconsider Interlocutory Orders.**</u>

Considerable confusion exists among the bar regarding the proper standard for a district court to apply when ruling on a motion to reconsider one of its prior "interlocutory" or "interim" orders, <u>i.e.</u>, an order that a district court issues while the case is ongoing, as distinguished from a final judgment.  This confusion originates from the fact that the Federal Rules of Civil Procedure do not mention motions to reconsider, let alone set forth a specific procedure for filing them or a standard for analyzing them.  A loose conflation in terminology in <u>Servants of the Paraclete v. Does</u>, which refers to rule 59(e) motions -- "motion[s] to alter or amend a <u>judgment</u>" -- as "motions to reconsider,"[4] compounded that baseline confusion.  Fed. R. Civ. P. 59(e) (emphasis added); <u>Servants of the Paraclete v. Does</u>, 204 F.3d at 1005.

---

[4]The Honorable Paul J. Kelly, Jr., United States Circuit Judge for the Tenth Circuit, who authored <u>Servants of the Paraclete v. Does</u>, refers to rule 59(e) motions as "motions to reconsider" several times throughout the opinion.  <u>See</u>, <u>e.g.</u>, 204 F.3d at 1005.  He uses the term "motion to reconsider" as an umbrella term that can encompass three distinct motions: (i) motions to reconsider an interlocutory order, which no set standard governs, save that the district court must decide them "before the entry of . . . judgment," Fed. R. Civ. P. 54(b); (ii) motions to reconsider a judgment made within twenty-eight days of the entry of judgment, which the <u>Servants of the Paraclete v. Does</u> standard governs; and (iii) motions to reconsider a judgment made more than twenty-eight days after the entry of judgment, which rule 60(b) governs.  There is arguably a fourth standard for motions to reconsider filed more than a year after the entry of judgment, as three of the rule 60(b) grounds for relief expire at that point.

Much confusion could be avoided by using the term "motion to reconsider" exclusively to refer to the first category, "motion to amend or alter the judgment" exclusively to refer to the second category, and "motion for relief from judgment" exclusively to refer to the third category (and arguable fourth category).  These are the terms that the Federal Rules of Civil Procedure -- and other Circuits -- use to describe (ii) and (iii).  The Court agrees with Judge Kelly -- and all he likely meant by using motion to reconsider as an umbrella term is -- that, if a party submits a

Final judgments are different from interlocutory orders.  See Fed. R. Civ. P. 54(a) ("'Judgment' as used in these rules includes a decree and any order from which an appeal lies.")(emphasis added).  In addition to ripening the case for appeal, see 28 U.S.C. § 1291 ("The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts . . . ."), the entry of final judgment narrows the district court's formerly plenary jurisdiction over the case in three ways.  First, for the first twenty-eight days after the entry of judgment, when the court can entertain motions under rules 50(b), 52(b), 59, and 60, the district court's jurisdiction trumps that of the Court of Appeals.  See Fed. R. App. P. 4(a)(4)(B).  Even if a party files a notice of appeal, the Court of Appeals will wait until after the district court has ruled on the post-judgment motion to touch the case.   See Fed. R. App. P. 4(a)(4)(B). Second, after twenty-eight days, when the court may consider motions under rule 60, if a party has filed a notice of appeal, the Court of Appeals' jurisdiction trumps the district court's, and the district court needs the Court of Appeals' permission even to grant a rule 60 motion.  Third, after twenty-eight days, if no party has filed a notice of appeal, district courts may consider motions under rule 60.

Final judgments implicate two important concerns militating against giving district courts free reign to reconsider their judgments.  First, when a case is not appealed, there is an interest in finality.  The parties and the lawyers expect to go home, quit obsessing about the dispute, and put the case behind them, and the final judgment -- especially once the twenty-eight day window of robust district court review and the thirty-day window of appeal have both closed -- is the disposition upon which they are entitled to rely.  Second, when a case is appealed, there is the

motion captioned as a "motion to reconsider" after an entry of final judgment, the court should evaluate it under rule 59(e) or 60(b), as appropriate, rather than rejecting it as untimely or inappropriate.

need for a clean jurisdictional handoff from the district court to the Court of Appeals.  "[A] federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously," as doing so produces a "danger [that] a district court and a court of appeals w[ill] be simultaneously analyzing the same judgment."  Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58-59 (1982).

The Court of Appeals needs a fixed record on which to base its decisions -- especially given the collaborative nature of appellate decisionmaking -- and working with a fixed record requires getting some elbow room from the district court's continued interference with the case. The "touchstone document" for this jurisdictional handoff is the notice of appeal, not the final judgment, see Griggs v. Provident Consumer Discount Co., 459 U.S. at 58 ("The filing of a notice of appeal is an event of jurisdictional significance -- it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."  (citations omitted)); Garcia v. Burlington N. R.R. Co., 818 F.2d 713, 721 (10th Cir. 1987)("Filing a timely notice of appeal pursuant to Fed. R. App. P. 3 transfers the matter from the district court to the court of appeals.  The district court is thus divested of jurisdiction.  Any subsequent action by it is null and void."  (citations omitted)); Kirtland v. J. Ray McDermott & Co., 568 F.2d 1166, 1170 (5th Cir. 1978)("[I]t is the filing of the appeal, not the entering of a final judgment, that divests the district court of jurisdiction."  (citations omitted)), but, because the final judgment starts the parties' thirty-day clock for filing a timely notice of appeal, the Federal Rules and the Tenth Circuit have chosen to curtail the district court's jurisdiction over the case in the roughly month-long period of potentially overlapping trial- and appellate-court jurisdiction that immediately follows the entry of final judgment, see Servants of the Paraclete v.

Does, 204 F.3d at 1009 (noting that post-final judgment motions at the district court level are "not intended to be a substitute for direct appeal").

Basically, rather than suddenly divesting the district court of all jurisdiction over the case -- potentially resulting in the district court being unable to rectify easily fixable problems with the final judgment before the case goes to the Tenth Circuit, or even requiring appeal of a case that might otherwise not need to be appealed -- the Federal Rules set forth a jurisdiction phased de-escalation process, wherein the district court goes from pre-final judgment plenary jurisdiction, to limited review for the first twenty-eight days post-final judgment, and, finally, to solely rule 60 review after twenty-eight days.  In defining the "limited review" that rule 59(e) allows a district court to conduct in the 28-day flux period, the Tenth Circuit, in Servants of the Paraclete v. Does, incorporated traditional law-of-the-case grounds -- the same grounds that inform whether a court should depart from an appellate court's prior decision in the same case -- into rule 59(e).  See United States v. Alvarez, 142 F.3d 1243, 1247 (10th Cir. 1998)(departing from the law of the case doctrine in three exceptionally narrow circumstances: "(1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice")(citation omitted); Servants of the Paraclete v. Does, 204 F.3d at 1012 (incorporating those grounds into rule 59(e)).

Neither of these concerns -- finality nor jurisdictional overlap -- is implicated when a district court reconsiders one of its own interlocutory orders.  The Federal Rules do not specifically mention motions to reconsider interlocutory orders, but rule 54(b) makes the following open-ended proclamation about their mutability:

> When an action presents more than one claim for relief -- whether as a claim, counterclaim, crossclaim, or third-party claim -- or when multiple parties are

> involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.  Otherwise, <u>any order or other decision</u>, however designated, <u>that adjudicates fewer than all the claims</u> or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and <u>may be revised at any time before the entry of a judgment</u> adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b) (emphases added).  Rule 54(b) thus (i) provides that a district court can freely reconsider its prior rulings; and (ii) puts no limit or governing standard on the district court's ability to do so, other than that it must do so "before the entry of judgment."  Fed. R. Civ. P. 54(b).

The Tenth Circuit has not cabined district courts' discretion beyond what rule 54(b) provides: "[D]istrict courts generally remain free to reconsider their earlier interlocutory orders." <u>Been v. O.K. Indus.</u>, 495 F.3d at 1225.  In the Tenth Circuit, "law of the case doctrine has <u>no</u> bearing on the revisiting of interlocutory orders, even when a case has been reassigned from one judge to another." <u>Rimbert v. Eli Lilly & Co.</u>, 647 F.3d 1247, 1252 (10th Cir. 2011)(emphasis added)(citing <u>Been v. O.K. Indus., Inc.</u>, 495 F.3d at 1225).  In this context, "the doctrine is merely a 'presumption, one whose strength varies with the circumstances.'" <u>Been v. O.K. Indus., Inc.</u>, 495 F.3d at 1225 (quoting <u>Avitia v. Metro. Club of Chi., Inc.</u>, 49 F.3d 1219, 1227 (7th Cir. 1995)).  In short, a district court can use whatever standard it wants to review a motion to reconsider an interlocutory order.  It can review the earlier ruling de novo and essentially reanalyze the earlier motion from scratch, it can review the ruling de novo but limit its review, it can require parties to establish one of the law-of-the-case grounds, or it can refuse to entertain motions to reconsider altogether.

The best approach, in the Court's eyes, is to analyze motions to reconsider differently depending on three factors.  Cf. <u>Been v. O.K. Indus., Inc.</u>, 495 F.3d at 1225 ("[T]he doctrine is

merely a 'presumption, one whose strength varies with the circumstances.'")(citation omitted).

First, the Court should restrict its review of a motion to reconsider a prior ruling in proportion to how thoroughly the earlier ruling addressed the specific findings or conclusions that the motion to reconsider challenges.  How "thoroughly" a point was addressed depends both on the amount of time and energy the Court spent on it, and on the amount of time and energy the parties spent on it -- in briefing and orally arguing the issue, but especially if they developed evidence on the issue.  A movant for reconsideration thus faces a steeper uphill challenge when the prior ruling was on a criminal suppression motion, class certification motion, or preliminary injunction,[5] than when the prior ruling is, e.g., a short discovery ruling.  The Court should also look, not to the overall thoroughness of the prior ruling, but to the thoroughness with which the Court addressed the exact point or points that the motion to reconsider challenges.  A movant for reconsideration thus faces an easier task when he or she files a targeted, narrow-in-scope motion asking the Court to reconsider a small, discrete portion of its prior ruling than when he or she files a broad motion to reconsider that rehashes the same arguments from the first motion, and essentially asks

---

[5]The Court typically makes findings of fact and conclusions of law in ruling on these motions.  At first glance, it appears that the Federal Rules of Civil Procedure set forth additional standards -- beyond that which applies to other interlocutory orders -- for amending findings of fact and conclusions of law:

> **Amended or Additional Findings.**  On a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings -- or make additional findings -- and may amend the judgment accordingly.  The motion may accompany a motion for a new trial under Rule 59.

Fed. R. Civ. P. 52(b).  This rule appears to limit motions to reconsider orders with findings of fact and conclusions of law to twenty-eight days.  The rule's use of the term "entry of judgment," its reference to rule 59, and its adoption of the same time period that applies to motions to alter or amend a judgment, all lead the Court to conclude, however, that rule 52(b) -- and its 28-day time limit -- does not apply to interlocutory orders.  The time limit applies only to findings of fact and conclusions of law supporting a case-ending judgment -- such as those entered after a bench trial -- and to those giving rise to an interlocutory appeal that, if filed, divests the district court of its jurisdiction -- such as those entered in support of a preliminary injunction.

the Court to grant the movant a mulligan on its earlier failure to present persuasive argument and evidence.

Second, the Court should consider the case's overall progress and posture, the motion for reconsideration's timeliness relative to the ruling it challenges, and any direct evidence the parties may produce, and use those factors to assess the degree of reasonable reliance the opposing party has placed in the Court's prior ruling.  See 18B CHARLES ALAN WRIGHT, ARTHUR R. MILLER, EDWARD H. COOPER, VIKRAM DAVID AMAR, RICHARD D. FREER, HELEN HERSHKOFF, JOAN E. STEINMAN & CATHERINE T. STRUVE, FEDERAL PRACTICE & PROCEDURE § 4478.1 (2d ed.)("Stability becomes increasingly important as the proceeding nears final disposition . . . .  Reopening should be permitted, however, only on terms that protect against reliance on the earlier ruling.").  For example, if a defendant (i) spends tens of thousands of dollars removing legacy computer hardware from long-term storage; then (ii) obtains a protective order in which the Court decides that the defendant need not produce the hardware in discovery; then (iii) returns the hardware to long-term storage, sustaining thousands more in expenses; and (iv) several months pass, then the plaintiffs should face a higher burden in moving the Court to reconsider its prior ruling that they faced in fighting the motion for protective order the first time.

Third, the Court should consider the Servants of the Paraclete v. Does grounds.  The Court should be more inclined to grant motions for reconsideration if the movant presents (i) new controlling authority -- especially if the new authority overrules prior law or sets forth an entirely new analytical framework; (ii)  new evidence -- especially if the movant has a good reason why the evidence was not presented the first time around; or (iii) a clear indication -- one that manifests itself without the need for in-depth analysis or review of the facts -- that the Court erred.

These three factors should influence the degree to which the Court restricts its review of a prior ruling, but they do not necessarily mean that the Court should always apply a deferential standard of review.  The Court should pause before applying a standard of review to its own interlocutory orders that is more deferential than the standard that the Court of Appeals will apply to it, unless the Court concludes that the alleged error in the prior ruling was harmless, or the party moving for reconsideration waived their right to appeal the alleged error by not raising the appropriate argument.  Even in circumstances where the Court concludes that it is insulated from reversal on appeal, there are principled reasons for applying a de novo standard.  After all, if the Court was wrong in its earlier decision, then, generally speaking, it is unjust to maintain that result -- although the Court should weigh this injustice against any injustice that would result from upending the parties' reliance on the earlier ruling, which is the balancing test that the three factors above represent.

What the Court means by "restricting its review" is less about applying a deferential standard of review -- although that may be appropriate in some circumstances -- and more about reducing (i) the depth of the Court's analysis the second time around -- thus conserving judicial resources; and (ii) the impositions that relitigation of the prior ruling will impose on the party opposing the motion for reconsideration.  The Court should consider the time and expense that the party opposing reconsideration spent in winning the earlier ruling, and should try to prevent that party from having to bear the same impositions again.  Basically, even if the Court ultimately analyzes a motion to reconsider under the same standard that it analyzed the motion that produces the earlier ruling, it should analyze the motion in a different way -- one focused on reducing the litigation burdens of the party opposing reconsideration.  For example, when a party moves the Court for a preliminary injunction, standard practice is that the Court holds an

evidentiary hearing as a matter of course, regardless whether it looks as if the party has a good chance of prevailing.  If the party loses and the Court denies the injunction, however, and the party moves for reconsideration, the party should not be entitled to the presumption of an evidentiary hearing merely because he or she received that presumption the first time the Court considered the motion.

In light of these statements, it is perhaps better to characterize the increased burden that a movant for reconsideration faces as one of production, and not of persuasion.  The Court analyzes motions to reconsider by picking up where it left off in the prior ruling -- not by starting anew.  Parties opposing reconsideration can do the same, and they may stand on whatever evidence and argument they used to win the earlier ruling.  Movants for reconsideration, on the other hand, carry the full burden of production: they must persuade the Court, using only the evidence and argument they put before it, that it should change its prior ruling; they must do all of the legwork, and not rely on the Court to do any supplemental fact-finding or legal research; and they must convincingly refute both the counterarguments and evidence that the opposing party used to win the prior ruling and any new arguments and evidence that the opposing party produces while opposing the motion to reconsider.  Unlike the motion that produced the prior ruling, a motion to reconsider is not -- and is not supposed to be -- a fair fight procedurally.  The deck is stacked against a movant for reconsideration, and if such a movant hopes to prevail, he or she must have not only a winning legal position, but the work ethic and tenacity to single-handedly lead the Court to his or her way of thinking.

## ANALYSIS

Although the Court cannot review its order remanding the case to state court, it may reconsider its award of costs and fees under rule 54(d).  D'Allende Meats, however, provides no

sound basis for the Court to change its award.  Accordingly, the Court will not change its award of costs and fees.  Second, because the State of New Mexico provides the Court with a detailed time sheet documenting its work, and the hourly rate it seeks is reasonable, the Court will award the State of New Mexico the costs and fees it seeks, plus post-judgment interest.  It will not, however, order D'Allende Meats to pay a portion to the fees under 28 U.S.C. § 1927.  Finally, because discovery is not necessary to enable D'Allende Meats to respond to the Motion for Fees, the Court will deny the Motion for Discovery.

## I.   THE COURT DENIES THE MOTION TO RECONSIDER ITS AWARD OF COSTS AND FEES.

Section 1447 of Title 28 of the United States Code limits the Court's review.  Under § 1447, the Court cannot review its MOO remanding the case to the state court.  It may, however, review its award of costs and fees, because the imposition of costs and fees was collateral to the Court's order remanding the case and remains interlocutory.  D'Allende Meats nevertheless fails to provide a basis for the Court to change its award of costs and fees.

### A.   THE COURT CANNOT REVIEW AN ORDER REMANDING A CASE TO THE STATE COURT FROM WHICH IT WAS REMOVED, BUT IT CAN REVIEW ITS AWARD OF COSTS AND FEES.

Section 1447 bars the Court's review of an "order remanding a case to the State court from which it was removed," except "pursuant to section 1442 or 1443."  28 U.S.C. § 1447(d). See Miller v. Lambeth, 443 F.3d 757, 760 (10th Cir. 2006)("[T]he district court's [remand] order is unreviewable unless the case was removed pursuant to section 1443."); Topeka Housing Auth. v. Johnson, 404 F.3d 1245, 1248 (10th Cir. 2005)("Remand orders are insulated from review . . . .").  On numerous occasions, the Court has "concluded that 1447(d) bars it from reviewing its [own] remand orders."  N.M. Ctr. on Law and Poverty v. Squier, 2014 WL 6065718, at *3 (D.N.M. 2014)(Browning, J.).  See Stark-Romero v. Nat'l R.R. Passenger Co., 763 F. Supp. 2d

1231, 1261 (D.N.M. 2011)(Browning, J.)("The Court is foreclosed from reconsidering its remand determination . . . .  [T]he Court does not have authority to reconsider its decision to remand for lack of subject-matter jurisdiction.")(citations omitted).

As the State of New Mexico concedes, see Response to Motion to Reconsider at 3, the Court may reconsider its award of costs and fees, because the issue is collateral to the Court's determination of its own jurisdiction.  See Utah Women's Clinic, Inc. v. Leavitt, 75 F.3d 564, 567 (10th Cir. 1996)("The Supreme Court has held that the question of attorney's fees and costs are collateral to and separate from a decision on the merits."); Agostini v. Piper Aircraft Corp., 729 F.3d 350, 353-54 (3d Cir. 2013)("[F]ederal courts may decide 'collateral' issues," such as attorneys' fees, "after remand because such issues by definition cannot affect the progress of a case once it has been returned to state court.").  In asking the Court to review its award of costs and fees, however, D'Allende Meats asks the Court to reconsider much of its reasoning regarding jurisdiction and whether to remand the case.  See Motion to Reconsider at 2-4.  First, it asks the Court to reconsider whether it was objectively reasonable for it to believe it was a defendant, see Motion to Reconsider at 2-3, even though the Court determined that it was not a defendant, see MOO at 53.  Second, it asks the Court to reconsider whether the other Defendants should have been presumed to consent to removal, see Motion to Reconsider at 3, even though the Court already determined that the unanimity rule requires at least "a single sentence, stating that all defendants join in and consent to removal," which D'Allende Meats did not provide. MOO at 47.  Third, it asks the Court to reconsider whether D'Allende Meats had a "good faith basis" to believe it could remove the case based on federal question jurisdiction, Motion to Reconsider at 4, even though the Court concluded that it lacked even a colorable argument for federal-question jurisdiction.

The Court understands that D'Allende Meats does not ask the Court to reconsider: (i) whether D'Allende Meats was a Defendant; (ii) whether the other Defendants should have been presumed to consent to removal; or (iii) whether federal question jurisdiction exists. These issues were central to the Court's jurisdictional decision to remand the case. See MOO at 1-2. D'Allende Meats is careful not to argue that the Court wrongfully remanded the case. Hence, the Court will not reconsider what D'Allende Meats does not dispute. D'Allende Meats only seeks to have the Court vacate the fee award. Although the Court's MOO remanding the case concluded that D'Allende Meats lacked an objectively reasonable basis on which to remove, that conclusion was not essential to its decision that removal was improper. See Utah Women's Clinic, Inc. v. Leavitt, 75 F.3d at 567 (concluding that, even though the rule 59(e) motion requesting that the court alter its award of costs and fees "questioned the correctness of the February decisions insofar as attorney's fees are concerned, . . . that does not change the fact that costs and attorney's fees normally are collateral to the merits judgment"). Instead, it demonstrated the magnitude to which D'Allende Meats' removal was improper, and reflected that the filing's significant problems warranted the imposition of costs and fees. See Utah Women's Clinic, Inc. v. Leavitt, 75 F.3d at 567. In other words, the determination that D'Allende Meats lacked an objectively reasonable basis on which to remand, which warranted the imposition of costs and fees, is a collateral issue. Accordingly, if D'Allende Meats provides a basis under the Court's standards for the Court to reconsider its MOO, the Court could properly reconsider whether D'Allende Meats had an objectively reasonable basis to believe it was a Defendant and that jurisdiction existed, because this issue is collateral. See Utah Women's Clinic, Inc. v. Leavitt, 75 F.3d at 567; Agostini v. Piper Aircraft Corp., 729 F.3d at 353-54.

Additionally, the purpose of prohibiting courts from reviewing remand orders is to prevent cases from bouncing back and forth between state and federal court. In In re La Providencia Dev. Corp., 406 F.2d 251 (1st Cir. 1969), the United States Court of Appeals for the First Circuit explained the strict rule of nonreviewability's rationale:

> Removal . . . to the prejudice of state court jurisdiction, is a privilege to be strictly construed, and the state court proceedings are to be interfered with once, at most. This is not only in the interest of judicial economy, but out of respect for the state court and in recognition of principles of comity. The action must not ricochet back and forth depending upon the most recent determination of a federal court.

In re La Providencia Dev. Corp., 406 F.2d at 252-53. That concern is not at issue here, where the Court's potential reconsideration of its award of costs and fees would have no impact on the case's resolution in state court. That issue will not require the case to return to federal court. Consequently, if D'Allende Meats provides reasons for the Court to reconsider its ruling, the Court can appropriately reconsider its imposition of costs and fees.

## B.    THE COURT WILL NOT CHANGE ITS ORDER AWARDING FEES BECAUSE D'ALLENDE MEATS DOES NOT MEET THE COURT'S STANDARDS FOR GRANTING MOTIONS TO RECONSIDER.

D'Allende Meats does not indicate the basis on which it asks the Court to reconsider its award of costs and fees. "The Federal Rules of Civil Procedure do not recognize a motion to reconsider." N.M. Ctr. on Law and Poverty, 2014 WL 6065718, at *4. Rather,

> [m]otions to reconsider that are not specifically authorized under the Federal Rules of Civil Procedure fall into three categories: (i) a motion to reconsider filed within [twenty-eight][6] days of the entry of judgment is treated as a motion to alter or amend the judgment under rule 59(e); (ii) a motion to reconsider filed more than [twenty-eight] days after judgment is considered a motion for relief from judgment under rule 60(b); and (iii) a motion to reconsider any order that is not final is a general motion directed at the Court's inherent power to reopen any

---

[6]The Court wrote Pedroza v. Lomas Auto Mall, Inc. before the 2009 amendments to the Federal Rules of Civil Procedure, which changed the number of days in which a party must file motions under rules 59 and 60. See Advisory Committee Notes to Fed. R. Civ. P. 59 (noting that "the former 10-day periods are expanded to 28 days").

interlocutory matter in its discretion. See Price v. Philpot, 420 F.3d 1158, 1167 & n.9 (10th Cir. 2005).

Pedroza v. Lomas Auto Mall, Inc., 258 F.R.D. at 462.

Although the Court has entered final judgment with respect to the case's merits, it will not construe D'Allende Meats' Motion to Reconsider as falling under rules 59 and 60. Rules 59 and 60 apply to requests to alter or amend a final judgment on the merits. See Fed. R. Civ. P. 59, 60. The Supreme Court of the United States has established that matters of attorney's fees and costs are collateral to a district court's judgment on the merits. See Buchanan v. Stanships, Inc., 485 U.S. 265, 267-68 (1988)(declining to apply rule 59(e) to requests for attorney's fees or costs based upon the underlying merits judgment, even though the court had entered final judgment as to the merits); Bell v. Bd. of Cnty. Comm'rs, 451 F.3d at 1101 n.2 ("Questions of attorney's fees and costs are collateral to and separate from a decision on the merits."); Knighton v. Watkins, 616 F.2d 795, 797 (5th Cir. 1980)("[A] motion for attorney's fees is unlike a motion to alter or amend a judgment. . . . It is, therefore, not governed by the provisions of Rule 59(e)."). "[T]he federal courts generally have invoked Rule 59(e) only to support reconsideration of matters properly encompassed in a decision on the merits." White v. N.H. Dep't of Emp't Sec., 455 U.S. 445, 451 (1982). "[W]e think it indisputable that a claim for attorney's fees is not part of the merits of the action to which the fees pertain. Such an award does not remedy the injury giving rise to the action." Budinich v. Becton Dickinson and Co., 486 U.S. 196, 200 (1988).

The United States Court of Appeals for the Fifth Circuit's opinion in Echols v. Parker, 909 F.2d 795, 798 (5th Cir. 1990), which the Tenth Circuit cited favorably, considered whether a motion to amend the district court's award of attorney's fees fell under rule 59(e) or 54. See Echols v. Parker, 909 F.2d at 787; Utah Women's Clinic, Inc. v. Leavitt, 75 F.3d at 568

(adopting the Fifth Circuit's analysis and conclusion that district court decisions imposing fee

liability, without determining the fee amount, are interlocutory).  The Fifth Circuit stated:

> We are guided in this situation by *Deloach v. Delchamps, Inc.*, 897 F.2d 815 (5th
> Cir. 1990).  There we stated:
>
>> It is clear that a judgment on the merits determining both liability
>> and damages is final even though the attorney's fee issue has been
>> left open.  Additionally, attorney's fees are considered collateral to
>> the merits, so that final judgments as to attorney's fees can be
>> appealed separately from the "merits" judgment.   Because a
>> judgment is not final until both liability and damages are
>> determined, a judgment awarding an unspecified amount of
>> attorney's fees is interlocutory in nature.
>
> 897 F.2d at 826.

Echols v. Parker, 909 F.2d at 798.  Pursuant to its precedent in Deloach v. Delchamps, Inc., the

Fifth Circuit determined that the district court's decision on the merits was final, but its decision

imposing costs and fees was "interlocutory in nature" when it had not yet determined the

"amount of the award."  Echols v. Parker, 909 F.2d at 798.

This determination adheres to precedent from the Supreme Court determining that a

motion for costs could not be a rule 59(e) motion, "because it did not involve reconsideration of

any aspect of the merits decision."  Buchanan v. Stanships, Inc., 485 U.S. at 268.  The Supreme

Court described the "sharp distinction between the judgment on the merits and an award of costs

under Rule 54(d)": "it is apparent that the Rules attemp[t] to divorce the process of entering

judgment from that of determining and assessing the costs."  485 U.S. at 268 (internal citations

omitted).  It stated that rule 59(e) was not intended to apply to a request for costs, which "raises

issues wholly collateral to the judgment in the main cause of action."  485 U.S. at 268.  In sum,

the Supreme Court held that, because the motion for fees was a collateral issue to the merits, it

was a rule 54 motion rather than a rule 59(e) motion.  See 485 U.S. at 268.  The Supreme Court's

- 37 -

determination that costs and fees are collateral to the merits decision does not change when the district court order disposing of the case on the merits also imposed costs and fees.  See Budinich v. Becton Dickinson and Co., 486 U.S. 196, 201 (1988)("[A] decision on the merits is a 'final decision' for purposes of § 1291 whether or not there remains for adjudication a request for attorney's fees attributable to the case.").

Furthermore, that the movant seeks to amend the award of costs and fees rather than seeking attorney's fees in the first instance is inconsequential.  See Echols v. Parker, 909 F.2d at 799 ("That Echols' motion was for a supplemental award of attorney's fees is inconsequential."); Cruz v. Hauck, 762 F.2d 1230, 1236 (5th Cir. 1985)("Rule 59(e) does not apply to a motion for attorney's fees . . . whether the motion is original or supplemental.").  The Supreme Court of the United States has repeatedly emphasized that an attorney's fee motion is not a rule 59(e) motion, because "[u]nlike other judicial relief, the attorney's fees allowed under § 1988 are not compensation for the injury giving rise to an action.  Their award is uniquely separable from the cause of action to be proved at trial."  White v. N.H. Dep't of Emp't Sec., 455 U.S. at 452.  A motion to correct or supplement the amount of an award of costs and fees is no less "uniquely separable from the cause of action to be proved at trial" than the original motion.  White v. N.H. Dep't of Emp't Sec., 455 U.S. at 452.  Thus, the Court will not consider whether to grant the Motion to Reconsider under rules 59 or 60.  As the Court has not yet entered the amount of costs and fees due, it will instead construe the Motion to Reconsider as a motion requesting the Court to reconsider one of its interlocutory orders.  See Regan v. City of Charleston, S.C., 40 F. Supp. 3d 698, 701 (D.S.C. 2014)("Plaintiffs filed the instant Motion to Reconsider pursuant to Rule 59(e) . . . .  [B]ecause the Prior Order was an interlocutory order, Plaintiffs' Motion to Reconsider is more appropriately considered" under rule 54(b).).

Rule 54(b) allows a district court to freely reconsider its prior rulings.  See Fed. R. Civ. P. 54(b)(stating that any order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities").  It puts no limit or governing standard on the district court's ability to reconsider its prior rulings, other than that it must do so "before the entry of judgment."  Fed. R. Civ. P. 54(b).  The Court "can use whatever standard it wants to review a motion to reconsider an interlocutory order," and "it can refuse to entertain motions to reconsider altogether."  Anderson Living Tr. v. WPX Energy Prod., LLC, 308 F.R.D. 410, 434 (D.N.M. 2015)(Browning, J.)(describing how the Court reviews motions to reconsider its own interlocutory orders).

The Court restricts its review of motions to reconsider using three standards.  First, it limits its review "in proportion to how thoroughly the earlier ruling addressed the specific findings or conclusions that the motion to reconsider challenges."  Anderson Living Tr. v. WPX Energy Prod., LLC, 308 F.R.D. at 434.  Second, it will "consider the case's overall progress and posture, the motion for reconsideration's timeliness relative to the ruling it challenges," and whether parties have significantly relied on the Court's ruling.  Anderson Living Tr. v. WPX Energy Prod., LLC, 308 F.R.D. at 434.  Third, the Court considers the Servants of the Paraclete v. Does grounds, which largely suggest that the Court should grant motions for reconsideration when the movant presents: (i) new controlling authority; (ii) new evidence; or (iii) a clear indication that the Court erred.  See Anderson Living Tr. v. WPX Energy Prod., LLC, 308 F.R.D. at 434.  Because the parties have not relied to their detriment on the Court's ruling, it will reconsider its award of costs and fees.  Nevertheless, it will not change its award for the following reasons.

Turning to the Court's first consideration, the thoroughness with which the Court considered the issue in its MOO, the Court addressed in detail the exact point that the Motion to Reconsider challenges. The Court wrote fifty-five pages analyzing whether D'Allende Meats had a proper basis on which to remove the case. See MOO at 55. The Court also dedicated significant portions of its MOO to analyzing how the Notice of Removal's problems warranted the award of costs and fees. See MOO at 43-55. It summarized its conclusions as follows:

> D'Allende Meats' removal was objectively unreasonable. First, as a non-Defendant, D'Allende Meats was not statutorily authorized to file removal; the case law is unambiguous on this point. Second, D'Allende Meats failed to obtain all Defendants' affirmative consent to the removal; in fact, it obtained no Defendant's consent. That its counsel also represented all the Defendants does not excuse him from satisfying this requirement; both the Court and at least one other sitting district judge in the District of New Mexico have ruled that joint counsel must still satisfy the affirmative-consent requirement for each client. See McEntire v. Kmart Corp., 2010 WL 553443, at *6 (Browning, J.); Vazquez v. Americano USA, LLC, 536 F. Supp. 2d 1253, 1257 n.2, 1258-59 (D.N.M. 2008)(Johnson, J.). Third, D'Allende Meats' stated basis of jurisdiction in the Notice of Removal -- which it is not allowed to change at the motion-to-remand stage -- was civil-rights jurisdiction, which lacks a sound basis under this case's facts. Fourth, D'Allende Meats' substitute basis of jurisdiction was federal-question jurisdiction, which it based on federal field preemption and the dormant Commerce Clause -- theories which it supported with no case law or evidence, and which D'Allende Meats never fully developed even when it raised them for the first time at the hearing. D'Allende Meats' case for federal-question jurisdiction is, frankly, not much stronger than its case for civil-rights jurisdiction would have been.
>
> Failure on any one of these bases would, on its own, justify remand. Whiffing on all four warrants the imposition of costs and fees. The Court will therefore remand this case to state court, and order D'Allende Meats to pay the State of New Mexico's just costs and actual expenses, including attorneys' fees.

MOO at 52-53.

Throughout the MOO, the Court described how removal was improper under statutory standards. See MOO at 45 ("It is unlikely that Congress accidentally used the term 'defendant' seventeen times if it really meant 'person with an interest in the litigation.'"); id. at 46-47

- 40 -

("Because the Notice of Removal fails to contain any indication of consent from any of the named Defendants -- let alone all of them -- and none of the named Defendants filed separate notices of consent, the unanimity rule is not satisfied in this case."); id. at 52 (concluding that the Court lacks federal-question subject-matter jurisdiction).  It also thoroughly described case law indicating that removal was improper.  See MOO at 45-46 (providing a host of cases demonstrating that D'Allende Meats had no basis in law to remove the case); id. at 52 ("No case holds or even suggests that the USDA's regulations field preempt state-law causes of action, and D'Allende Meats presents no case -- at all, let alone on point -- in support of its proposition."); id. at 43 ("Last, even if the State of New Mexico had violated local rule 7.1 in the most egregious, dishonest way imaginable, the Court would still have to remand this case, because it lacks subject-matter jurisdiction.").

Most importantly, the Court addressed each argument that D'Allende Meats now presents to the Court.  The Servants of the Paraclete v. Does factors therefore direct the Court not to change its award of costs and fees.  See Anderson Living Tr. v. WPX Energy Prod., LLC, 308 F.R.D. at 434 (stating that the Court is more likely to change its prior ruling when the movant presents new authority and new evidence that was not available when the Court made its prior ruling).  As one can glean from reading the Court's lengthy opinion, it analyzed D'Allende Meats' arguments thoroughly.  D'Allende Meats presents no new arguments that the Court missed or failed to consider.  Instead, it reargues the same issues, suggesting that the Court arrived at the wrong decision.  The Court has stated that a movant on a motion to reconsider faces a much harder battle when the motion to reconsider "rehashes the same arguments from the first motion, and essentially asks the Court to grant the movant a mulligan on its earlier failure to

present persuasive argument and evidence."   Anderson Living Tr. v. WPX Energy Prod., LLC,
308 F.R.D. at 434.

As its supposed new authority, D'Allende Meats contends that a case from nearly forty
years ago provides some support for its actions, thus making its removal not "objectively
unreasonable."   Motion for Reconsideration at 2 (arguing that "[t]he case at hand is on point with
this holding in *Perimeter Lighting, Inc. [v. Karlton]*," 456 F. Supp. 355 (N.D. Ga.
1978)(O'Kelley, J.)("Perimeter Lighting").   The United States District Court for the Northern
District of Georgia decided the case in 1978 -- nearly forty years ago.   See Perimeter Lighting,
456 F. Supp. at 355.   First, the case provides little, if any, support for D'Allende Meats' actions.
See Perimeter Lighting, 456 F. Supp. at 355 (concluding that "complete diversity is present in
the original complaint, and that federal diversity jurisdiction would lie").   D'Allende Meats
contends that Perimeter Lighting supports its position that a non-party can remove a case to
federal court because the plaintiff had not filed a complaint naming Karlton as a defendant when
Karlton removed the case.   See Motion for Reconsideration at 2-3.   There, however, the plaintiff
initiated the suit through a motion for a preliminary injunction.   See 456 F. Supp. at 357.   At the
hearing on the plaintiff's motion for a preliminary injunction, the plaintiff provided Karlton a
copy of the complaint that it had drafted, but not yet filed.   See 456 F. Supp. at 357.   The caption
on the unfiled complaint identified Karlton as a defendant.    In ascertaining the propriety of
removal, the court observed that "the initial pleading" must allow the defendant to "intelligently
ascertain removability from its face."   456 F. Supp. at 358 (emphasis added).   Although Karlton
removed the case before the complaint had been filed, "the first complaint received by defendant
provides such a statement and may be the initial pleading."   456 F. Supp. at 358.   Because it was
the "initial pleading" and it unequivocally named Karlton as a defendant, the court concluded

- 42 -

that removal was proper, as "the removal petition was filed in reliance on the complaint utilized." 456 F. Supp. at 358. Unlike the defendant in Perimeter Lighting, D'Allende Meats has never been named as a defendant. Furthermore, removal was entirely proper in Perimeter Lighting. See 456 F. Supp. at 357. Here, however, the Court has ruled that no subject-matter jurisdiction exists. See MOO at 55.

Moreover, D'Allende Meats never referenced Perimeter Lighting once in opposition to the State's Motion to Remand or at the hearing, demonstrating that the case cannot have helped D'Allende Meats form a reasonable belief that it was a party to the proceeding. That D'Allende Meats just now discovered the case does not mean that the law has changed, nor does it suggest that the Court should alter or amend its award of fees. See Servants of the Paraclete v. Does, 204 F.3d at 1012.

D'Allende Meats also alleges that the State of New Mexico did not give D'Allende Meats' counsel enough time "to objectively consider the State's Motion to Remand." Motion to Reconsider at 4. It contends that its attorneys were busy with other cases, which "resulted in a hasty filing by D'Allende's attorney, admittedly resulting in some errors." Motion to Reconsider at 4. It argues that, had the State of New Mexico given it more time, it would have corrected the Notice of Removal's deficiencies and refiled it. See Motion to Reconsider at 4. D'Allende Meats thus seemingly asserts that its failure to re-draft the Notice of Removal was a mistake. This argument is insufficient to convince the Court to reconsider its award of costs and fees. It does nothing to suggest that D'Allende Meats' Notice of Removal was reasonable. If anything, it emphasizes the accuracy of the Court's award of fees, because D'Allende Meats states that it would refile its Notice of Removal, knowing that the jurisdictional problems are incurable.

D'Allende Meats admits that, even if the State of New Mexico gave it more time to review the State's Motion to Remand, it would have refiled its Notice of Removal anyway, despite the lack of any basis for subject-matter jurisdiction.  See Motion to Reconsider at 4 ("If the State had consulted in good faith and provided an opportunity to review its reasons for the proposed remand, the Notice of Removal could easily have been rescinded and refilled [sic] to correct an [sic] deficiencies.").  Consequently, any additional time would not have changed the situation: D'Allende Meats would nonetheless file a Notice of Removal on an improper basis. Because D'Allende Meats concedes that it would file the Notice of Removal again, it cannot maintain that the State of New Mexico's actions caused it to mistakenly file its Notice of Removal.  Its Notice of Removal would contain errors even if it filed again.  Moreover, D'Allende Meats' assertion suggests that, once the State of New Mexico filed its Motion to Remand, it lost all control over its own case.  See Motion to Reconsider at 4.  D'Allende Meats, however, had repeated opportunities to correct what it admits is error in its removal.  Instead, it proceeded to argue at every step of the removal proceedings that the case should remain in federal court.  See Tr. at 2:1-33:23 (Biernoff, Court, Richards).

D'Allende Meats intentionally filed its Notice of Removal.  There was no reason for it to file hastily and without appropriately considering the consequences of doing so.  "Courts will not grant relief when the mistake of which the movant complains is the result of an attorney's deliberate litigation tactics."  Federated Towing & Recovery, LLC v. Praetorian Ins. Co., 283 F.R.D. 644, 651 (D.N.M. 2012)(Browning, J.).  See Pelican Prod. Corp. v. Marino, 893 F.2d at 1146 (holding that attorney carelessness is not a basis for relief under rule 60(b)(1)).

Finally, D'Allende Meats makes several additional arguments for why the Court should grant its Motion to Reconsider.  None of these arguments, however, provide a sound basis for the

Court to grant the Motion to Reconsider.  First, D'Allende Meats contends that, because the State of New Mexico considered D'Allende Meats and Valley Meat alter egos of one another, D'Allende Meats could reasonably have believed that "it was either a party to the proceeding, or had a viable interest to be protected."  Motion to Reconsider at 3.  The Court has already considered and disagreed with this argument in its MOO.  See MOO at 46-48.  Similarly, D'Allende Meats contends that it "speaks [with] the same voice as Valley Meat Company," Motion to Reconsider at 3, and therefore was capable of removing the action.  Again, however, the Court has already determined that "D'Allende Meats and Valley Meat are not one and the same," and that "D'Allende Meats is not a Defendant in this action."  MOO at 46 (emphasis in original).  Merely making the argument again does not constitute a reason that the Court should reconsider its prior ruling.  Because D'Allende Meats presents no new reasons that suggest the Court should change the fee award in its MOO, the Court denies the requests in the Motion to Reconsider.

## II.    THE COURT GRANTS THE STATE OF NEW MEXICO'S MOTION FOR FEES.

Consistent with both D.N.M. LR-Civ. 54.5 and Tenth Circuit precedent, the State of New Mexico documented the number of hours that Mr. Biernoff spent working to remand the case.  It also provides a statement listing Mr. Biernoff's credentials and experience, which demonstrate that the hourly rate he seeks is consistent with the prevailing market rate for attorneys with similar experience.  The Court will therefore order that D'Allende Meats pay the fees that the State of New Mexico requests.  Because D'Allende Meats' Motion to Reconsider was not so frivolous that "decisional law foreclose[ed] review," as the State of New Mexico contends, the Court will not require D'Allende Meats' counsel to personally pay a portion of the fees under 28 U.S.C. § 1927.

A.    THE COURT WILL AWARD THE STATE OF NEW MEXICO THE
AMOUNT OF FEES IT REQUESTS BECAUSE IT KEPT APPROPRIATE
TIME RECORDS AND ASKS FOR A REASONABLE HOURLY RATE.

Regardless whether D'Allende Meats' Motion for Discovery constitutes an appropriate
response to the Motion for Fees, the Court will analyze whether to award costs and fees, and not
summarily grant the Motion for Fees.    The determination of what constitutes reasonable
attorney's fees lies within the Court's discretion.   See United States ex rel. Belt Con Constr. v.
Metric Contr. Co., Inc., 505 F. Supp. 2d 1035, 1039 (D.N.M. 2007)(Browning, J.).   In this
district, D.N.M. LR-Civ. 54.5 governs the award of attorney's fees.   See Joseph A. by Wolfe v.
N.M. Dep't of Human Servs., 28 F.3d 1056, 1061 n.3 (10th Cir. 1994)(Brimmer, Jr., J.).   D.N.M.
LR-Civ. 54.5 provides that all applications for attorney's fees, other than those made pursuant to
the Equal Access to Justice Act, must be filed and served within thirty days after entry of
judgment.   See D.N.M. LR-Civ. 54.5.   The application must include a supporting brief, a
supporting affidavit, and time records.   See D.N.M. LR-Civ. 54.5.   D.N.M. LR-Civ. 54.5 also
mandates that the attorney who submits his or her time records must keep those records
contemporaneously with performing the work.   See D.N.M. LR-Civ. 54.5.

"To determine the reasonableness of a fee request, a court must begin by calculating the
so-called 'lodestar amount' of a fee, and a claimant is entitled to the presumption that this
lodestar amount reflects a 'reasonable' fee."   Robinson v. City of Edmond, 160 F.3d 1275, 1281
(10th Cir. 1998).   The lodestar is "'the number of hours reasonably expended on the litigation
multiplied by a reasonable hourly rate,' which produces a presumptively reasonable fee that may
in rare circumstances be adjusted to account for the presence of special circumstances."
Anchondo v. Anderson, Crenshaw & Assoc., LLC, 616 F.3d 1098, 1102 (10th Cir.
2010)(quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983), and Perdue v. Kenny A. ex rel.

Winn, 559 U.S. 542, 543-44 (2010)).  The State of New Mexico "does not here claim any special circumstances that would merit adjustment."  Motion for Fees at 4 n.1.  "The party requesting attorney fees bears the burden of proving" the two components used to calculate the fee award: (i) "the amount of hours spent on the case;" and (ii) "the appropriate hourly rates."  United Phosphorus, Ltd. V. Midland Fumigant, Inc., 205 F.3d 1219, 1233 (10th Cir. 2000).   Both parties agree that the Court must use the lodestar method to calculate the appropriate amount of fees here.  See Reply on Motion for Discovery at 8; Motion for Fees at 3-5.

Here, the Court awarded the State of New Mexico its "just costs and actual expenses, including attorney's fees" that the State of New Mexico "incurred  as  a  result  of  the  removal." MOO at 54.  The State of New Mexico therefore submits a statement of "all of the tasks undertaken as a result of D'Allende Meats' wrongful removal, with dates, descriptions, and an enumeration of time expended for each task identified."  Motion for Fees at 5.  In line with both D.N.M. LR-Civ. 54.5 and Tenth Circuit precedent, the State of New Mexico's statement documents the number of hours spent preparing the brief seeking to remand the case, as well as its work in seeking fees.  See Affidavit of Ari Biernoff ¶ 10, at 2-3 (taken June 22, 2015), filed June 22, 2015 (Doc. 21-1)("Biernoff Aff."); Statement of Activities/Time Incurred as a Result of Removal of Action to Federal Court, filed June 22, 2015 (Doc. 21-2)("Time Sheet").  Although D'Allende Meats alleges that Mr. Biernoff may have inaccurately recorded his time, it presents no support for its assertion.  If Mr. Biernoff did not perfectly record his time, he erred in D'Allende Meats' favor.  Mr. Biernoff stated that he recorded only the time directly spent writing the brief, and excluded numerous charges, including administrative tasks and brief editing.  See Tr. at 30:1-10 (Biernoff).  See also id. at 30:6-8 ("This is about as lean of a bill as I think that you'd find out there.")(Biernoff).  The Court has no reason not to credit Mr. Biernoff's

sworn statements in his affidavit and at the hearing.  The Court must rely on counsels' representations as officers of the Court, and government lawyers, that what they say is true. D'Allende Meats has given the Court no reason to doubt Mr. Biernoff's word.  Accordingly, the Court concludes that the State of New Mexico spent 28.2 hours working to remand the case.  See Time Sheet at 2.

Next, the Court must determine whether $200.00 is a reasonable hourly rate.  "To determine what constitutes a reasonable rate, the district court considers the prevailing market rate in the relevant community."  Lippoldt v. Cole, 468 F.3d 1204, 1224-25 (10th Cir. 2006)(citation and internal quotation marks omitted).  Mr. Biernoff offers the Court an affidavit presenting his education, admission to practice, credentials, and professional experience.  See Biernoff Aff. ¶¶ 3-8.  His affidavit reveals that he graduated from Stanford University with a Bachelors of Arts in 1996 and from the University of California, Berkeley School of Law in 2002.  See Biernoff. Aff. ¶ 4, at 2.  After working for Debevoise & Plimpton, LLP, a law firm in New York City, New York, and serving as a judicial law clerk to the Honorable Henry H. Kennedy, Jr., District Judge for the United States District Court for the District of Columbia, he joined the New York City Law Department as an Assistant Corporation Counsel in 2005.  See Biernoff. Aff. ¶ 6, at 2.  He was promoted to the position of Senior Counsel in 2008.  Since moving back to New Mexico in 2011, he has served as an Assistant Attorney General with the State of New Mexico's Office of the Attorney General and has also served as Acting Director of the Litigation Division.  See Biernoff. Aff. ¶ 7, at 2.  In addition to the Court's "own knowledge of prevailing market rates," such information is sufficient to allow the Court to conclude that Mr. Biernoff's rate is reasonable.  Lippoldt v. Cole, 468 F.3d at 1225 (directing parties entitled to

fees to provide the district court with sufficient information to evaluate prevailing market rates, and instructing courts to consider their own knowledge of market rates).

On a number of occasions, the Court has awarded fees to attorneys with comparable experience at this rate or even higher rates.  See, e.g., Obenauf v. Frontier Fin. Grp., Inc., 785 F. Supp. 2d 1188, 1208 (D.N.M. 2011)(Browning, J.)(awarding attorney's fees at $250.00 per hour for attorney with twelve years of experience, "given the prevailing market rates in the community for an attorney with similar experience"); In re Thornburg Mortg., Inc. Sec. Litig., 912 F. Supp. 2d 1178, 1258 (D.N.M. 2012)(Browning, J.)(comparing decisions on reasonable attorney's fees, including decision awarding fees of $225.00 per hour for lawyers with around ten years of experience);[7] Two Old Hippies, LLC v. Catch the Bus, LLC, 277 F.R.D. 448, 465

_____

[7]The Court exhaustively considered New Mexico cases imposing attorney's fees in In re Thornburg Mortgage, Inc. Sec. Litig., 912 F. Supp. 2d at 1258 n.41.  Its compilation led it to conclude that a rate of $200.00 for a mix of partners, associates, and paralegals was reasonable:

> [S]ee Jackson v. Los Lunas Center, 489 F. Supp. 2d 1267, 1273 & n.4 (D.N.M. 2007)(Parker, S.J.)(discussing fees of up to $305.25 per hour and finding those fees reasonable); Kelley v. City of Albuquerque, No. 03–507, 2005 WL 3663515, at *16 (D.N.M. Oct. 24, 2005)(Browning, J.)(finding that $250 per hour for Albuquerque attorneys is a reasonable fee), and New Mexico is a relatively poor state, with some of the lowest hourly rates in the country.  The Court has previously stated that $200.00 per hour is a "relatively low rate" for attorneys in New Mexico.  Lane v. Page, 862 F. Supp. 2d 1182, 1257 (D.N.M. 2012) (Browning, J.). See also Copar Pumice Co., Inc. v. Morris, No. CIV 07–0079 JB/ACT, 2012 WL 2383667, at *19, *21 (D.N.M. Jun. 13, 2012)(Browning, J.)(finding that "(i) $235.00 per hour for partners; (ii) $200.00 per hour for senior associates; (iii) $150.00 per hour for other associates; and (iv) $75.00 per hour for paralegals," are reasonable rates in New Mexico); Avendano v. Smith, No. CIV 11–0556, 2011 WL 5822733, at *2 (D.N.M. Nov. 3, 2011) (Browning, J.)(finding rates of $180.00 per hour reasonable); Pedroza v. Lomas Auto Mall, Inc., 716 F. Supp. 2d 1031, 1050–51 (D.N.M.2010)(Browning, J.)(finding that $150.00 per hour is a "very reasonable" rate for commercial litigators in New Mexico); Mountain Highlands, LLC v. Hendricks, No. CIV 08–0239, 2010 WL 1631856, at **9–10 (D.N.M. Apr. 2, 2010)(Browning, J.)(approving an hourly rate of $170.00 to $210.00 per hour as reasonable for commercial litigation); Wiatt v. State Farm Ins. Cos., No. CIV 07–0526 JB/KBM, 2008 WL 2229630, at **4–5 (D.N.M. Mar.

---

24, 2008)(Browning, J.)(holding that a fee of $200.00 per hour for insurance defense work was reasonable); *Allahverdi v. Regents of Univ. of N.M.*, No. CIV 05–0277, 2006 WL 1304874, at *2 (D.N.M. Apr. 25, 2006)(Browning, J.)(finding hourly rate of $225.00 reasonable in a public-employment dispute); *Two Old Hippies, LLC v. Catch the Bus, LLC*, 277 F.R.D. 448, 465 (D.N.M. 2011) (Browning, J.)(finding that $275.00 per hour is a reasonable rate for an attorney who is "one of the more seasoned and experienced commercial litigators in the District of New Mexico," and $195.00 is a reasonable rate for an "excellent associate."). The Honorable William P. Johnson, District Judge for the United States District Court for the District of New Mexico, has found that a rate of $350.00 per hour is appropriate for one of "one of New Mexico's preeminent trial lawyers," who has demonstrated "superb trial advocacy skills" in a police misconduct civil rights case. *Martinez v. Carson*, No. 08–CV1046 WJ/LFG, Mem. Op. and Order Granting in Part Plaintiff's Motion for Attorney Fees and Expenses (Doc. 231), at 7 (D.N.M. Aug. 11, 2011)(Johnson, J.). Judge Johnson has also found that a rate of $175.00 per hour is reasonable for an attorney who has been practicing law for five years. *See* No. 08–CV–1046, Mem. Op. and Order Granting in Part Plaintiffs' Motion for Attorney Fees and Expenses (Doc. 231) at 8. The Honorable Judith C. Herrera, District Judge for the United States District Court for the District of New Mexico, has approved fee awards of:

> $350 per hour for lawyers who graduated from law school before 1996; $300 per hour for lawyers who graduated between 1996 and 2000; $225 per hour for lawyers how graduated between 2001 and 2006; and $150 per hour for lawyers who graduated in 2007 and afterwards .... [and] $95 per hour for legal interns and legal support staff.

*Valdez v. Herrera*, No. 09–CV–0668 JCH/DJS, Order Granting Attorneys' Fees at 3 (Doc. 149)(D.N.M. Mar. 21, 2011)(Herrera, J.). *See Mackey v. Staples, Inc.*, No. 09–CV–0023 JCH/WPL, Order Granting Attorneys' Fees and Costs (Doc. 199) at 5 (D.N.M. Mar. 4, 2011)(Herrera, J.)(awarding fees at a rate of $350.00 per hour to civil rights litigators with thirty-seven years of experience); *Johnson v. Life Ins. Co. of N. Am,,* No. 05–CV–0357 JCH/RLP, Memorandum Opinion and Order (Doc. 127) at 4 (D.N.M. Mar. 13, 2009)(Herrera, J.)(finding that $105.00 per hour is a reasonable rate for a paralegal with nine years of experience). The Honorable John E. Conway, Senior District Judge for the United States District Court for the District of New Mexico, has awarded fees in the range of $200.00 to $300.00 for attorneys in a police misconduct case. *See Avila v. Ratchner*, No. 01–CV–0349 JC/LAM, Memorandum Opinion and Order (Doc. 214) at 6–7 (D.N.M. Sept. 27, 2010)(Conway, S.J.). Five years ago, the Honorable Robert C. Brack, District Judge for United States District Court for the District of New Mexico, found that $175.00 per hour was a reasonable rate for an associate attorney with five years of experience who took an active role in a litigation. *See Rivera v. Smith's Food & Drug Centers*, No. 05–CV–1049 RB/ACT, Memorandum

(D.N.M. 2011)(awarding attorney's fees for an associate's work at $195.00 per hour); Applied Capital, Inc. v. Gibson, 2007 WL 709054, at *3 (D.N.M. Jan. 30, 2007)(approving hourly rate of $210.00 for commercial litigation dispute). Specifically, the Court has determined that $200.00 per hour is a "reasonable hourly rate for resisting removal." Wiatt v. State Farm Ins. Cos., 2008 WL 2229630, at *5 (D.N.M. Mar. 24, 2008)(Browning, J.).[8]

That Mr. Biernoff performed work for a governmental entity does not change the measure for his hourly rate's reasonableness.[9] Neither the parties nor the Court could identify a case indicating that government or public interest attorneys should receive a different fee amount than attorneys in private practice. Tenth Circuit case law provides one method for determining what is reasonable: the "prevailing market rate in the relevant community." Lippoldt v. Cole,

---

Opinion and Order (Doc. 177) at 10–12 (D.N.M. June 28, 2007)(Brack, J.). The Honorable Robert H. Jacobvitz, Bankruptcy Judge for the United States Bankruptcy Court for the District of New Mexico, found that hourly rates of $60.00 for paralegals is reasonable. *See In re Fincher*, No. 13–08–11454 JA, 2012 WL 1155719, at *5 (Bankr. D.N.M. Apr. 5, 2012) (Jacobvitz, J.)

[8]D'Allende Meats contends that the State of New Mexico seeks an upward adjustment from the lodestar amount because it seeks a rate of $200.00. Seeking a certain rate, however, does not constitute an "upward adjustment." On the contrary, it is part of the initial calculation involved in determining the lodestar amount. See Lippoldt v. Cole, 468 F.3d at 1222-25.

[9]The Tenth Circuit has joined other Courts of Appeals to hold that pro se litigants are not entitled to attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d) (1988). See Demarest v. Manspeaker, 948 F.2d 655, 655-56 (10th Cir. 1991)("We join other circuits in holding that attorney fees are not available for pro se litigants under the EAJA."). The rationale for denying fees was that "Congress intended that an attorney have been retained for a prevailing pro se litigant to recover attorney's fees." Merrell v. Block, 809 F.2d 639, 642 (9th Cir. 1987)(emphasis added). See Sommer v. Sullivan, 898 F.2d 895, 895 (2d Cir. 1990); Crooker v. Envtl. Prot. Agency, 763 F.2d 16, 17 (1st Cir. 1985); Naekel v. Dep't of Transp., 845 F.2d 976, 981 (Fed. Cir. 1988). In other words, courts do not award fees to pro se litigants because pro se litigants are not "attorneys" entitled to "attorney's fees." See Sommer v. Sullivan, 898 F.2d 895, 895 (noting that § 2312(d)(2)(A) of the EAJA defines "fees" as "reasonable attorney fees"). Moreover, the purpose of the statute seeks to encourage litigants to obtain counsel. That rationale does not require the Court in this case to deny attorney's fees to government attorneys merely because they compensation regardless of the case's outcome.

468 F.3d at 1224-25.  Nowhere does the Tenth Circuit, or any other courts, provide an alternate method for deriving a reasonable hourly rate for government or public interest attorneys.  It would be hard to imagine deriving public interest attorneys' appropriate hourly rate based on their salary, as D'Allende Meats suggests, when they often work pro bono.  Paying public interest attorneys less would mean that attorneys performing pro bono work could not receive costs and fees, which is contrary to 28 U.S.C. § 1447(c)'s purpose of compensating attorneys for the work they performed.[10]  Moreover, treating government attorneys differently contravenes the Tenth Circuit's directions for determining a reasonable fee.  The Tenth Circuit directs courts to derive the reasonable fee based on the market rate, not the amount of money they earned while working on the case.  See Lippoldt v. Cole, 468 F.3d at 1225.  Consequently, the Court determines that $200.00 is a reasonable hourly rate.

The Court doubts that, when it was practicing law, it could have produced what the State of Mexico produced in response to the Notice of Removal for less than $5,000.00.  The Court has done the lodestar calculation and the total looks reasonable.  In sum, the amount requested for the work done is not only reasonable but modest.

Finally, the Court will also award the State of New Mexico post-judgment interest on the fee award.  "The Tenth Circuit has concluded that attorney fees and costs form part of the judgment upon which district courts should grant post-judgment interest."  United States ex rel. Belt Con Constr., Inc. v. Metric Constr. Inc., 2010 WL 1405993, at *5.  See Wheeler v. John Deere Co., 986 F.2d 413, 415 (10th Cir. 1993); Transpower Constructors, Div. of Harrison Int'l

---

[10]D'Allende Meats' counsel is working this case pro bono.  See Tr. at 54:23-25 ("We are handling this pro bono right now.").  Thus, under D'Allende Meats' argument that public interest lawyers should be awarded attorney's fees based on their earnings for that case, D'Allende Meats would be precluded from receiving fees if the Court assessed fees against the State of New Mexico.

Corp. v. Grand River Dam Auth., 905 F.2d 1413, 1423-24 (10th Cir. 1990).  "Post-judgment interest compensates plaintiffs for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant."  United States ex rel. Belt Con Constr., Inc. v. Metric Constr. Inc., 2010 WL 1405993, at *4.  See Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827, 835-36 (1990)(quotation marks omitted). Interest accrues from the date of the judgment that quantifies the fees rather than from the judgment establishing liability for such fees.  See MidAmerica Fed. Sav. & Loan Assoc. v. Shearson/American Express, Inc., 962 F.2d 1470, 1475-76 (10th Cir. 1992); United States ex rel. Belt Con Constr., Inc. v. Metric Constr. Inc., 2010 WL 1405993, at *5.

Although the Court has not awarded post-judgment interest on an award of attorney's fees alone, it sees no reason to distinguish this situation from others.  Courts may award post-judgment interest on a judgment.  See 28 U.S.C. § 1961(a).  Here, the Court's judgment consists of solely costs and fees, but it is a judgment nonetheless.  See MidAmerica Fed. Sav. & Loan Assoc. v. Shearson/American Express, Inc., 962 F.2d at 1476 ("We previously have held that judgments for attorneys' fees awards differ little from money judgments for other items of damages, and hence we have allowed § 1961 postjudgment interest on attorneys' fees awards to accrue . . . .")(internal quotation marks omitted).  If the Court may award post-judgment interest on attorney's fees when they form a part of the judgment, it may similarly award post-judgment interest on attorney's fees when they form the entire judgment.  See MidAmerica Fed. Sav. & Loan Assoc. v. Shearson/American Express, Inc., 962 F.2d at 1476 (treating "an attorneys' fees award the same as we would any other money judgment").  The statute authorizing post-judgment interest, 28 U.S.C. § 1961(a), provides: "Interest shall be allowed on any money judgment in a civil case recovered in a district court."  As the award of attorney's fees falls under

the category of "any money judgment in a civil case recovered in a district court," § 1961(a) authorizes post-judgment interest.

### B.      THE COURT WILL NOT HOLD D'ALLENDE MEATS' COUNSEL PERSONALLY RESPONSIBLE FOR A PORTION OF THE FEES.

Under 28 U.S.C. § 1927, "any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  Courts use § 1927 to deter "abusive litigation practice."  Doe ex rel. Hughes v. Martinez, 674 F. Supp. 2d 1282, 1285 (D.N.M. 2009)(Johnson, J.).  Assessing costs and fees under § 1927 is appropriate when: (i) an attorney acts "recklessly or with indifference to the law," Dominion Video Satellite, Inc. v. EchoStar Satellite LLC, 430 F.3d 1269, 1278 (10th Cir. 2005)(quoting Braley v. Campbell, 832 F.2d 1504, 1511 (10th Cir. 1987)); (ii) intentionally acts without a plausible basis; or (iii) when the entire course of the proceedings is unwarranted, see Steinert v. Winn Grp., Inc., 440 F.3d 1214, 1221 (10th Cir. 2006).  Courts also have stated that a district court has "authority under its own inherent powers to deter frivolous and abusive litigation and promote justice and judicial efficiency by imposing monetary sanctions."  Doe ex rel. Hughes v. Martinez, 674 F. Supp. 2d at 1285 (citing Roadway Express, Inc. v. Piper, 447 U.S. 752, 764-67 (1980)(noting that, in narrowly defined circumstances, "federal courts have inherent power to assess attorney's fees against counsel"), and Braley v. Campbell, 832 F.2d at 1510 n.4).

Courts within the Tenth Circuit have awarded costs and fees under § 1927 on a number of occasions.  For example, in Steinert v. Winn Group, Inc., the Tenth Circuit affirmed a fee award under § 1927 against an attorney who repeatedly argued in support of "patently meritless" claims.  See 440 F.3d at 1225.  In Hamilton v. Boise Cascade Express, 519 F.3d 1197 (10th Cir. 2008), the Tenth Circuit affirmed the district court's fee award under § 1927 against an attorney

who failed to withdraw an improper motion and did not correct misstatements contained in that motion.  See 519 F.3d at 1200-03.  In Doe ex rel. Hughes v. Martinez, the Honorable William P. Johnson, United States District Judge for the District of New Mexico, imposed sanctions under § 1927 against an attorney who filed an improper notice of removal.  See 674 F. Supp. 2d at 1285. The defendant in Doe ex rel. Hughes v. Martinez insisted that removal was proper, even after the plaintiff filed a motion to remand.  See 674 F. Supp. 2d at 1285.

Finally, the Court has also imposed fees under § 1927 for an attorney's repeated failure to comply with procedural rules.  See Scott v. Dona Ana Cnty. Comm'rs, 2012 WL 1132464 (D.N.M. 2012)(Browning, J.).   In Scott v. Dona Ana County Commissioners, a party "vexatiously multiplied" the proceedings by repeatedly failing to comply with numerous rules of procedure.  2012 WL 1132464, *13.  The Court awarded fees under § 1927 for numerous filings, but refrained from doing so with respect to the party's motion seeking that the magistrate judge recuse himself.  The Court noted that the "fact-intensive standards that govern recusal, as well as the strict procedural requirements with which a party seeking recusal must comply," made it hard to say that the party filed a frivolous motion.  2012 WL 1132464, *14 (citing Sweetland v. Bank of Am. Corp., 241 F. App'x 92, 98-99 (4th Cir. 2007)).

The State of New Mexico asks the Court to impose costs and fees against D'Allende Meats' counsel under § 1927 only for the "subset of the State's attorney's fees incurred in responding to the Motion to Reconsider."  Motion for Fees at 9.  It asks the Court to award fees on the grounds that the Motion to Reconsider seeks relief that is unavailable under governing law.  See Motion for Fees at 9.  The State of New Mexico argues, however, that relief is unavailable because the Court could not review its remand order.  See Motion at 9.  Although the Court will not change its award of costs and fees that it granted in the MOO, the Court concludes

- 55 -

that D'Allende Meats did not seek relief that was unavailable.  As stated above, the Court can reconsider its award of costs and fees pursuant to rule 54(d), even though § 1447 precludes it from reconsidering its order remanding the case to state court.

Furthermore, like in Scott v. Dona Ana County Commissioners, the standard for granting motions to reconsider is not a bright line that makes clear when a party will prevail or meet the standard.  See 2012 WL 1132464, *14.  The Court has acknowledged that motions to reconsider continue to cause the bar considerable confusion.  See Anderson Living Tr. v. WPX Energy Prod., LLC, 308 F.R.D. at 434.  While D'Allende Meats did not present strong grounds for the Court to grant its Motion to Reconsider, it did not file a "patently meritless" claim that the Court could not review.  Steinert v. Winn Group, Inc., 440 F.3d at 1225.  Unlike § 1447's bright-line rule precluding review, rule 54(d) allows a court to review its own interlocutory orders at its own discretion.  See Fed. R. Civ. P. 54(d).  Accordingly, D'Allende Meats could reasonably believe that the Court, in its discretion, would grant the Motion to Reconsider.  The Court will therefore not require D'Allende Meats' counsel to pay a portion of the costs and fees pursuant to § 1927.

## III.   THE COURT WILL DENY THE MOTION FOR DISCOVERY BECAUSE NO ADDITIONAL DISCOVERY IS NECESSARY TO RESPOND TO THE MOTION FOR FEES.

D'Allende Meats seeks discovery to determine whether Mr. Biernoff improperly recorded the time for which he seeks compensation.   See Motion for Discovery at 3. Specifically, it seeks: (i) Mr. Biernoff's time and earnings statements; (ii) thirty-two emails to and from lawyers at an outside law firm, Schiff Hardin, LLP, which does not represent any parties to this case; and (iii) metadata associated with the documents Mr. Biernoff produced.  See Motion for Discovery at 2.  The Court denies the requests for discovery because: (i) they are not necessary to respond to the Motion for Fees; and (ii) D'Allende Meats does not present

persuasive reasons for the Court to discredit Mr. Biernoff's sworn statements that he worked the hours for which he seeks compensation.

D'Allende Meats must meet a high burden to demonstrate that it needs more discovery. The Supreme Court of the United States has stated: "A request for attorney's fees should not result in a second major litigation." Hensley v. Eckerhart, 461 U.S. at 437. To avoid protracted discovery battles, federal courts have determined that "[d]iscovery in connection with fee motions is rarely permitted." In re Genetically Modified Rice Litig., 765 F.3d 864, 872 (8th Cir. 2014). See Menchise v. Akerman Senterfitt, 532 F.3d 1146 (11th Cir. 2008)(stating that discovery is seldom appropriate in the context of fee awards); Fed. R. Civ. P. 54(d)(2) Advisory Committee Notes (stating that discovery into fee submission should be granted only "[o]n rare occasion").

A party must demonstrate substantial need for additional information to justify discovery. See, e.g., E. & J. Gallo Winery v. Consorzio del Gallo Nero, 782 F. Supp. 472, 476 (N.D. Cal. 1992)(concluding that discovery would be "unnecessary and wasteful"); Pfieffer v. Schmidt Baking Co., 2014 WL 1291814, at *4 (D. Md. Mar. 28, 2014)(denying discovery request as unnecessary when the time sheet allowed the opposing counsel to determine whether the time was compensable). The United States Court of Appeals for the Ninth Circuit has affirmed a denial of a party's request for discovery "given the thoroughness" of the time sheet, which provided an "item-by-item breakdown of the attorney fees incurred in the case." Wyatt v. Ralphs Grocery Co., 65 F. App'x 589, 591 (9th Cir. 2003). Because the time sheet enabled the opposing counsel to determine whether the hours sought were compensable, the Ninth Circuit held that no discovery was warranted. See 65 F. App'x at 591. Similarly, the Tenth Circuit affirmed the district court's denial of discovery in connection with a motion for attorney's fees

where discovery "would not be of assistance in resolving the issue" of the proper amount of fees to be awarded.  Martinez v. Schock Transfer and Warehouse Co., 789 F.2d 848, 849-50 (10th Cir. 1986)(Baldock, J.).

As in the cases above, the Court may determine the fee award by relying "solely on the affidavits."  Menchise v. Ackerman Senterfitt, 532 F.3d 1146, 1153 (11th Cir. 2008)(affirming the district court's denial of discovery into a fee application).  See ClearOne Commc'ns, Inc. v. Biamp Sys., 653 F.3d 1163, 1187 (10th Cir. 2011)(affirming a district court's award of attorney's fees on the basis of the requesting party's written submission and without conducting an evidentiary hearing); Vaile v. Nat'l Credit Works, Inc., 2012 WL 1520120, at *7 (D. Ariz. Mar. 26, 2012)("[A]n award of reasonable attorney's fees and costs may be determined by affidavit and supporting documentation" without an evidentiary hearing).  Notably, "Rule 54 [of the Federal Rules of Civil Procedure] explicitly contemplates that a claim for attorneys' fees would be made by motion" rather than through discovery and an evidentiary hearing.  Boardwalk Apartments, L.C. v. State Auto Prop. & Cas. Ins. Co., 2014 WL 5430252, at *2-3 (D. Kan. Oct. 24, 2014)(explaining that fee applications are typically resolved by the court considering affidavits without discovery).

D'Allende Meats first argues that it cannot respond to the Motion for Fees without the evidence it seeks.  See Motion for Discovery at 3.  The State of New Mexico provides both a detailed Time Sheet listing the time that Mr. Biernoff spent performing various discrete tasks related to remanding the case, along with an affidavit listing his credentials and describing other fee awards.  See Biernoff Aff. at 1; Time Sheet at 1.  The Time Sheet allows D'Allende Meats to determine "the nature and extent of work performed," which it contends is "essential to calculation of a fee award."  Motion for Discovery at 3.  The two cases that D'Allende Meats

cites to support its position do not support it.  They stand for the proposition that a non-movant must have information that allows it to determine the nature and extent of work performed; the cases do not suggest that the movant must provide anything more than what the State of New Mexico provides here.  See Gucci Am., Inc. v. Rebecca Gold Enter., Inc., 802 F. Supp. 1048, 1051-52 (S.D.N.Y. 1992)(concluding that a time sheet was insufficient, thus warranting limited discovery, when the time entries were so vague that the court was "ill-equipped . . . to assess the reasonableness of the number of hours for which Gucci's counsel seeks recovery").

For example, the United States Court of Appeals for the District of Columbia Circuit specifically noted that "detailed summaries based on contemporaneous time records indicating the work performed" are sufficient to allow the district court "to make an independent determination whether or not the hours claimed are justified."   Nat'l Ass'n of Concerned Veterans v. Sec'y of Defense, 675 F.2d 1319, 1328 (D.C. Cir. 1982).  The D.C. Circuit stated that, when a party seeking fees provides an affidavit reciting the fees that attorneys with similar qualifications have received in comparable cases, or recent fees that courts awarded to attorneys of comparable experience, the information is sufficient to allow opposing counsel to evaluate whether the rate is reasonable.  See 675 F.2d at 1325 (noting that "generalized and conclusory 'information and belief' affidavits" will not suffice).  The D.C. Circuit stated that discovery is necessary only when the information provided is insufficient to enable opposing counsel to appraise the reasonableness of the fee and to present legitimate challenges to the fee application, such as when counsel does not provide a time sheet or does not provide justification for its billing rate.  See 675 F.2d at 1328.  Contrary to D'Allende Meats' suggestion, the D.C. Circuit did not allow automatically discovery.  On the contrary, it allowed discovery when, in the district

court's discretion, the party seeking fees provided inadequate information in its fee application, making the desired information necessary.  See 675 F.2d at 1326.

D'Allende Meats asserts that it needs the information because it cannot resolve whether Mr. Biernoff "personally performed the hours of work claimed."  Motion for Discovery at 4.  Mr. Biernoff swore that he personally performed all hours of work for which he seeks compensation. See Biernoff Aff. ¶ 10, at 2-3.  Attorneys' affidavits are competent evidence of the tasks they performed and the amounts of time associated with those tasks.  See ClearOne Commc'ns, Inc. v. Biamp Sys., 653 F.3d at 1187 (upholding the district court's determination that an attorney's declaration and associated exhibits constituted "sufficient evidence to support the attorneys' fees award"); Dietrich v. Miller, 494 F. Supp. 42, 44 (N.D. Ill. 1980)("[T]he sworn affidavits submitted by plaintiffs' attorneys provide a sufficient evidentiary basis for the award of attorneys' fees.").

D'Allende Meats does not contend that the time entries are so vague that it cannot ascertain whether the State of New Mexico is reasonably entitled to seek fees for time spent performing certain activities.  Nor could it make such an argument here, where Mr. Biernoff's time entries are so specific and detailed that both the Court and D'Allende Meats can determine that the time for which the State of New Mexico seeks fees is related to remanding the case.  See Time Sheet at 1-2.  In fact, Mr. Biernoff recorded his time in tenths of hours, i.e., in six-minute increments.  See Biernoff Aff. ¶ 11, at 3.  Moreover, he described each activity in sufficient detail to enable D'Allende Meats to determine whether the activity is compensable.  For example, one entry states that Mr. Biernoff spent 50 minutes on the following: "Research law on removal procedure under 28 U.S.C. §§ 1441 and 1446, removal standing, and substantive basis for removal under 28 U.S.C. § 1443; continue drafting Motion to Remand."  Time Sheet at 1.

The State of New Mexico's detailed Time Sheet is more than adequate to allow D'Allende Meats to determine whether the activities for which the State of New Mexico seeks compensation are compensable.

D'Allende Meats presents little to no reason why the Court should discredit Mr. Biernoff's Time Sheet. It argues that it seeks discovery to clarify "potentially unnecessary and/or duplicative hours for work completed by attorneys other than Plaintiff's Counsel." Motion at 3. It provides no evidence, however, for why it believes that Mr. Biernoff may not have written his own brief, other than to assert the law firm of Schiff Hardin is working on a similar case involving horse slaughter and that its attorneys may have written portions of the brief. See Tr. at 52:6-11 (Richards). As the Court ascertained at the hearing, Schiff Hardin's litigation has not involved a motion to remand. See Tr. at 73:1-13 (Biernoff). Mr. Biernoff could not have obtained portions of his brief from an attorney at Schiff Hardin because those attorneys have not written anything on the issue present here: remanding a horse slaughter case to state court. See Tr. at 73:1-13 (Biernoff). Additionally, there is no other proceeding involving the same or overlapping parties, so Mr. Biernoff could not have copied a brief he wrote for another similar proceeding. See Tr. at 73:1-13 (Biernoff). Furthermore, there are no proceedings involving Mr. Biernoff's hourly rate and how much work he has performed preparing any similar cases. See Tr. at 73:20-25 (Biernoff, Court). The Court noted at the hearing: "If Mr. Biernoff has represented to the Court he has spent $5,000 worth of hours working on this case, tell me how there is duplication," especially when Mr. Biernoff is not billing D'Allende Meats for time spent on emails. Tr. at 53:1-7 (Court).

Where, as here, an attorney seeking fees has "submitted a detailed affidavit listing his activities in preparation for the case, including the number of hours worked . . . and his hourly

rate," the opposing party's "bald assertion" that the fee request is improper "does not create a genuine issue of material fact." Transamerica Ins. Co. v. Avenell, 66 F.3d 715, 722 (5th Cir. 1995). See Trenado v. Cooper Tire & Rubber Co., 274 F.R.D. 598, 602 (S.D. Tex. 2011)(determining that the non-prevailing party's "arguments that the submitted time-and-expense statements are fraudulent have no merit"). As the desired emails are not necessary to enable D'Allende Meats to determine the number of hours for which the State of New Mexico seeks compensation and whether Mr. Biernoff personally performed the work, the Court denies D'Allende Meats' discovery request.

The Court also determines that metadata is unnecessary. The Tenth Circuit has stated that the district court must evaluate whether, in a fee dispute, "further discovery would [] be of any substantial assistance in resolving this issue." Martinez v. Schock Transfer and Warehouse Co., Inc., 789 F.2d at 849 (emphasis added). The discovery sought would provide little additional information, while consuming considerable time and efforts. See Tr. at 88:22-89:10 (stating that the considerable transactions costs to the Court and the parties exceed any information that could be gleaned from discovery). D'Allende Meats can ascertain the number of hours for which the State of New Mexico seeks compensation without the discovery. Thus, any additional discovery would certainly not be of "substantial assistance." Martinez v. Schock Transfer and Warehouse Co., Inc., 789 F.2d at 849. Discovery of metadata may be appropriate in some cases. It is not appropriate in this case, however, where the Assistant Attorney General has made a representation in federal court regarding the hours he worked and D'Allende Meats presents no sound reasons to discredit his representation. "Without some reason to suggest or to question that -- and [the Court] does not see any in this case -- then [the Court] is not inclined to allow defendants to do a fishing expedition to see what turns up." Tr. at 89:2-6 (Court).

Finally, Mr. Biernoff's time and earnings statements are not necessary to evaluate his reasonable hourly rate. The time and earnings statements are irrelevant because D'Allende Meats can adequately determine the appropriate hourly rate by looking at prevailing market rates, and the information regarding Mr. Biernoff's education and experience. See Nat'l Ass'n of Concerned Veterans v. Sec'y of Defense, 675 F.2d at 1325 (affirming that a statement reciting recent fee awards to attorneys of comparable experience is sufficient to allow opposing counsel to evaluate whether the rate is reasonable). Mr. Biernoff's salary is irrelevant to the calculation. Because the State of New Mexico provided a list of recent fee awards to attorneys of comparable experience, D'Allende Meats had sufficient information to enable it to respond to the Motion for Fees.

D'Allende Meats also asks the Court to stay the case and give it a chance to respond to the State of New Mexico's Motion for Fees. See Tr. at 62:23-25 (Richards). Strangely, D'Allende Meats simultaneously asserts that its Motion for Discovery is a proper response to the State of New Mexico's Motion for Fees. See Tr. at 38:24-39:6 (Richards). As the Court stated above, regardless whether the Motion for Discovery is a proper response, the Court analyzes the requests in the Motion for Fees considering the arguments D'Allende Meats raised in the Motion for Discovery and does not summarily grant the Motion for Fees. The Court will not, however, give D'Allende Meats more time so that it can respond a second time. Nor will it allow D'Allende Meats to single-handedly stay the case by filing a motion that the Court did not grant. See Creative Consumer Concepts, Inc. v. Kreisler, 563 F.3d 1070, 1080-81 (10th Cir. 2009)(describing the situations in which a district court can grant a stay). Filing a motion does not impose a stay. See Creative Consumer Concepts, Inc. v. Kreisler, 563 F.3d at 1080-81. If

D'Allende Meats wished to respond more thoroughly to the Motion for Fees, it had every opportunity to do so.  The Court will not give it two bites at the apple.

Moreover, given the modest amount of fees requested for the work done and the time sheet's detail, there is not much more D'Allende Meats can say.  Even though D'Allende Meats did not file a further response, the Court gave the parties a hearing, and asked D'Allende Meats if it had anything else to say on the State of New Mexico's Motion for Fees.  It would be a waste of everyone's time for there to be further briefing on the issue.  Finally, by not filing a response to the motion within the time required, D'Allende Meats has been deemed to have consented to the Motion for Fees.  See D.N.M. LR-Civ.  7.1(b)("The failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion.").  The Motion for Fees is ripe for decision, and D'Allende Meats must cease obsessing over the adverse decision in the MOO.

The Court is reluctant to allow discovery for fee requests in an effort to adhere to the Supreme Court's directions not to turn a request for attorney's fees into "a second major litigation."  Hensley v. Eckerhart, 461 U.S. at 437.  The Court is even more reluctant to order discovery here, where the party seeking fees has not only provided the Court with sufficient information to determine the fee request's appropriateness, but also seeks only a modest amount.  The time and expense involved in discovery outweigh any additional information that discovery would possibly reveal.  See Tr. at 89:1-10 (Court).  Allowing parties to seek discovery when they have little basis for doing so would contravene the Supreme Court's policy and turn a fee request into "a second major litigation."  Hensley v. Eckerhart, 461 U.S. at 437.  Allowing D'Allende Meats discovery in this instance would also allow any party reluctant to pay fees to delay paying fees by seeking unnecessary discovery.  It adds to the Court's and the parties' workload, and

- 64 -

delays the case even longer.   Casting aspersions on counsel or throwing around unseemly insinuations not only delays the case, but also harms counsel's reputation.  The Court will not unnecessarily multiply the time and expense involved in this litigation by allowing discovery here.

**IT IS ORDERED** that D'Allende Meats, LLC's Motion to Reconsider Award of Costs and Fees, filed June 1, 2015 (Doc. 19), is granted in part and denied in part.  The Court reconsiders the costs and fees it awarded in its Memorandum Opinion and Order, filed May 21, 2014 (Doc. 16), but does not change the award.  D'Allende Meats' Motion for Limited Discovery and to Stay Consideration, filed June 30, 2015 (Doc. 22), is denied.  The State of New Mexico's Motion for Attorney's Fees and Costs, and Memorandum in Support, filed June 22, 2015 (Doc. 21), is granted.  The Court orders D'Allende Meats to pay the State of New Mexico attorney's fees in the amount of $5,640.00 plus post-judgment interest, but it will not require D'Allende Meats' counsel to pay any portion of the fees.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Hector Balderas
   Attorney General of the State of New Mexico
Ari Biernoff
   Assistant Attorney General
New Mexico Attorney General's Office
Santa Fe, New Mexico

    *Attorneys for the Plaintiff*

A. Blair Dunn
Dori E. Richards
Western Agriculture Resource and Business Advocates, LLP
Albuquerque, New Mexico

*Counsel for D'Allende Meats, LLC*